1             IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF OREGON

3

4  JAY CUSKER, LMFT; ALISON       )
   GRAYSON; KATHRYN KLOOS, ND;    )
5  and DR. YOLANDA SUAREZ, DO,    )
                           )
6               Plaintiffs,  )  No. 6:24-cv-00998-MTK
                           )
7            vs.         )  February 7, 2025
                           )
8  OREGON HEALTH AUTHORITY, et   )  Portland, Oregon
   al,                       )
9                          )
                Defendants.   )
10

11

12

13             TRANSCRIPT OF PROCEEDINGS

14          (Oral Argument by Video)

15

16     BEFORE THE HONORABLE MUSTAFA T. KASUBHAI

17       UNITED STATES DISTRICT COURT JUDGE

18

19

20

21

22

23  Court Reporter:        Ryan White, RMR, CRR
                   United States District Courthouse
24                   1000 SW 3rd Avenue, Room 301
                   Portland, Oregon 97204
25                   (503) 326-8184

```
 1                              APPEARANCES

 2

 3   For the Plaintiffs:          PERKINS COIE, LLP
                                  By:  JORDAN C. HARRIS
 4                                jordanharris@perkinscoie.com
                                  1201 3rd Avenue, Suite 4900
 5                                Seattle, Washington 98101
                                  (206) 359-3710
 6
                                  PERKINS COIE, LLP
 7                                By:  HOLLY J. MARTINEZ
                                  hmartinez@perkinscoie.com
 8                                1120 NW Couch Street, 10th Floor
                                  Portland, Oregon 97209
 9                                (503) 727-2000

10                                KELL, ALTERMAN & RUNSTEIN LLP
                                  By:  SCOTT J. ALDWORTH
11                                saldworth@kelrun.com
                                  520 SW Yamhill, Suite 600
12                                Portland, Oregon 97204
                                  (503) 222-3531
13

14   For the Defendants:          OREGON DEPARTMENT OF JUSTICE
                                  By:  SADIE FORZLEY
15                                sadie.forzley@doj.oregon.gov
                                  By:  ALEXANDER C. JONES
16                                alex.jones@doj.oregon.gov
                                  100 SW Market Street
17                                Portland, Oregon 97201
                                  (971) 673-1880
18

19

20

21

22

23

24

25
```

1          (February 7, 2025; 9:15 a.m.)

2

3                    P R O C E E D I N G S

4

5          THE COURT:  Good morning.  Please call the case.

6          THE CLERK:  Now is the time set for civil case number

7   24-00998, Cusker, et al, versus Oregon Health Authority, et al,

8   for oral argument.

9          THE COURT:  Counsel, thanks for making yourselves

10  available for argument on the motions to dismiss.

11          I want counsel to please introduce themselves.  We'll

12  start with plaintiffs' counsel first.  If you would be kind

13  enough to give me your full name and your honorifics, such as

14  Mr., Ms., or Mx.

15          For the plaintiff?

16          MR. HARRIS:  Good morning, Your Honor.  It's

17  Mr. Jordan Harris for plaintiff.

18          THE COURT:  And there's a couple other people.

19          MR. HARRIS:  I'd like them to introduce themselves, if

20  that's all right, Your Honor.

21          THE COURT:  Yes, please.

22          MR. ALDWORTH:  Good morning, Your Honor.  Mr. Scott

23  Aldworth.

24          MS. MARTINEZ:  Good morning, Your Honor.  Ms. Holly

25  Martinez.

1          THE COURT:  Good morning.

2          And for the defendant?

3          MS. FORZLEY:  Good morning, Your Honor.  I'm Sadie

4  Forzley for Oregon Health Authority and Dr. Hathi, and I prefer

5  "Ms."

6          THE COURT:  Thank you.

7          And --

8          MR. JONES:  Good morning, Your Honor.  Mr. Alex Jones

9  for defendants.

10          THE COURT:  So who will be the point people, point

11  person?

12          MR. HARRIS:  I will be for plaintiffs.

13          THE COURT:  All right.  And --

14          MS. FORZLEY:  And I for defendants.

15          THE COURT:  All right.  Any other preliminary matters

16  before we take up argument?

17          MR. HARRIS:  Not from plaintiff, Your Honor.

18          THE COURT:  All right.  Why don't we jump right in.

19          THE CLERK:  Can we just make sure to move the

20  microphones closer to those who will be making the arguments for

21  our remote court reporter?  Thank you.

22          MS. FORZLEY:  Is this okay?

23          THE COURT:  I think it's okay.

24          And we have a court reporter; is that right?

25          THE CLERK:  Yes, Your Honor.

1          THE COURT:  And so our court reporter is appearing

2     remotely and so it will be important for you to speak into the

3     mics and make sure you're loud enough so -- and clear enough,

4     really, is more important than perhaps loud, so our court

5     reporter can pick up everything.

6          All right.  So motion to dismiss.  Go ahead.  I think

7     you had three points, at least, with respect to one under the

8     ADA and then two under the state law claims.

9          MS. FORZLEY:  Yeah.

10         Should I stand up, Your Honor, or --

11         THE COURT:  You're welcome to remain seated.

12         MS. FORZLEY:  Okay.

13         THE COURT:  It depends on what you're comfortable

14    with.

15         MS. FORZLEY:  Okay.  Well, you know, I'll stand for a

16    while and maybe I'll take a seat at some point if I get tired.

17    And, of course, for the court reporter, I'll try to speak

18    slowly, which sometimes can be a challenge in these settings.

19         So I'm Sadie Forzley, like I said.  I represent the

20    Oregon Health Authority and Dr. Sejal Hathi, the director of

21    OHA.  And like you said, plaintiffs have -- well, you didn't say

22    this -- we have three arguments.  Plaintiffs have three claims,

23    and there's a federal ADA, Americas With Disabilities Act claim,

24    and a couple of state law claims, and our arguments in the

25    motion focus primarily on the ADA claim, and that's what -- you

1  know, what I'm going to be, you know, focusing on primarily

2  today.

3          A little bit of background before I jump into the

4  argument.

5          Oregon voters enacted a ballot measure in 2023 that

6  legalized psilocybin in a limited way, and the name of that law

7  is the Psilocybin Services Act, or the PSA.

8          THE COURT:  It was limited in the way in which it was

9  to be administered within specific facilities only, but not

10  elsewhere.  So it seems like the crux of the matter is if -- the

11  statute doesn't allow for offsite or off-facility dispensation,

12  dispensing of; right?

13          MS. FORZLEY:  Yes.

14          THE COURT:  What was the reason behind it in the

15  statute?

16          MS. FORZLEY:  Well, we didn't really get into that in

17  the briefing, but that's the way it was sold to the voters.  It

18  was -- it was sort of a central feature of the ballot measure,

19  that this legalization scheme was sort of a -- you know,

20  marketed as a more controlled way to access this -- you know,

21  this therapy.

22          THE COURT:  Well, so -- and I know we're getting into

23  the reasons for the statute as opposed to the specific claims

24  themselves, but I think the context would be helpful for me to

25  maybe understand the contours of the arguments here.

1          I'm assuming that the law was passed because there was

2     some reason or people found that it was appropriate for

3     psilocybin to be used for medical purposes.

4          MS. FORZLEY:  Yeah.  So I believe it was -- you know,

5     there's some -- I think some language in the act, and again, I

6     didn't brief it, but that focuses on -- you know, sort of

7     recognizes that there are some benefits definitely, but it's

8     not -- it's not a medical scheme.

9          So it's really different than the way Oregon

10    approached medical marijuana because it's -- there's no kind of,

11    like, medical criteria.  Anyone -- you know, people can access

12    psilocybin through, essentially, rather than having, like, a

13    medical control for it or prescription system, there's

14    a -- these, you know, individuals who are licensed by my client

15    as facilitators and --

16         THE COURT:  How do people obtain psilocybin legally

17    then?  Is that through the medical providers, the facilitators?

18    Or is it not -- is there no legal process by which people can

19    obtain --

20         MS. FORZLEY:  So the law does address how the

21    substance can be legally, at least under Oregon law, sold.  And

22    I believe -- and I'm not an expert on this, I didn't dig into

23    it, but I believe it's through the service centers that they can

24    sort of control the product, is my understanding.

25         THE COURT:  I also imagine that plaintiffs might have

1  some more background information about this.  So you're on

2  notice.  I'll be asking the same questions to you.

3          MR. HARRIS:  Yes, Your Honor.

4          THE COURT:  So we can move on to the other parts of

5  your argument.

6          MS. FORZLEY:  Yeah.  So -- but to your question, the

7  PSA, you know, is quite a detailed act.  It has a lot

8  of -- there's a lot of background to it, and the brief really

9  only focused on what we thought was really key to the motion,

10  which was the licensed facilitator and the -- of course the

11  service center requirement as sort of a core requirement that

12  impacts the case.

13          And, you know, I suppose if this case continues, we'll

14  probably have an opportunity to brief the background of the law

15  and the intent behind it in more detail at some point.

16          THE COURT:  Now, your motion to dismiss is -- would be

17  dispositive.  You're not seeking dismissal of aspects of the

18  complaint, only parts of the complaint, but you're seeking

19  dismissal on -- in its entirety because of standing?

20          MS. FORZLEY:  Yeah.  So it's a -- it's not a partial

21  motion.  We're seeking dismissal of the ADA claim on

22  jurisdictional grounds and on failure to state a claim, and then

23  state law claims based on, you know, Eleventh Amendment.

24          And so, you know, it's possible the Court would, you

25  know, probably, you know, be thinking more about the ADA claim,

 1   and so this, it could result -- you know, the disposition of

 2   this hearing could result in the state law claims being

 3   dismissed and, you know, the ADA claim continuing.

 4          But, yeah, we do view the motion as dispositive.

 5          THE COURT:  Or the reverse.  If the ADA claim doesn't

 6   survive, but the state law claims do, do I retain supplemental

 7   jurisdiction?

 8          MS. FORZLEY:  No.  So the Court wouldn't

 9   have -- because my clients are, you know, a state agency and a

10   state official, the Court wouldn't -- doesn't have supplemental

11   jurisdiction over the state law claims.  And so, you know,

12   regardless of what happens with the federal claim, the state,

13   because we don't -- the state doesn't give consent to try those

14   state law claims in federal court, those claims need to be --

15          THE COURT:  That's invoking Eleventh Amendment

16   immunity; right?

17          MS. FORZLEY:  Yeah.

18          THE COURT:  Not necessarily supplemental jurisdiction.

19   I mean, so if I found the Eleventh Amendment doesn't apply here

20   and that -- that the plaintiffs can sue the state for the state

21   law claims in federal court, then I could exercise supplemental

22   jurisdiction.

23          MS. FORZLEY:  My understanding is that the --

24          THE COURT:  Unless there's some doctrine that

25   indicates that it's best for this kind of a case and these kinds

1  of claims to be tried in state court.

2         MS. FORZLEY:  Yeah.  I mean, my understanding is

3  that -- and I would have to dig up the citation -- is that

4  because of our -- my client's special status as a state entity,

5  state officer, that supplemental jurisdiction basically isn't a

6  thing for us.

7         THE COURT:  Is that a legal term of art?

8         MS. FORZLEY:  Sorry.  I was speaking colloquially.

9         THE COURT:  That's fine.  I'm throwing a bunch of

10 curve balls at you.

11        MS. FORZLEY:  Yeah.

12        THE COURT:  So you've got two strikes.

13        That was just a baseball metaphor.

14        MS. FORZLEY:  I know, but two strikes makes me

15 nervous.

16        THE COURT:  I know.  I know.  I shouldn't have

17 said -- I realized I shouldn't have said it as soon as it came

18 out of my mouth.  But why don't we turn to the base -- the bases

19 of your motion to dismiss.

20        MS. FORZLEY:  Okay.  So if you don't mind just me -- I

21 have a couple more background facts I'd like to highlight before

22 I -- okay.

23        So, you know, the allegations are that, you know, my

24 client has denied plaintiffs, who are psilocybin facilitators,

25 permission to administer psilocybin in their clients' homes,

1    and, you know, that -- you know, there's no real dispute about

2    that, but that the basis of that denial, I'd just like to, you

3    know, point out that my clients are compliant with state law.

4         A state agency, OHA, can't -- you know, the agency has

5    to follow state law and work within the confines of that, and so

6    they were, you know, basically upholding the law when they, you

7    know, denied that request, and -- and that's consistent with,

8    you know, what the voters enacted here in Oregon.

9         So moving on to the -- kind of the meat of our motion.

10   You know, we are in kind of a unique position in this case

11   because, you know, we sort of -- we have this kind of overlay of

12   state legalization -- and I would submit to the Court limited

13   legalization -- and corresponding limited decriminalization of a

14   controlled substance, but we're in federal court and we

15   have -- you know, that same substance is currently under federal

16   law a schedule 1 controlled substance.  So, you know, it's a

17   pretty unique situation to be in court on an issue like this.

18        And, you know, the -- our view, you know, in this

19   motion is that because plaintiffs have invoked the power of the

20   federal courts and federal law to bring this claim, the Court

21   has to look at federal law when determining what it has the

22   power to do in terms of redressing that claim.

23        THE COURT:  Well, and the plaintiffs are pursuing

24   their claims under the ADA, so that's why they're here in

25   federal court, setting aside the state law claims for a moment.

1          So redressability -- and I know you're about ready to

2   talk about that.  Is there any circumstance under which -- any

3   allegations that they could have made that would have addressed

4   the redressability component of standing?

5          MS. FORZLEY:  I don't think so because I don't

6   think -- you know, it's -- this is a motion to dismiss, you

7   know.  It's a motion on the pleadings.  But, you know, the real

8   issue here is just the basic nature of the remedy that they seek

9   would require the Court to reach a conclusion --

10          THE COURT:  Revise legislation.

11          MS. FORZLEY:  Yeah.  I mean, they're trying to -- they

12   would like to change the law in Oregon and they want to use

13   federal jurisdiction to do that.

14          THE COURT:  You know, oftentimes when we're faced with

15   having to look at the constitutionality of a law, for example,

16   or the legality of some legislation, it's about not -- the

17   remedy isn't oftentimes involving expanding or perhaps

18   restricting, and here they're -- the plaintiffs are asking me to

19   expand that which isn't in the statute, that the -- is it the

20   PA -- PSA?  That's the abbreviation for it?

21          MS. FORZLEY:  Uh-huh.

22          THE COURT:  -- which seems to be an unconventional

23   request.

24          But let me ask it this way.  I know that the claim is

25   being sought pursuant to the ADA.  What if the statute

1    discriminated on the basis of race, that only a certain racial

2    group was entitled to use psilocybin and others were not?

3            MS. FORZLEY:  I think there's a -- there would be a

4    really key difference in the kind of claim they could bring

5    because.  You know, like you pointed out, the ADA is a statute,

6    so they brought a statutory claim.  But if there was a

7    race-based discrimination issue, then there would be a

8    constitutional problem.  And that's -- you know, constitutional

9    scenarios are when the Court would come -- you know, come in and

10   invalidate a law that's discriminatory, and here it's sort of a

11   different -- you know, the contours are different because

12   they're invoking a federal statute to sort of create an

13   expansion of state law.

14           THE COURT:  So plaintiffs haven't argued a

15   constitutional violation, this statute doesn't violate a

16   constitutional provision.

17           MS. FORZLEY:  Right.

18           THE COURT:  And so because of that, you're thinking

19   that the authority that this Court has in considering

20   redressability is limited?

21           MS. FORZLEY:  Yeah.  And I think -- so the reason why

22   is because, you know, the Court -- you know, the Court is a

23   federal court and the -- you know, federal courts are -- you

24   know, derive their power from, you know, federal jurisdiction

25   and that includes upholding federal law and acting consistently

1  with federal law, ensuring, you know, that its orders and its

2  rulings are consistent with federal law and -- and so then our

3  point, of course, is that in order to rule in favor of

4  plaintiffs and give them the relief that they want, the Court

5  would have to find that they have right to access -- you know, a

6  right to access, to dispense, to possess psilocybin, which is

7  something that's explicitly -- currently explicitly prohibited

8  by the Controlled Substances Act, another federal law.

9        And so on the jurisdictional question, our position is

10 they don't have standing because they can't establish

11 redressability because they're seeking a remedy that this Court

12 doesn't have the power to issue because it would require the

13 Court to protect conduct that's currently federally illegal.

14        THE COURT:  This is what I'd like to do.  I'd like to

15 pepper the plaintiffs with some questions and then I'll give you

16 the chance to come back and complete whatever argument that you

17 didn't get a chance yet to complete and then I'll throw some

18 more pitches at you.

19        MS. FORZLEY:  Okay.

20        THE COURT:  All right.  Counsel?

21        MR. HARRIS:  Good morning, Your Honor.

22        THE COURT:  Good morning.

23        MR. HARRIS:  I'm sorry.  Did you want to lead with

24 questions?  Or do you want me to go ahead?

25        THE COURT:  I like to trip people up once they start

1    walking because when you're standing I can't use your own

2    momentum.

3              MR. HARRIS:  That's perfectly fine, Your Honor.

4              Well, I've introduced myself already.  I'm Mr. Jordan

5    Harris.  I represent Plaintiffs Jay Cusker, Alison Grayson,

6    Kathryn Kloos, Yolanda Suarez, in this case.

7              THE COURT:  And your voice is coming in kind of quiet

8    on my end.

9              MR. HARRIS:  Is that any better, Your Honor?  Sounds

10    better?  The acoustics in here...

11              So as Your Honor's picked up on already, my friends on

12    the other side, their arguments boil down into one.  They have a

13    12(b)(1) argument a 12(b)(6) argument.  They both are

14    essentially the same, and their argument is, because of the CSA,

15    somehow this federal court lacks any ability to redress an

16    injury under the ADA in this context.  Under OHA's theory, the

17    courthouse door is simply closed.

18              And as Your Honor's question to my friends on the

19    other side pointed out, the implications of that are kind of

20    interesting because, to Your Honor's hypothetical, what's to

21    keep the state, for example, instead of this current servicing

22    requirement, from having a requirement that service centers not

23    allow service animals, for example, or not allow wheelchairs, or

24    that -- not allow access to this program on some other basis of

25    protected class besides disability, which is a protected class,

1    Your Honor, like race, for example.

2           The implication that OHA is suggesting through their

3    position would be that as long as the state could point to some

4    other federal statute, whether it be the CSA or anything else

5    that's somehow implicated, that might have the possibility of a

6    counter-interpretation, that the state can then act with

7    immunity from federal courts when it comes to complying with

8    other federal laws.  That simply can't be the case, Your Honor,

9    and it's not the case.

10           And my friends on the other side, I heard them

11    speak -- I didn't hear them mention any case law --

12           THE COURT:  And to be fair, though, I don't know if I

13    let Ms. Forzley --

14           MR. HARRIS:  Absolutely, Your Honor.  And I'm not

15    trying to -- I'm just saying the case law, I believe, is clearly

16    on plaintiffs' side here, and you saw in our plaintiffs'

17    briefing a few key cases, one of them being *Shulman*, a Ninth

18    Circuit decision, I believe, from 2023 where the court found

19    redressability, specifically on this issue for redressability,

20    for a RICO claim brought by a cannabis owner against his

21    business partner.  And so in that case, the remedy --

22           THE COURT:  And that was in the context of -- but what

23    about the -- to the extent that there were -- there are issues

24    about the legality of psilocybin under federal law, what about

25    the cases that I think were cited probably by the defendants in

1    which -- and these are breach of contract cases, I believe.

2          MR. HARRIS:  Breach of contract cases, Your Honor,

3    employment cases, and both of those are -- those categories of

4    cases are inapposite, Your Honor.

5          When it comes to the contract cases, those were

6    decided -- for example, they cite one, *J. Lilly*.  That case -- I

7    could pull up the text, Your Honor.  But to just describe it

8    briefly to answer your question as quickly as I can here, in

9    that case, the holding was on the basis that, under Oregon law,

10   a contract is not -- it's unenforceable if it's in violation of

11   federal law.

12         So that's not a redressability Article III standing

13   case.  That's a simple we're applying Oregon law when it comes

14   to how we look at contracts.  And that's what federal courts do

15   when they sit in diversity, to look at the state law when it

16   comes to contract formation, contract law, common law.

17         When it comes to the employment cases, Your Honor, the

18   ADA specifically excludes from the definition of a qualifying

19   disability terminating an employee on the basis of illegal drug

20   use, and that's what those cases are looking towards.

21         THE COURT:  I'd like to go back to maybe Law

22   School 101, let's just -- I want to make sure that we're all

23   defining the terms the same way and just simply describe for me

24   in as basic a way why redressability is not an issue.  So first,

25   tell me what you think redressability is.

1          MR. HARRIS:  Right, Your Honor.

2          And so in *Shulman*, the Ninth Circuit instructs that

3    redressability is whether or not the court could theoretically

4    fashion a remedy.

5          THE COURT:  Okay.

6          MR. HARRIS:  And that could address the --

7          THE COURT:  You think I do have a -- there is a remedy

8    that the Court could fashion?

9          MR. HARRIS:  Yes, Your Honor.

10          THE COURT:  And what is that remedy?

11          MR. HARRIS:  The Court could enjoin the state from

12    enforcing its servicing requirement as to those individuals that

13    plaintiffs serve to seek -- seek to serve, so those individuals

14    with disabilities that prevent them because of their

15    disabilities from accessing the service centers.

16          THE COURT:  And just a warning, Mr. Harris.  I think

17    our court reporter might let me know soon that you're speaking

18    too quickly.

19          MR. HARRIS:  I'm sorry, Your Honor.  I'm a very quick

20    speaker.  I'll try harder to slow down.

21          THE COURT:  All right.  So redressability, you think I

22    have -- this Court has the authority to provide a remedy

23    that -- in specifically enjoining the state and requiring them

24    to provide services to homebound individuals?

25          MR. HARRIS:  Absolutely, Your Honor.  And that's,

again, what *Shulman* -- the principle in *Shulman* demonstrates

where the court found redressability for a RICO claim

notwithstanding the fact that the remedy there would resolve,

theoretically, a transfer of proceeds from an

illegal-under-federal-law cannabis business from one business

partner to another.

   THE COURT:  So, in essence, you are acknowledging that

there are certain illegal aspects to this service, at least in

the eyes of the federal court?

   MR. HARRIS:  Yes, Your Honor.  I don't think either

party in this case briefed that issue, the ultimate issue of

whether or not the PSA complies with the CSA.

   But as far as the issue that's briefed here,

redressability, the question of whether or not plaintiffs can

get through the courthouse door on this claim, this ADA claim,

whether or not the Court has the power to fashion a remedy to

help address this injury, I think *Shulman* is clear, *116 South

Market*, an unpublished Ninth Circuit decision from 2020, where

the Ninth Circuit affirmed a district court decision finding

redressability, specifically addressing Article III, in the

context of a plaintiff who desired access to a cannabis

dispensary sued under the ADA for lack of compliant parking

spaces, compliant access routes --

   THE COURT:  And all of that is sort of within the

context of the facility itself being accessible.

1           But help me -- help me make the connection and explain

2    how the ADA can be used to require accommodation to

3    travel -- require the law or force -- allow me to order the

4    state to allow facilitators to travel away from facilities to

5    provide services.

6           MR. HARRIS:  Right, Your Honor.

7           THE COURT:  So, you know, the traditional very

8    archetypal notions of ADA violations are accessibility issues.

9    I know it's far more broad, but the idea of

10   allowing -- requiring the state to allow the statute to be read

11   to permit facilitators to travel as -- because it would

12   otherwise be a violation of the ADA seems more of a stretch than

13   I've been exposed to in the past.

14          MR. HARRIS:  Okay, Your Honor.

15          So I mean, when it comes to access -- we're still

16   talking about access -- we're talking about the possibility of

17   access for those who are homebound.  And so whether there's a

18   mobile service center, whether the requirements for a service

19   center are amended to create temporary service centers in

20   someone's home, or there's some kind of special dispensation for

21   a facilitator to travel and provide services at home are all

22   just all just mechanisms, but what ultimately is happening is

23   the same thing as if there was a ramp from someone's home to the

24   service center.  You know, the metaphor still applies.

25          We're talking about access.  And we're not talking, as

1    my friends on the other side suggested, that we're arguing that

2    there is some right to psilocybin through the ADA because that's

3    not -- we're talking about access to a program that Oregon has

4    chosen to implement.  So the ability to access ADA -- or access

5    psilocybin exists for all Oregonians regardless of whether or

6    not they're disabled or abled.  That's under Oregon law.  What

7    we're saying is the ADA requires that you not discriminate and

8    that you make reasonable accommodations for those with

9    disabilities if you choose to offer a public program as Oregon

10   did.

11          THE COURT:  Why not simply invalidate the law all

12   together and eliminate psilocybin centers too?

13          MR. HARRIS:  Well, Your Honor, we're not asking for

14   the law to be --

15          THE COURT:  But if you're asking me to consider an

16   appropriate exercise of authority, it seems that you're asking

17   me to also legislate from the bench by expanding that which the

18   statute already allows.  But if the statute on its own terms

19   violates the ADA, then perhaps it should be invalidated all

20   together.

21          MR. HARRIS:  Well, Your Honor, the aspect that

22   violates the ADA is not the services that are being provided.

23   In fact, the PSA recognizes that those in end of life could

24   benefit from these therapies, for example.

25          And touching very briefly on a point that was raised

earlier by my friends on the other side, when it comes to the

ballot initiative that enabled this, I don't think it was

intentional that the voters, you know, as they voted on this

initiative, understood the implications for end-of-life

patients, especially because in the legislative findings of the

act it talks about how there's benefit for end-of-life patients.

I don't think they put together that, you know, end-of-life

patients are not going to be able to access these services.  I

don't think that was the design -- intentional design of the

statute.

THE COURT:  The statute does not provide for any

mobile service?

MR. HARRIS:  No, Your Honor.

THE COURT:  So you couldn't have a vehicle that would

be designated as a service center that could drive up to the

curb and then assist somebody to come into that mobile center?

MR. HARRIS:  OHA definitely seems to take the position

that that's not possible under the statute right now as it's

written.

THE COURT:  Well, as you read the statute, would that

be -- is that interpretation of what services can be offered

allowed?

MR. HARRIS:  As I read the statute, no.  The statute

seems to limit the provision of these services to service

centers.

1          THE COURT:  Well, what's a service center under the

2  statue?  A physical building with plumbing and electrical lines

3  that are connected to the grid?  What's a service center?

4          MR. HARRIS:  I'd have to go back and look at the

5  statute itself, Your Honor, but --

6          THE COURT:  And I know I'm getting beyond the issue of

7  standing, and maybe --

8          MR. HARRIS:  Yes, Your Honor.

9          THE COURT:  -- an issue that ends up having -- if I

10  find that standing is established and redressability is

11  available, then maybe the next question would be -- and I know

12  I'm jumping -- I'm jumping over -- I'm leapfrogging the first

13  issue, but if the statute is -- it can be read to provide for a

14  reasonable accommodation, that being mobile service centers,

15  then maybe there is no ADA violation, only -- or maybe the ADA

16  violation exists within the state implementation of it but the

17  statute itself can accommodate -- can provide for such

18  accommodations.

19          MR. HARRIS:  Yes, Your Honor.  I think as we sit here

20  today, because of OHA's position when it comes to plaintiffs'

21  request for an accommodation and those requests being denied,

22  that we're functionally in the same scenario that you just

23  outlined where sort of regardless of what the statute says, OHA

24  is not willing to allow an accommodation that plaintiffs believe

25  is required under the ADA.

 1          THE COURT:  I'm going to turn to Ms. Forzley for a

 2   moment.

 3          MR. HARRIS:  Yes, Your Honor.

 4          THE COURT:  This question about a service center, do

 5   you have any other information you can share with me about what

 6   one -- how one is defined?

 7          MS. FORZLEY:  So Your Honor, I don't have a lot of

 8   information about that either.  I will confess I know a little

 9   bit about the licensing process for a facilitator, but not much

10   about the service centers.  My understanding is that --

11          THE COURT:  That does seem particularly center to this

12   issue.  I mean, it's --

13          MS. FORZLEY:  Yeah.

14          THE COURT:  -- because the facilitators can only

15   operate in a service center.  But what if a service center is on

16   wheels?  I mean, why not?

17          MS. FORZLEY:  I think -- again, just shooting from the

18   hip based on general knowledge, I think that the service center

19   is a physical location in a building.  I think there are some

20   requirements around the building and what it has and, you know,

21   health and safety kinds of things.

22          So my understanding is, is that there -- you know,

23   because I think people are -- I've seen pictures of -- you know,

24   people are in a room where, you know, the psilocybin is

25   administered in a room in the service center that has, like, a

1    place to sit and lay down and -- you know, that kind of thing.

2        THE COURT:  But any of those particular criteria,

3    those parameters could be established inside of a mobile service

4    center.  I mean, when you go give blood in a mobile blood -- a

5    blood mobile, I mean, people aren't walking into a brick and

6    mortar building, they're walking into a large RV modified to

7    accommodate people lying down and what could be comfortable

8    enough settings and you do your thing.

9        So is the OHA taking the position that there is no

10   such thing as a mobile center available under the law?

11       MS. FORZLEY:  Honestly, I'm not authorized to speak on

12   that and I would have to check with my client and get back to

13   the Court on that issue.

14       THE COURT:  Well, I don't mean to be putting on any

15   settlement judge hat at the moment, but does that resolve the

16   issue, if mobile service centers are allowed under the statute?

17   I mean, it doesn't solve the problem of end-of-life care in

18   one's own bed, but what if it is deemed under the circumstances

19   of both the statute and whatever other balancing of policy

20   interests, to the extent a judge or anybody else would consider

21   those, a reasonable accommodation under the ADA?

22       MR. HARRIS:  Well, I think, Your Honor, it's very

23   premature to address whether or not it's going to be a

24   reasonable accommodation.

25       THE COURT:  I know it is, but that's --

 1         MR. HARRIS:  Right, Your Honor.

 2         THE COURT:  -- a provocative exploration.

 3         MR. HARRIS:  Absolutely, Your Honor, and I'm not

 4    discounting that.

 5         I think there will be clients of my plaintiffs who are

 6    still unable to access a mobile center and would still seek an

 7    accommodation, as Your Honor mentioned, those end-of-life

 8    patients, those in hospice care, again, patients that the

 9    statute recognizes can benefit from these therapies who have in

10    the past, as the complaint alleges, you know, gone to plaintiffs

11    as facilitators and sought these services and been able to

12    access them.

13         And so when it comes to what -- if Your Honor's

14    question is what remedy would sufficiently cure the injury for

15    the plaintiffs that we're representing and the clients that

16    we're imagining and that we've seen them have right now, I'm not

17    sure if that remedy would have a hundred percent overlap.

18         THE COURT:  And then the question is, you know, so

19    if -- is it possible, then, that the plaintiffs in this case in

20    their complaint overreached in asking for the remedy that

21    they're seeking, and that if I -- if the plaintiffs were able

22    and willing to allege additional facts or additional facts

23    suggesting other reasonable accommodations, should I allow the

24    complaint to be amended so we have all these issues more

25    squarely before me if the defendants are going to move to

1    dismiss on those grounds as well?

2         MR. HARRIS:  Your Honor, honestly, I haven't thought

3    much of that question because, at this stage, we're discussing

4    redressability.  That's been the issue that's been raised by the

5    state, whether or not this issue can even be heard by the Court,

6    whether or not there's any remedy that can be fashioned.

7         THE COURT:  And the reason -- I think redressability

8    speaks to the remedy, right, whether a remedy is actually

9    available.  And then to the extent --

10        MR. HARRIS:  Yes, Your Honor.

11        THE COURT:  -- you're asking the Court to -- I mean,

12   one might say revise the statute from the bench or enjoin the

13   limitations of the statute to only, you know, brick and mortar

14   facilities -- I mean, I can appreciate that there's sort of an

15   attempt to sort of narrowly construe with the question before

16   me.  But if I find that maybe there is redressability that could

17   be established without this Court imposing on the will of the

18   public in passing -- was it Ballot Measure 109?  I don't know if

19   you've got the number.

20        MS. FORZLEY:  Sorry.

21        MR. HARRIS:  109.

22        MS. FORZLEY:  109.

23        THE COURT:  All right.  That would be three strikes

24   now, Ms. Forzley.  It's a good thing we're not actually playing

25   baseball, it's soccer, and I think I have three goals to zero

 1   and -- but you have plenty of time left.

 2        MS. FORZLEY:  Well, I never pretend to be the smartest

 3   person in the room.

 4        THE COURT:  So the idea is why not, you know, explore

 5   what other claims under -- claims that could be made

 6   under -- that would more clearly establish redressability?

 7        MR. HARRIS:  Well, Your Honor --

 8        THE COURT:  Or clearly allege redressability.

 9        MR. HARRIS:  Well, Your Honor, I think we have shown

10   redressability.  I think *116 South Market* shows redressability,

11   *Shulman* shows we've shown redressability.

12        THE COURT:  What if I find that the request for the

13   remedy, being again enjoining the state or OHA from only -- from

14   limiting the facility, onsite -- on-facility-site use, isn't

15   within my -- isn't within my authority?  Should I

16   allow -- should I grant you leave to amend the complaint or

17   dismiss with prejudice?

18        MR. HARRIS:  Well, Your Honor -- if Your Honor made

19   that determination, obviously we would like to have leave to

20   amend.

21        But the reason why I'm struggling with these

22   questions, Your Honor, because on a motion to dismiss, obviously

23   the Court assumes the truth of the allegations and makes

24   reasonable inferences in favor of plaintiffs.

25        THE COURT:  I know, but you also asked for oral

1    argument, so you walked into my courtroom and now I'm curious, I

2    ask questions.

3            MR. HARRIS:  Yes, Your Honor.  And I'm pleased to

4    answer your questions, Your Honor, I'm just explaining why I'm

5    not as prepared to talk about fundamental alteration or

6    reasonableness of accommodation based on the briefing being

7    focused on redressability.

8            You know, plaintiffs have the burden under the ADA of

9    establishing a need for an accommodation, and then it would be

10   on the state, in this case, to establish that the accommodation

11   would not be reasonable, and they've made no effort in their

12   motion to dismiss to do that, obviously.

13           THE COURT:  Now, what about the state law claims and

14   the Eleventh Amendment?

15           MR. HARRIS:  Well, Your Honor, we were hoping that OHA

16   would be willing to, for sake of efficiency and in consideration

17   of our clients and, you know, their situation, to just have all

18   this decided in one fell swoop.  But we recognize the Eleventh

19   Amendment --

20           THE COURT:  Are you saying that the state could --

21           MR. HARRIS:  The state --

22           THE COURT:  -- consent?

23           MR. HARRIS:  Yes, Your Honor.

24           THE COURT:  Consent to federal jurisdiction on the

25   state law claim?

1    MR. HARRIS:  Yes, Your Honor.  And to the extent the

2  state chooses not to do so -- obviously we recognize the

3  Eleventh Amendment likely applies here, and we would just ask

4  that those state law claims be dismissed without prejudice.

5  They can be refiled in state court, Your Honor.

6    THE COURT:  Okay.  And Ms. Forzley, your client, will

7  they consent to federal jurisdiction over the state law claims?

8    MS. FORZLEY:  No.  The position we've taken is that we

9  aren't consenting, and as you're probably not surprised to hear,

10  the state doesn't usually consent.  It is something I could, you

11  know, take a look at for sure.

12    THE COURT:  Well, let me ask you this.  If I were to

13  find that standing is established for the ADA claim --

14    MS. FORZLEY:  Yeah.

15    THE COURT:  -- does that change the -- I mean, change

16  the consideration?  Or you may very well rather not have me look

17  at the case at all.  If you're assuming that by my questions I'm

18  indicating the direction I might go, then maybe you wouldn't

19  want to consent to jurisdiction.

20    MS. FORZLEY:  You know --

21    THE COURT:  But I like to think that I'm going after

22  both of you somewhat equally.  But if you think I'm easier on

23  you, let me know.  I can turn up the heat.  Or if I'm easier on

24  him, I can turn up the heat on the plaintiffs too.

25    MS. FORZLEY:  Well, and just because I'm smiling

1    doesn't mean that --

2            THE COURT:  It can be a nervous smile; so --

3            MS. FORZLEY:  Yeah.

4            But I will say that, you know, if the Court were to

5    deny the motion to dismiss --

6            THE COURT:  By the way, there's very little you can

7    say or do to offend me by just saying no.  You have license to

8    tell me exactly what you think, as long as it's respectful.

9            MS. FORZLEY:  Okay.

10            THE COURT:  So don't feel like you're disrespecting me

11    by telling me exactly what you're thinking about any of this.

12            MS. FORZLEY:  So if the Court were to deny the motion

13    to dismiss on the ADA claim, we would take a look at whether

14    consent to the state law claims made sense.  Certainly, we would

15    take a look at that and that would be something I would have to,

16    you know, run up the chain of command.

17            THE COURT:  Then you would have to think about whether

18    you want the Ninth Circuit to decide any of these cases; right?

19            MS. FORZLEY:  That's a question, yeah.

20            THE COURT:  To the extent you don't prevail in front

21    of me, then -- or actually either one of you don't prevail in

22    front of me, if you consented to jurisdiction over the state law

23    claims, then we're on a different appellate track too.

24            MS. FORZLEY:  Yeah.  And one of the considerations

25    relating to that is, you know, that -- you know, this is kind

1  of, you know, a state law issue and it is something that --

2        THE COURT:  But you could have a better shot at -- for

3  closing and putting to rest all of these arguments if this was

4  brought up to the United States Supreme Court over that of the

5  Oregon Supreme Court.  Just a thought.

6        MS. FORZLEY:  We also support -- you know, we support

7  our law here in Oregon and we would like to see it continue.

8  Yeah.

9        THE COURT:  All right.  Well, is there anything else

10  on redress- -- so I know I took you both far afield.  I had to

11  make it worth your time to come down here.

12        MR. HARRIS:  Of course, Your Honor.

13        THE COURT:  So is there anything else on

14  redressability?

15        And I will say that your willingness to answer my

16  questions on these other issues has been very helpful, helps me

17  understand why we have this law and what some of the parameters

18  are and how this law is implemented.  So if this case were to

19  survive, then I think we will be having some more of these

20  conversations going forward.

21        MR. HARRIS:  Well, Your Honor, just -- even though

22  I -- I may have pushed back against going down the line of

23  talking about fundamental alteration, I have two more points on

24  that.

25        THE COURT:  About which --

1          MR. HARRIS:  Fundamental alteration or the

2     reasonableness of the accommodation, Your Honor.

3          The two points, just to summarize, I mentioned before

4     is the general point that, on a motion to dismiss, plaintiffs'

5     allegations are assumed true and there's reasonable inferences

6     drawn in plaintiffs' favor.

7          The second point I think I already mentioned is that

8     plaintiffs would only have the initial burden of showing a need

9     for an accommodation and then the burden would shift at that

10    point to OHA to show that the accommodation sought isn't

11    reasonable, which they haven't done in this motion to dismiss.

12         The third point would be that whether or not a

13    modification is unreasonable, fundamental alteration is a

14    fact-intensive question that's just not appropriate at the

15    motion to dismiss stage, and the Ninth Circuit said that in

16    *Crowder v. Kitagawa* at 1485 and -86.

17         And in that case, because it's salient on the larger

18    point of redressability, in *Crowder v. Kitagawa*, Hawaii had

19    imposed a ban of service animals, an effective ban on service

20    animals.  They had a 120-day quarantine on service animals

21    intended to protect, you know, the unique flora and fauna in

22    Hawaii, a very, you know, rational basis to establish that

23    policy.  However, it had the effect of banning those with sight

24    disabilities from essentially visiting the state of Hawaii.

25         And so the court -- the remedy found there by the

 1    Ninth Circuit, it was 1996, was to enjoin enforcement of that
 2    ban as to those with disabilities that required service animals,
 3    which is the very relief we're seeking here.
 4          So I would direct the Court to *Crowder v. Kitagawa*
 5    when it comes to questions of redressability and examples of a
 6    state law not being able to be used as a shield when it comes to
 7    complying with the requirements of the Americans with
 8    Disabilities Act.
 9          The fourth and last point on fundamental alteration is
10    that if we were to reach the merits of this premature, early
11    stage, Your Honor, it's just -- the case is not of fundamental
12    alteration.  There is statutory language that says that this
13    group of individuals is one of the intended recipients of the
14    PSA, those in end of life.  This is at 475A.205.  And the
15    legislative findings and all the core elements of the PSA would
16    remain intact here, Your Honor, so the facilitation requirement,
17    you know, the requirement that facilitators be present, that
18    they have preparatory sessions with the client.  All the rules
19    regarding manufacture and transport of psilocybin that are in
20    the statue could be followed.  Some of the enabling regulations
21    might have to be altered.  The age limits --
22          THE COURT:  You're going a bit too quickly.  You have
23    to slow it down just a bit.
24          MR. HARRIS:  Okay, Your Honor.  I can go back a line
25    if it helps.

1          THE COURT:  If I were to press my screen to go back

2     ten seconds, I would press it twice.

3          MR. HARRIS:  Okay, Your Honor.  My apologies.

4          The point was that this is not a fundamental

5     alteration.  Again, it's premature.  It's too early to get into

6     this.

7          But if we were to approach this issue, especially on

8     this record, there's no indication that this would be a

9     fundamental alteration because all we're seeking here is

10    injunction of one requirement that obviously prevents the

11    plaintiffs' clients health from having this service that they

12    have a legal right under Oregon law to participate in but are

13    physically unable to participate in.

14         THE COURT:  I haven't -- I haven't read the entire

15    statute, only some of the provisions that were included in

16    arguments, so I'd like to go back and look at them.

17         But you're telling me that this -- the law does not

18    provide for in-home provision of psilocybin?

19         MR. HARRIS:  Yes, Your Honor.

20         THE COURT:  I think I lost my train of thought.

21         But why don't you continue.  The question I'm trying

22    to understand is -- now I'm back on track.

23         What I'm trying to understand is you're -- is that

24    you're essentially asking me to sidestep the will of the people

25    who voted for the statute, and part of your argument is --

1        MR. HARRIS:  Right, Your Honor.

2        THE COURT:  -- that they might have been mistaken or

3   misunderstood the limited nature of the statute that they voted

4   for.  But that's not the Court's problem, it's a different part

5   of our government, that maybe being the people who voted for it,

6   that have to be account for that.  And why can't they just go

7   ahead and adopt an amendment or pass another ballot measure or

8   go to their legislature for a cure?

9        MR. HARRIS:  Well, they could, Your Honor.

10       And the point about whether or not the ballot

11  initiative was intended to have this purpose I think was to

12  address Your Honor's question of whether or not this would, you

13  know, circumvent the will of the people.  I think it's

14  debatable.  And I think under the -- this record with

15  assumptions made in plaintiffs' inference, it's difficult to

16  conclude that the will of the people would be usurped in this

17  case.

18       THE COURT:  But is that the standard?  It would seem

19  to me that I need to take the statute on its face.

20       MR. HARRIS:  I agree, Your Honor, and the statute on

21  its face has this effect that is in violation of the ADA.

22       And regardless of the intentions, whether the voters

23  were good intentioned or otherwise, federal law, the Supremacy

24  Clause prohibits this sort of discrimination.

25       So even if -- to the point that my friends on the

1  other side said about, you know, how this was sold, for example,

2  to the people, if the people were sold discrimination, then

3  obviously the federal court, the federal system, would have the

4  ability to remedy that.  Just because --

5       THE COURT:  If the -- what kind of discrimination?

6       MR. HARRIS:  In this case, you have a statute that

7  presumably provides access to a service for all Americans, and

8  the ADA requires that when a public entity offers a service to

9  its citizens, that it do so in a way that allows reasonable

10  accommodations for those with disabilities so those with

11  disabilities are not excluded from public services.  That's the

12  intention of the ADA, that's the purpose behind the ADA, and

13  it's plaintiffs' position that that's being violated here.

14       And the state cannot simply hide behind the will of

15  the people.  If -- to use Your Honor's earlier hypothetical, if

16  the will of the people were that certain races would be excluded

17  from this program, or the will of the people were that

18  intentionally we were not going to allow individuals with

19  disabilities to access this program, that will would not be

20  recognized under federal law because the ADA --

21       THE COURT:  Under the constitution or under --

22       MR. HARRIS:  Under both, Your Honor, but our claim is

23  under the ADA here, Your Honor.

24       THE COURT:  And I think I understood Ms. Forzley's

25  argument earlier to suggest that because it's not a

1   constitutional violation, then it really doesn't bear -- it does

2   not require this Court's review of the legislation.

3          MR. HARRIS:  I respectfully disagree, Your Honor.  The

4   Supremacy Clause isn't limited to constitutional elements.

5   State law is also usurped by federal law, and *Crowder v.*

6   *Kitagawa* is a clear example of that, Your Honor.

7          THE COURT:  All right.  Ms. Forzley, I want to make

8   sure, am I pronouncing your name correctly?

9          MS. FORZLEY:  Yeah.  "Forzley."

10         THE COURT:  Do you agree that the statute treats

11   people with different disabilities differently?

12         MS. FORZLEY:  No, I don't agree with that.  It's a

13   facially neutral statute.  It just contains a requirement that,

14   you know, limits use of psilocybin to licensed service centers.

15   I don't think that that --

16         THE COURT:  But people who aren't mobile, it limits

17   their ability to get the service.

18         MS. FORZLEY:  I mean, if someone is, you know, truly

19   homebound, then, you know, the statute does not allow for an

20   accommodation of that, and neither does -- you know, Oregon's

21   decriminalization of psilocybin is tailored to compliance with

22   the PSA.  So, you know, that's just not something that was

23   contemplated, I don't think.

24         You know, if I could go back and make a couple points

25   about redressability because, you know, our argument here --

1          THE COURT:  That is the reason why we're here.

2          MS. FORZLEY:  It is, yeah.

3          And our argument, you know, it's basically that

4   because this is a federal statutory claim, you know, the Court's

5   authority to craft a remedy would be, you know, limited to

6   whatever, you know, federal law authorizes.  And so --

7          THE COURT:  And it would be under the ADA and whatever

8   remedies the ADA authorizes would be available to me.

9          MS. FORZLEY:  Right.

10          THE COURT:  That includes enjoining certain acts or

11   omissions or failures to act.

12          MS. FORZLEY:  Yeah.  Typically, it would, and -- but

13   the thing that -- you know, the wrinkle, the big wrinkle, is of

14   course that the act that they would like the Court to say that

15   they have -- you know, that is protected under the ADA is

16   something that happens to be addressed by another federal law,

17   the Controlled Substances Act.  And that gets in of

18   course -- and they're right, our arguments on redressability and

19   statutory interpretation --

20          THE COURT:  Is this really a motion to dismiss on

21   redressability as opposed to some maybe other principle that

22   would be more applicable, like the federal court's involvement

23   in state legislative considerations?

24          MS. FORZLEY:  So the motion talks about that a bit.  I

25   think that there's two ways to sort of break it down, like, in

1    terms of, like, going back to law school and what are the core

2    things we're talking about here.  I think one of them, which

3    I've been focusing on, is separation of powers; right?  Federal

4    courts are limited.

5              But the other one is federalism, and you know, our

6    brief talks a little bit about that.  There's, you know, a

7    couple of cases, at least, where federal courts have said this

8    is, you know, a really unique thing, this is something that's

9    best left to the state, and that's something that would come up

10   if I were arguing abstention, you know, an abstention doctrine

11   to you, which I didn't do in this motion.

12             THE COURT:  But you could have.

13             MS. FORSLEY:  I think I could have.

14             THE COURT:  And it seems like those -- those avenues

15   are more potentially more clearly dispositive than

16   redressability because if the ADA authorizes me to enjoin a

17   state action or an employer's action or anyone who is otherwise

18   subject to the ADA, then at least as it's argued, redressability

19   isn't really the issue, it might very well be abstention.

20             MS. FORZLEY:  Well, I'd certainly be happy to follow

21   up with another motion and briefing on an abstention doctrine.

22             THE COURT:  And, you know, if -- depending on how I

23   rule, then you know, maybe we can cross those bridges if we need

24   to go there.

25             But you want to -- I mean, your argument is, first and

1    foremost, on lack of standing because of redressability.  The

2    other elements of standing are not at issue.

3              MS. FORZLEY:  We haven't raised it that way.

4              THE COURT:  Okay.  So just -- so the opinion will only

5    address redressability.

6              MS. FORZLEY:  That's the motion.  I --

7              THE COURT:  And that's fine.  I just want to make sure

8    that I'm really going to be focusing on that which has been

9    raised.  And you know, rest assured I'm not going to pull in

10   other issues that we've discussed for the purposes of my

11   education.  You've both been very helpful in helping me

12   understand more of what's going on with the statute and its

13   implementation, but redressability will be the only thing I take

14   up.

15             MS. FORZLEY:  Okay.  And I will say, though, that, you

16   know, depending on the outcome here, there are other issues that

17   we would intend to raise going forward in the case.  There are

18   other standing arguments that, you know, could be of concern.

19             THE COURT:  Well, I mean, wouldn't this be the time to

20   raise standing and speak now and --

21             MS. FORZLEY:  Well, you can raise standing at any

22   time, you know, up to trial.  It's a jurisdictional issue.  You

23   know, this motion was pretty narrowly crafted.

24             THE COURT:  But I don't think I want to keep getting

25   different standing -- motions to dismiss on the grounds of lack

1    of standing throughout all of our litigation.  I mean, I would

2    like to try to resolve it at the front end.

3              So were there other issues you were going to raise if

4    the state did not prevail on redressability?

5              MS. FORZLEY:  Yeah, there are, and do you want me to

6    give you an idea of what those are now?

7              THE COURT:  Well, I'll -- no, only because I don't

8    think -- I don't want to put Mr. Harris on the spot with having

9    to think about needing to respond, and if I do put him on the

10   spot, he's going to speak too quickly at that point.

11             MR. HARRIS:  It's true, Your Honor.

12             THE COURT:  So I'll spare everybody that, having to

13   keep up pace.

14             So if I find that standing isn't established and the

15   matter is resolved, then, you know, the plaintiffs will have

16   their course -- you know, their right to pursue something else,

17   or if not, amending.  If I find that redressability is

18   established, then I think we need to talk about how the state

19   intends on trying to pursue other issues about subject matter

20   jurisdiction.

21             But in any event, I think the issue is clear, at least

22   the parties have been clear, that in the absence of state -- the

23   state consenting to federal jurisdiction over the state law

24   claims, those ought to be dismissed.

25             Mr. Harris?

1        MR. HARRIS:  Without prejudice, Your Honor.  Yes.

2        And if I could briefly touch upon one thing that my

3   friends on the other side and Your Honor asked about, which was

4   extension.

5        THE COURT:  Abstention?

6        MR. HARRIS:  Yes, Your Honor.

7        If Your Honor wanted to think through abstention, I

8   would just point the Court to a recent Ninth Circuit decision

9   from last year, *Peridot Tree, Inc., v. City of Sacramento*, it

10  was number 22-16783, and in that decision, the Ninth Circuit

11  reversed a district court that had decided to abstain from

12  deciding a dormant commerce clause claim involving the

13  California cannabis licensing program that favored in-state

14  applicants.

15       So in that case, the court looked at the state program

16  for licensing cannabis businesses and said I don't want to deal

17  with that because of its implications with state law and, you

18  know, the CSA and all these other things, and the Ninth Circuit

19  reversed; so --

20       THE COURT:  They reversed because?

21       MR. HARRIS:  Because there was no applicable

22  abstention doctrine.  It was a federal issue.  The court needed

23  to address the federal claim based on the dormant commerce

24  clause, and I think it's instructive here because, here, the ADA

25  is a federal law.

```
 1              THE COURT:  What was the reason the district court

 2    elected not to -- or what was the reason the district court

 3    abstained?

 4              MR. HARRIS:  I think they -- well, I could pull up the

 5    case, Your Honor.

 6              Sorry.  I wasn't planning on talking extensively on

 7    abstention, Your Honor.  I apologize.

 8              I mean, if Your Honor would like, it might be more

 9    time effective if Your Honor would like supplemental briefing.

10    We can obviously offer it with the --

11              THE COURT:  You can gave us a citation so we can read

12    the case --

13              MR. HARRIS:  Okay, Your Honor.

14              THE COURT:  We can read the case on that.  But give it

15    to me one more time to make sure I wrote it down properly.

16              MR. HARRIS:  Yes, Your Honor.  It's *Peridot Tree*

17    *Incorporated v. City of Sacramento*, and it's number 22-16783.

18              THE COURT:  16783?

19              MR. HARRIS:  Yes, Your Honor.  It's Ninth Circuit from

20    2024.

21              THE COURT:  And this is with respect to abstention?

22              MR. HARRIS:  Yes, Your Honor.

23              And if I could spin off that very briefly about

24    another -- just on dormant commerce clause cases in general, I'm

25    not sure if we've discussed them, but they're another example of
```

1    where there's, you know, a supposed conflict with the CSA.  So

2    these are cases -- like the *Peridot Tree* case I just mentioned,

3    there's also one recently again with Peridot Tree as the

4    plaintiff.

5           THE COURT:  And this would only come into effect,

6    though, if I'm finding that the PSA isn't somehow in -- in

7    conflict with the CSA and then therefore abstaining from

8    considering anything.

9           MR. HARRIS:  Well, in the last *Peridot Tree* example I

10   gave, that was the situation, Your Honor.  But for dormant

11   clause cases more broadly, I think the application goes to

12   redressability.

13          So in these cases, you have a plaintiff who applies

14   for a cannabis license under a state's cannabis licensing

15   program and says that the state was impermissibly in violation

16   of the dormant commerce clause favoring in-state applicants over

17   out-of-state applicants, and, predictably, defendants in those

18   cases argued that there was no redressability because these

19   programs, these cannabis licenses, were in conflict with the

20   CSA, and in these cases, the courts concluded that there is

21   redressability.

22          And there's a few of them.  One is the *Peridot Tree*

23   *Washington Incorporated, v. The Washington State Liquor &*

24   *Cannabis Control Board*.  That's the Western District of

25   Washington decision from January 2024.

1    There's out-of-circuit cases as well.  There's *Jensen*

2  *v. Maryland Cannabis*.  That was in the District of Maryland.

3  There's *Variscite v. New York Four* versus the -- sorry --

4  *Variscite New York Four v. New York State Cannabis Control*

5  *Board*.  That was in the Northern District of New York.  There's

6  a First Circuit case from 2022, *Northeast Patients Group v.*

7  *United Cannabis Patients & Caregivers of Maine*.

8    And all of these cases are applying the same outcome

9  to the same or similar sets of facts where you have a state

10  licensing program for cannabis and you have dormant commerce

11  clause claims brought, and the courts in those cases -- for

12  example, in the Washington -- Western District of Washington

13  case I mentioned, *Peridot Tree v. Washington State Liquor &*

14  *Cannibis Board*, the court said, quote, The court could redress

15  Peridot's injury by enjoining defendants from applying criteria

16  that requires or favors Washington residency in future rounds of

17  applications.

18    So even though these applications, by their nature,

19  involve purported violations of the CSA, the federal court found

20  this is redressable, there's an injury and we know how to fix

21  it, it's through injunction, keep an injury from happening.

22  It's a black and white, one plus one equals two sort of

23  calculation for these courts, Your Honor.

24    THE COURT:  All right.  So I'm going to distill it

25  into -- I'm going to try to distill it in such a way it might

 1   have some more relevance to how I'm having to consider the

 2   state's arguments which might be boiled down to, hey, PSA isn't

 3   in compliance with the CSA, and even so, this Court has

 4   authority to address the PSA's implementation in the context of

 5   ADA violations.

 6           MR. HARRIS:  Right, Your Honor.  And the dormant

 7   commerce clause cases, to Your Honor's point, are doing just

 8   that.  They're recognizing --

 9           THE COURT:  I can't just simply throw out the PSA

10   because it's in violation of federal law?

11           MR. HARRIS:  Well, in those cases, they did not throw

12   out these licensing programs, Your Honor.  Yeah.

13           THE COURT:  All right.

14           MS. FORZLEY:  If I could respond to that?

15           THE COURT:  How about I'll give you the last word and

16   then I -- I'll give you the last word because I think it's

17   important to hear what you have to say about that and anything

18   else that you wanted to -- whatever other arguments you wanted

19   to make in support of your motion to dismiss.

20           MS. FORZLEY:  Okay.  So first of all, I don't think

21   that the dormant -- I could be wrong, but my understanding is

22   those cases weren't something that they addressed in their

23   briefing, so -- you know, but the dormant commerce clause issue

24   would be -- you know, it's pretty different than this

25   circumstance; right?  There's really well-established law --

 1          THE COURT:  And I'm not interpreting the arguments

 2   Mr. Harris has provided to state that the dormant commerce

 3   clause applies here.  I think what he's suggesting to the Court

 4   is that the federal court has authority to address state matters

 5   that might otherwise be deemed illegal or unauthorized under

 6   federal law.

 7          MS. FORZLEY:  Right.  And so not having read the

 8   cases, there's still going to be some more attenuation between

 9   the remedy in a licensing case than, you know, a case here where

10   the remedy they're seeking is access to psilocybin.

11          So they want -- you know, they're -- states aren't

12   allowed to deny out-of-staters licenses; right?  You can't

13   discriminate.  That's a dormant commerce clause thing.  And so,

14   you know, a license --

15          THE COURT:  Those claims were being made under the

16   dormant commerce clause.  I mean, this claim is under the ADA,

17   and so it's really -- the issue -- so really, I'm not

18   sure -- the dormant commerce clause is a red herring.  I

19   wouldn't really -- I don't think I'm going to be paying any

20   attention to that.

21          To the extent that maybe the court cases specify that

22   the consideration of exercising federal jurisdiction applies

23   only in dormant commerce clause claims, then maybe you're stuck,

24   but I hazard the guess that it's not limited to just simply

25   considering the court's exercise of jurisdiction in those

1    instances.  So, you know, we'll -- let's just simply refocus on

2    the ADA.

3            MS. FORZLEY:  Sure.

4            So going back to the -- you know, how do -- you know,

5    and courts have considered similar issues, you know, relating to

6    someone seeking a legal remedy.  You know, it's helpful to look

7    at the illegal contract cases, and that's -- that's the -- kind

8    of the classic law school case, you know, scenario where this

9    illegality issue is going to come up because --

10           THE COURT:  And in this instance, what's the

11   illegality here?

12           MS. FORZLEY:  So in the contract cases, it would be

13   someone --

14           THE COURT:  I'm sorry.  In our case here.

15           MS. FORZLEY:  In our case here, you know, the -- you

16   know, our issue is that they're -- we don't think that the

17   federal court can give them the remedy they want based on, you

18   know, the limitations currently in federal law.

19           THE COURT:  And those limitations are just simply

20   redressability or some principles or doctrines that say federal

21   courts don't have objection over reviewing matters that are

22   otherwise illegal under federal law?

23           MS. FORZLEY:  So it's not that the court -- so it is

24   sort of generally courts would have limited jurisdiction to

25   redress matters that -- you know, where there is some kind of

1    illegality, and that comes into play in the breach of contract

2    context where, you know, a party is seeking a remedy, trying to

3    ask the court to make the other guy do something.  And you know,

4    the way that those cases sort of try to figure out what's the

5    line when you're looking at the spectrum of things that might be

6    considered to be an illegal remedy that would then not be

7    redressable by the court, you know, the way -- sort of

8    the -- kind of the line seems to be drawn at would the court

9    order -- you know, violate a positive law or order someone to do

10   something that's illegal.

11         And the *Market Street* case is an example of how the

12   Ninth Circuit has applied, you know, that kind of an analysis in

13   the context of an ADA case where that case involved a marijuana

14   business that was located in a building and it was an access

15   case and the building landlord said that -- had lost at the

16   trial court and he was ordered by the trial court to provide an

17   access ramp and parking -- designated parking spaces; right?

18   And the Ninth Circuit -- he appealed it and the Ninth Circuit

19   said -- and he appealed it on the ground that the remedy was

20   illegal.  So he said that --

21         THE COURT:  The remedy was -- the remedy the court

22   imposed was illegal because --

23         MS. FORZLEY:  Because his tenant was a marijuana

24   business.  So he said -- basically the argument was that,

25   similar the argument that we're making here, that --

1          THE COURT:  And what did the Ninth Circuit do again?

2          MS. FORZLEY:  And what the Ninth Circuit did is it

3   upheld the trial court ruling, and the reason why it upheld it

4   is the key here, because the court -- the Ninth Circuit said the

5   order is silent as to marijuana use; right?  So the order

6   saying, you know, there's a right here to building access, to

7   the curb ramp, to the parking spaces, didn't require the court

8   to bless and say this person has a right to use marijuana.

9          THE COURT:  So the ADA violation issue is independent

10  of the business purpose.

11         MS. FORZLEY:  Yeah.  There's a degree of attenuation

12  between the marijuana business and the building.

13         THE COURT:  Here, the ADA violation rests squarely

14  within the use of something that's federally illegal.

15         MS. FORZLEY:  Yeah.  It's the -- there's no

16  attenuation.  It's the conduct, you know, that's at issue, is

17  the thing that's illegal under federal law, not under state law.

18  And so that's kind of --

19         THE COURT:  And that brings us --

20         MS. FORZLEY:  -- the line.

21         THE COURT:  -- back to redressability.  The courts

22  don't have redress- -- cannot --

23         MS. FORZLEY:  Yeah.

24         THE COURT:  -- cannot fashion a remedy, provide a

25  remedy in this instance because the alleged ADA violation

1    is -- is itself calling for an illegal act.

2                  MS. FORZLEY:  Yes.

3                  THE COURT:  Okay.  All right.  Counsel, thank you all

4    for your time with your briefs and the arguments today.  I think

5    I have a very full picture of what the issue is, which is

6    redressability, and not all the other things that we talked

7    about.

8                  I think it would be appropriate, though, at this time,

9    given the parties' positions, that I will dismiss the state law

10   claims without prejudice given that the state isn't going to

11   consent to federal jurisdiction on those matters and the

12   plaintiffs have conceded that the Eleventh Amendment would

13   prevent my exercising any jurisdiction over those claims in the

14   absence of consent.  I'll issue a minute order to that effect.

15                 So if for whatever reason the plaintiffs want to

16   pursue those now in state court while the ADA claim continues

17   to -- while I take the ADA claim and the motion to dismiss under

18   advisement, you're welcome to do that now.

19                 All right.  Thank you, Counsel.  Have a good weekend.

20                 MR. HARRIS:  Thank you, Your Honor.

21                 MS. FORZLEY:  Thank you.

22          (The proceedings concluded at 10:21 a.m.)

23

24

25

1                      C E R T I F I C A T E

2

3          I certify, by signing below, that the foregoing is a

4    true and correct transcript, to the best of my ability, of the

5    videoconference/telephonic hearing taken by stenographic means.

6    Due to the videoconference/telephonic connection, parties

7    appearing via videoconference, speakerphone or cell phone,

8    speakers overlapping when speaking, speakers not identifying

9    themselves before they speak, fast speakers, the speaker's

10   failure to enunciate, and/or other technical difficulties that

11   occur during videoconference/telephonic proceedings, this

12   certification is limited by the above-mentioned reasons and any

13   technological difficulties of such proceedings occurring over

14   the videoconference/speakerphone at the United States District

15   Court of Oregon in the above-entitled cause.  A transcript

16   without an original signature, conformed signature, or digitally

17   signed signature is not certified.

18

19          DATED this 7th day of March, 2025.

20

21                               // Ryan White
                                 ─────────────────────────
22                               RYAN WHITE
                                 Registered Merit Reporter
                                 Certified Realtime Reporter
23                               Expires 9/30/2025

24

25

## 1

**1** [1] - 11:16
**101** [1] - 17:22
**109** [3] - 27:18, 27:21, 27:22
**10:21** [1] - 52:22
**116** [2] - 19:17, 28:10
**12(b)(1** [1] - 15:13
**12(b)(6** [1] - 15:13
**120-day** [1] - 33:20
**1485** [1] - 33:16
**16783** [1] - 44:18
**1996** [1] - 34:1

## 2

**2020** [1] - 19:18
**2022** [1] - 46:6
**2023** [2] - 6:5, 16:18
**2024** [2] - 44:20, 45:25
**22-16783** [2] - 43:10, 44:17

## 4

**475A.205** [1] - 34:14

## 8

**86** [1] - 33:16

## A

**a.m** [1] - 52:22
**abbreviation** [1] - 12:20
**ability** [4] - 15:15, 21:4, 37:4, 38:17
**able** [4] - 22:8, 26:11, 26:21, 34:6
**abled** [1] - 21:6
**absence** [2] - 42:22, 52:14
**absolutely** [2] - 16:14, 26:3
**Absolutely** [1] - 18:25
**abstain** [1] - 43:11
**abstained** [1] - 44:3
**abstaining** [1] - 45:7
**abstention** [9] - 40:10, 40:19, 40:21, 43:5, 43:7, 43:22, 44:7, 44:21
**access** [23] - 6:20, 7:11, 14:5, 14:6, 15:24, 19:21, 19:23, 20:15, 20:16, 20:17, 20:25, 21:3, 21:4, 22:8, 26:6, 26:12, 37:7, 37:19, 48:10, 50:14, 50:17, 51:6
**accessibility** [1] - 20:8
**accessible** [1] - 19:25
**accessing** [1] - 18:15
**accommodate** [2] - 23:17, 25:7
**accommodation** [14] - 20:2, 23:14, 23:21, 23:24, 25:21, 25:24, 26:7, 29:6, 29:9, 29:10, 33:2, 33:9, 33:10, 38:20
**accommodations** [4] - 21:8, 23:18, 26:23, 37:10
**account** [1] - 36:6
**acknowledging** [1] - 19:7
**acoustics** [1] - 15:10
**act** [7] - 7:5, 8:7, 16:6, 22:6, 39:11, 39:14, 52:1
**Act** [5] - 5:23, 6:7, 14:8, 34:8, 39:17

**acting** [1] - 13:25
**action** [2] - 40:17
**acts** [1] - 39:10
**ADA** [50] - 5:8, 5:23, 5:25, 8:21, 8:25, 9:3, 9:5, 11:24, 12:25, 13:5, 15:16, 17:18, 19:15, 19:22, 20:2, 20:8, 20:12, 21:2, 21:4, 21:7, 21:19, 21:22, 23:15, 23:25, 25:21, 29:8, 30:13, 31:13, 36:21, 37:8, 37:12, 37:20, 37:23, 39:7, 39:8, 39:15, 40:16, 40:18, 43:24, 47:5, 48:16, 49:2, 50:13, 51:9, 51:13, 51:25, 52:16, 52:17
**additional** [2] - 26:22
**address** [9] - 7:20, 18:6, 19:17, 25:23, 36:12, 41:5, 43:23, 47:4, 48:4
**addressed** [2] - 12:3, 39:16, 47:22
**addressing** [1] - 19:20
**administer** [1] - 10:25
**administered** [2] - 6:9, 24:25
**adopt** [1] - 36:7
**advisement** [1] - 52:18
**affield** [1] - 32:10
**affirmed** [1] - 19:19
**age** [1] - 34:21
**agency** [3] - 9:9, 11:4
**agree** [3] - 36:20, 38:10, 38:12
**ahead** [3] - 5:6, 14:24, 36:7
**Alex** [1] - 4:8
**Alison** [1] - 15:5
**allegations** [4] - 10:23, 12:3, 28:23, 33:5
**allege** [2] - 26:22, 28:8
**alleged** [1] - 51:25
**alleges** [1] - 26:10
**allow** [12] - 6:11, 15:23, 15:24, 20:3, 20:4, 20:10, 23:24, 26:23, 28:16, 37:18, 38:19
**allowed** [3] - 22:22, 25:16, 48:12
**allowing** [1] - 20:10
**allows** [2] - 21:18, 37:9
**alteration** [8] - 29:5, 32:23, 33:1, 33:13, 34:9, 34:12, 35:5, 35:9
**altered** [1] - 34:21
**amend** [2] - 28:16, 28:20
**amended** [2] - 20:19, 26:24
**amending** [1] - 42:17
**amendment** [1] - 36:7
**Amendment** [7] - 8:23, 9:15, 9:19, 29:14, 29:19, 30:3, 52:12
**Americans** [2] - 34:7, 37:7
**Americas** [1] - 5:23
**analysis** [1] - 50:12
**animals** [5] - 15:23, 33:19, 33:20, 34:2
**answer** [3] - 17:8, 29:4, 32:15
**apologies** [1] - 35:3
**apologize** [1] - 44:7
**appealed** [2] - 50:18, 50:19
**appearing** [1] - 5:1
**appellate** [1] - 31:23
**applicable** [2] - 39:22, 43:21
**applicants** [3] - 43:14, 45:16, 45:17
**application** [1] - 45:11
**applications** [2] - 46:17, 46:18
**applied** [1] - 50:12

**applies** [5] - 20:24, 30:3, 45:13, 48:3, 48:22
**apply** [1] - 9:19
**applying** [3] - 17:13, 46:8, 46:15
**appreciate** [1] - 27:14
**approach** [1] - 35:7
**approached** [1] - 7:10
**appropriate** [4] - 7:2, 21:16, 33:14, 52:8
**archetypal** [1] - 20:8
**argued** [3] - 13:14, 40:18, 45:18
**arguing** [2] - 21:1, 40:10
**argument** [15] - 4:16, 6:4, 8:5, 14:16, 15:13, 15:14, 29:1, 35:25, 37:25, 38:25, 39:3, 40:25, 50:24, 50:25
**arguments** [13] - 4:20, 5:22, 5:24, 6:25, 15:12, 32:3, 35:16, 39:18, 41:18, 47:2, 47:18, 48:1, 52:4
**art** [1] - 10:7
**Article** [2] - 17:12, 19:20
**aside** [1] - 11:25
**aspect** [1] - 21:21
**aspects** [2] - 8:17, 19:8
**assist** [1] - 22:16
**assumed** [1] - 33:5
**assumes** [1] - 28:23
**assuming** [2] - 7:1, 30:17
**assumptions** [1] - 36:15
**assured** [1] - 41:9
**attempt** [1] - 27:15
**attention** [1] - 48:20
**attenuation** [3] - 48:8, 51:11, 51:16
**Authority** [2] - 4:4, 5:20
**authority** [7] - 13:19, 18:22, 21:16, 28:15, 39:5, 47:4, 48:4
**authorized** [1] - 25:11
**authorizes** [3] - 39:6, 39:8, 40:16
**available** [4] - 23:11, 25:10, 27:9, 39:8
**avenues** [1] - 40:14

## B

**background** [5] - 6:3, 8:1, 8:8, 8:14, 10:21
**balancing** [1] - 25:19
**ballot** [5] - 6:5, 6:18, 22:2, 36:7, 36:10
**Ballot** [1] - 27:18
**balls** [1] - 10:10
**ban** [3] - 33:19, 34:2
**banning** [1] - 33:23
**base** [1] - 10:18
**baseball** [2] - 10:13, 27:25
**based** [6] - 8:23, 13:7, 24:18, 29:6, 43:23, 49:17
**bases** [1] - 10:18
**basic** [2] - 12:8, 17:24
**basis** [6] - 11:2, 13:1, 15:24, 17:9, 17:19, 33:22
**bear** [1] - 38:1
**bed** [1] - 25:18
**behind** [4] - 6:14, 8:15, 37:12, 37:14
**bench** [2] - 21:17, 27:12
**benefit** [3] - 21:24, 22:6, 26:9
**benefits** [1] - 7:7

**best** [2] - 9:25, 40:9
**better** [3] - 15:9, 15:10, 32:2
**between** [2] - 48:8, 51:12
**beyond** [1] - 23:6
**big** [1] - 39:13
**bit** [6] - 6:3, 24:9, 34:22, 34:23, 39:24, 40:6
**black** [1] - 46:22
**bless** [1] - 51:8
**blood** [3] - 25:4, 25:5
**Board** [3] - 45:24, 46:5, 46:14
**boil** [1] - 15:12
**boiled** [1] - 47:2
**breach** [3] - 17:1, 17:2, 50:1
**break** [1] - 39:25
**brick** [2] - 25:5, 27:13
**bridges** [1] - 40:23
**brief** [4] - 7:6, 8:8, 8:14, 40:6
**briefed** [2] - 19:11, 19:13
**briefing** [6] - 6:17, 16:17, 29:6, 40:21, 44:9, 47:23
**briefly** [4] - 17:8, 21:25, 43:2, 44:23
**briefs** [1] - 52:4
**bring** [2] - 11:20, 13:4
**brings** [1] - 51:19
**broad** [1] - 20:9
**broadly** [1] - 45:11
**brought** [4] - 13:6, 16:20, 32:4, 46:11
**building** [8] - 23:2, 24:19, 24:20, 25:6, 50:14, 50:15, 51:6, 51:12
**bunch** [1] - 10:9
**burden** [3] - 29:8, 33:8, 33:9
**business** [7] - 16:21, 19:5, 50:14, 50:24, 51:10, 51:12
**businesses** [1] - 43:16

### C

**calculation** [1] - 46:23
**California** [1] - 43:13
**Cannabis** [4] - 45:24, 46:2, 46:4, 46:7
**cannabis** [9] - 16:20, 19:5, 19:21, 43:13, 43:16, 45:14, 45:19, 46:10
**Cannibis** [1] - 46:14
**cannot** [3] - 37:14, 51:22, 51:24
**care** [2] - 25:17, 26:8
**Caregivers** [1] - 46:7
**case** [39] - 8:12, 8:13, 9:25, 11:10, 15:6, 16:8, 16:9, 16:11, 16:15, 16:21, 17:6, 17:9, 17:13, 19:11, 26:19, 29:10, 30:17, 32:18, 33:17, 34:11, 36:17, 37:6, 41:17, 43:15, 44:5, 44:12, 44:14, 45:2, 46:6, 46:13, 48:9, 49:8, 49:14, 49:15, 50:11, 50:13, 50:15
**cases** [28] - 16:17, 16:25, 17:1, 17:2, 17:3, 17:4, 17:5, 17:17, 17:20, 31:18, 40:7, 44:24, 45:2, 45:11, 45:13, 45:18, 45:20, 46:1, 46:8, 46:11, 47:7, 47:11, 47:22, 48:8, 48:21, 49:7, 49:12, 50:4
**categories** [1] - 17:3
**center** [17] - 8:11, 20:18, 20:19, 20:24, 22:15, 22:16, 23:1, 23:3, 24:4, 24:11, 24:15, 24:18, 24:25, 25:4, 25:10, 26:6

**centers** [10] - 7:23, 15:22, 18:15, 20:19, 21:12, 22:25, 23:14, 24:10, 25:16, 38:14
**central** [1] - 6:18
**certain** [4] - 13:1, 19:8, 37:16, 39:10
**certainly** [2] - 31:14, 40:20
**chain** [1] - 31:16
**challenge** [1] - 5:18
**chance** [2] - 14:16, 14:17
**change** [3] - 12:12, 30:15
**check** [1] - 25:12
**choose** [1] - 21:9
**chooses** [1] - 30:2
**chosen** [1] - 21:4
**Circuit** [18] - 16:18, 18:2, 19:18, 19:19, 31:18, 33:15, 34:1, 43:8, 43:10, 43:18, 44:19, 46:6, 50:12, 50:18, 51:1, 51:2, 51:4
**circuit** [1] - 46:1
**circumstance** [2] - 12:2, 47:25
**circumstances** [1] - 25:18
**circumvent** [1] - 36:13
**citation** [2] - 10:3, 44:11
**cite** [1] - 17:6
**cited** [1] - 16:25
**citizens** [1] - 37:9
**City** [2] - 43:9, 44:17
**claim** [27] - 5:23, 5:25, 8:21, 8:22, 8:25, 9:3, 9:5, 9:12, 11:20, 11:22, 12:24, 13:4, 13:6, 16:20, 19:2, 19:15, 29:25, 30:13, 31:13, 37:22, 39:4, 43:12, 43:23, 48:16, 52:16, 52:17
**claims** [27] - 5:8, 5:22, 5:24, 6:23, 8:23, 9:2, 9:6, 9:11, 9:14, 9:21, 10:1, 11:24, 11:25, 28:5, 29:13, 30:4, 30:7, 31:14, 31:23, 42:24, 46:11, 48:15, 48:23, 52:10, 52:13
**class** [2] - 15:25
**classic** [1] - 49:8
**Clause** [2] - 36:24, 38:4
**clause** [13] - 43:12, 43:24, 44:24, 45:11, 45:16, 46:11, 47:7, 47:23, 48:3, 48:13, 48:16, 48:18, 48:23
**clear** [5] - 5:3, 19:17, 38:6, 42:21, 42:22
**clearly** [4] - 16:15, 28:6, 28:8, 40:15
**CLERK** [2] - 4:19, 4:25
**client** [5] - 7:14, 10:24, 25:12, 30:6, 34:18
**client's** [1] - 10:4
**clients** [6] - 9:9, 11:3, 26:5, 26:15, 29:17, 35:11
**clients'** [1] - 10:25
**closed** [1] - 15:17
**closer** [1] - 4:20
**closing** [1] - 32:3
**colloquially** [1] - 10:8
**comfortable** [2] - 5:13, 25:7
**coming** [1] - 15:7
**command** [1] - 31:16
**commerce** [12] - 43:12, 43:23, 44:24, 45:16, 46:10, 47:7, 47:23, 48:2, 48:13, 48:16, 48:18, 48:23
**common** [1] - 17:16

**complaint** [6] - 8:18, 26:10, 26:20, 26:24, 28:16
**complete** [2] - 14:16, 14:17
**compliance** [2] - 38:21, 47:3
**compliant** [3] - 11:3, 19:22, 19:23
**complies** [1] - 19:12
**complying** [2] - 16:7, 34:7
**component** [1] - 12:4
**conceded** [1] - 52:12
**concern** [1] - 41:18
**conclude** [1] - 36:16
**concluded** [2] - 45:20, 52:22
**conclusion** [1] - 12:9
**conduct** [2] - 14:13, 51:16
**confess** [1] - 24:8
**confines** [1] - 11:5
**conflict** [3] - 45:1, 45:7, 45:19
**connected** [1] - 23:3
**connection** [1] - 20:1
**consent** [9] - 9:13, 29:22, 29:24, 30:7, 30:10, 30:19, 31:14, 52:11, 52:14
**consented** [1] - 31:22
**consenting** [2] - 30:9, 42:23
**consider** [3] - 21:15, 25:20, 47:1
**consideration** [3] - 29:16, 30:16, 48:22
**considerations** [2] - 31:24, 39:23
**considered** [2] - 49:5, 50:6
**considering** [3] - 13:19, 45:8, 48:25
**consistent** [2] - 11:7, 14:2
**consistently** [1] - 13:25
**constitution** [1] - 37:21
**constitutional** [6] - 13:8, 13:15, 13:16, 38:1, 38:4
**constitutionality** [1] - 12:15
**construe** [1] - 27:15
**contains** [1] - 38:13
**contemplated** [1] - 38:23
**context** [8] - 6:24, 15:16, 16:22, 19:21, 19:25, 47:4, 50:2, 50:13
**continue** [2] - 32:7, 35:21
**continues** [2] - 8:13, 52:16
**continuing** [1] - 9:3
**contours** [2] - 6:25, 13:11
**contract** [9] - 17:1, 17:2, 17:5, 17:10, 17:16, 49:7, 49:12, 50:1
**contracts** [1] - 17:14
**Control** [2] - 45:24, 46:4
**control** [2] - 7:13, 7:24
**controlled** [3] - 6:20, 11:14, 11:16
**Controlled** [2] - 14:8, 39:17
**conversations** [1] - 32:20
**core** [3] - 8:11, 34:15, 40:1
**correctly** [1] - 38:8
**corresponding** [1] - 11:13
**Counsel** [1] - 52:19
**counsel** [2] - 14:20, 52:3
**counter** [1] - 16:6
**counter-interpretation** [1] - 16:6
**couple** [4] - 5:24, 10:21, 38:24, 40:7
**course** [7] - 5:17, 8:10, 14:3, 32:12, 39:14, 39:18, 42:16
**Court** [31] - 8:24, 9:8, 9:10, 11:12, 11:20,

12:9, 13:9, 13:19, 13:22, 14:4, 14:11, 14:13, 18:8, 18:11, 18:22, 19:16, 25:13, 27:5, 27:11, 27:17, 28:23, 31:4, 31:12, 32:4, 32:5, 34:4, 39:14, 43:8, 47:3, 48:3
**COURT** [138] - 4:1, 4:6, 4:10, 4:13, 4:15, 4:18, 4:23, 5:1, 5:11, 5:13, 6:8, 6:14, 6:22, 7:16, 7:25, 8:4, 8:16, 9:5, 9:15, 9:18, 9:24, 10:7, 10:9, 10:12, 10:16, 11:23, 12:10, 12:14, 12:22, 13:14, 13:18, 14:14, 14:20, 14:22, 14:25, 15:7, 16:12, 16:22, 17:21, 18:5, 18:7, 18:10, 18:16, 18:21, 19:7, 19:24, 20:7, 21:11, 21:15, 22:11, 22:14, 22:20, 23:1, 23:6, 23:9, 24:1, 24:4, 24:11, 24:14, 25:2, 25:14, 25:25, 26:2, 26:18, 27:7, 27:11, 27:23, 28:4, 28:8, 28:12, 28:25, 29:13, 29:20, 29:22, 29:24, 30:6, 30:12, 30:15, 30:21, 31:2, 31:6, 31:10, 31:17, 31:20, 32:2, 32:9, 32:13, 32:25, 34:22, 35:1, 35:14, 35:20, 36:2, 36:18, 37:5, 37:21, 37:24, 38:7, 38:10, 38:16, 39:1, 39:7, 39:10, 39:20, 40:12, 40:14, 40:22, 41:4, 41:7, 41:19, 41:24, 42:7, 42:12, 42:13, 43:20, 44:1, 44:11, 44:14, 44:18, 44:21, 45:5, 46:24, 47:9, 47:13, 47:15, 48:1, 48:15, 49:10, 49:14, 49:19, 50:21, 51:1, 51:9, 51:13, 51:19, 51:21, 51:24, 52:3
**court** [44] - 4:21, 4:24, 5:1, 5:4, 5:17, 9:14, 9:21, 10:1, 11:14, 11:17, 11:25, 13:23, 15:15, 16:18, 18:3, 18:17, 19:2, 19:9, 19:19, 30:5, 33:25, 37:3, 43:11, 43:15, 43:22, 44:1, 44:2, 46:14, 46:19, 48:4, 48:21, 49:17, 49:23, 50:3, 50:7, 50:8, 50:16, 50:21, 51:3, 51:4, 51:7, 52:16
**Court's** [3] - 36:4, 38:2, 39:4
**court's** [2] - 39:22, 48:25
**courthouse** [2] - 15:17, 19:15
**courtroom** [1] - 29:1
**courts** [13] - 11:20, 13:23, 16:7, 17:14, 40:4, 40:7, 45:20, 46:11, 46:23, 49:5, 49:21, 49:24, 51:21
**craft** [1] - 39:5
**crafted** [1] - 41:23
**create** [2] - 13:12, 20:19
**criteria** [3] - 7:11, 25:2, 46:15
**cross** [1] - 40:23
**Crowder** [4] - 33:16, 33:18, 34:4, 38:5
**crux** [1] - 6:10
**CSA** [9] - 15:14, 16:4, 19:12, 43:18, 45:1, 45:7, 45:20, 46:19, 47:3
**curb** [2] - 22:16, 51:7
**cure** [2] - 26:14, 36:8
**curious** [1] - 29:1
**current** [1] - 15:21
**curve** [1] - 10:10
**Cusker** [1] - 15:5

## D

**deal** [1] - 43:16
**debatable** [1] - 36:14

**decide** [1] - 31:18
**decided** [3] - 17:6, 29:18, 43:11
**deciding** [1] - 43:12
**decision** [6] - 16:18, 19:18, 19:19, 43:8, 43:10, 45:25
**decriminalization** [2] - 11:13, 38:21
**deemed** [2] - 25:18, 48:5
**defendant** [1] - 4:2
**defendants** [6] - 4:9, 4:14, 16:25, 26:25, 45:17, 46:15
**defined** [1] - 24:6
**defining** [1] - 17:23
**definitely** [2] - 7:7, 22:17
**definition** [1] - 17:18
**degree** [1] - 51:11
**demonstrates** [1] - 19:1
**denial** [1] - 11:2
**denied** [3] - 10:24, 11:7, 23:21
**deny** [3] - 31:5, 31:12, 48:12
**derive** [1] - 13:24
**describe** [2] - 17:7, 17:23
**design** [2] - 22:9
**designated** [2] - 22:15, 50:17
**desired** [1] - 19:21
**detail** [1] - 8:15
**detailed** [1] - 8:7
**determination** [1] - 28:19
**determining** [1] - 11:21
**difference** [1] - 13:4
**different** [8] - 7:9, 13:11, 31:23, 36:4, 38:11, 41:25, 47:24
**differently** [1] - 38:11
**difficult** [1] - 36:15
**dig** [2] - 7:22, 10:3
**direct** [1] - 34:4
**direction** [1] - 30:18
**director** [1] - 5:20
**disabilities** [9] - 18:14, 18:15, 21:9, 33:24, 34:2, 37:10, 37:11, 37:19, 38:11
**Disabilities** [2] - 5:23, 34:8
**disability** [2] - 15:25, 17:19
**disabled** [1] - 21:6
**disagree** [1] - 38:3
**discounting** [1] - 26:4
**discriminate** [2] - 21:7, 48:13
**discriminated** [1] - 13:1
**discrimination** [4] - 13:7, 36:24, 37:2, 37:5
**discriminatory** [1] - 13:10
**discussed** [2] - 41:10, 44:25
**discussing** [1] - 27:3
**dismiss** [18] - 5:6, 8:16, 10:19, 12:6, 27:1, 28:17, 28:22, 29:12, 31:5, 31:13, 33:4, 33:11, 33:15, 39:20, 41:25, 47:19, 52:9, 52:17
**dismissal** [3] - 8:17, 8:19, 8:21
**dismissed** [3] - 9:3, 30:4, 42:24
**dispensary** [1] - 19:22
**dispensation** [2] - 6:11, 20:20
**dispense** [1] - 14:6
**dispensing** [1] - 6:12
**disposition** [1] - 9:1

**dispositive** [3] - 8:17, 9:4, 40:15
**dispute** [1] - 11:1
**disrespecting** [1] - 31:10
**distill** [2] - 46:24, 46:25
**district** [4] - 19:19, 43:11, 44:1, 44:2
**District** [4] - 45:24, 46:2, 46:5, 46:12
**diversity** [1] - 17:15
**doctrine** [4] - 9:24, 40:10, 40:21, 43:22
**doctrines** [1] - 49:20
**done** [1] - 33:11
**door** [2] - 15:17, 19:15
**dormant** [14] - 43:12, 43:23, 44:24, 45:10, 45:16, 46:10, 47:6, 47:21, 47:23, 48:2, 48:13, 48:16, 48:18, 48:23
**down** [10] - 15:12, 18:20, 25:1, 25:7, 32:11, 32:22, 34:23, 39:25, 44:15, 47:2
**Dr** [2] - 4:4, 5:20
**drawn** [2] - 33:6, 50:8
**drive** [1] - 22:15
**drug** [1] - 17:19

## E

**early** [2] - 34:10, 35:5
**easier** [2] - 30:22, 30:23
**education** [1] - 41:11
**effect** [4] - 33:23, 36:21, 45:5, 52:14
**effective** [2] - 33:19, 44:9
**efficiency** [1] - 29:16
**effort** [1] - 29:11
**either** [3] - 19:10, 24:8, 31:21
**elected** [1] - 44:2
**electrical** [1] - 23:2
**elements** [3] - 34:15, 38:4, 41:2
**Eleventh** [8] - 8:23, 9:15, 9:19, 29:14, 29:18, 30:3, 52:12
**eliminate** [1] - 21:12
**elsewhere** [1] - 6:10
**employee** [1] - 17:19
**employer's** [1] - 40:17
**employment** [2] - 17:3, 17:17
**enabled** [1] - 22:2
**enabling** [1] - 34:20
**enacted** [2] - 6:5, 11:8
**end** [9] - 15:8, 21:23, 22:4, 22:6, 22:7, 25:17, 26:7, 34:14, 42:2
**end-of-life** [5] - 22:4, 22:6, 22:7, 25:17, 26:7
**ends** [1] - 23:9
**enforcement** [1] - 34:1
**enforcing** [1] - 18:12
**enjoin** [4] - 18:11, 27:12, 34:1, 40:16
**enjoining** [4] - 18:23, 28:13, 39:10, 46:15
**ensuring** [1] - 14:1
**entire** [1] - 35:14
**entirety** [1] - 8:19
**entitled** [1] - 13:2
**entity** [2] - 10:4, 37:8
**equally** [1] - 30:22
**equals** [1] - 46:22
**especially** [2] - 22:5, 35:7
**essence** [1] - 19:7

**essentially** [4] - 7:12, 15:14, 33:24, 35:24
**establish** [4] - 14:10, 28:6, 29:10, 33:22
**established** [7] - 23:10, 25:3, 27:17, 30:13, 42:14, 42:18, 47:25
**establishing** [1] - 29:9
**event** [1] - 42:21
**exactly** [2] - 31:8, 31:11
**example** [12] - 12:15, 15:21, 15:23, 16:1, 17:6, 21:24, 37:1, 38:6, 44:25, 45:9, 46:12, 50:11
**examples** [1] - 34:5
**excluded** [2] - 37:11, 37:16
**excludes** [1] - 17:18
**exercise** [3] - 9:21, 21:16, 48:25
**exercising** [2] - 48:22, 52:13
**exists** [2] - 21:5, 23:16
**expand** [1] - 12:19
**expanding** [2] - 12:17, 21:17
**expansion** [1] - 13:13
**expert** [1] - 7:22
**explain** [1] - 20:1
**explaining** [1] - 29:4
**explicitly** [2] - 14:7
**exploration** [1] - 26:2
**explore** [1] - 28:4
**exposed** [1] - 20:13
**extension** [1] - 43:4
**extensively** [1] - 44:6
**extent** [6] - 16:23, 25:20, 27:9, 30:1, 31:20, 48:21
**eyes** [1] - 19:9

### F

**face** [2] - 36:19, 36:21
**faced** [1] - 12:14
**facially** [1] - 38:13
**facilitation** [1] - 34:16
**facilitator** [3] - 8:10, 20:21, 24:9
**facilitators** [8] - 7:15, 7:17, 10:24, 20:4, 20:11, 24:14, 26:11, 34:17
**facilities** [3] - 6:9, 20:4, 27:14
**facility** [4] - 6:11, 19:25, 28:14
**fact** [3] - 19:3, 21:23, 33:14
**fact-intensive** [1] - 33:14
**facts** [3] - 10:21, 26:22, 46:9
**failure** [1] - 8:22
**failures** [1] - 39:11
**fair** [1] - 16:12
**far** [3] - 19:13, 20:9, 32:10
**fashion** [4] - 18:4, 18:8, 19:16, 51:24
**fashioned** [1] - 27:6
**fauna** [1] - 33:21
**favor** [3] - 14:3, 28:24, 33:6
**favored** [1] - 43:13
**favoring** [1] - 45:16
**favors** [1] - 46:16
**feature** [1] - 6:18
**federal** [56] - 5:23, 9:12, 9:14, 9:21, 11:14, 11:15, 11:20, 11:21, 11:25, 12:13, 13:12, 13:23, 13:24, 13:25, 14:1, 14:2, 14:8, 15:15, 16:4, 16:7,

16:8, 16:24, 17:11, 17:14, 19:5, 19:9, 29:24, 30:7, 36:23, 37:3, 37:20, 38:5, 39:4, 39:6, 39:16, 39:22, 40:3, 40:7, 42:23, 43:22, 43:23, 43:25, 46:19, 47:10, 48:4, 48:6, 48:22, 49:17, 49:18, 49:20, 49:22, 51:17, 52:11
**federalism** [1] - 40:5
**federally** [2] - 14:13, 51:14
**fell** [1] - 29:18
**few** [2] - 16:17, 45:22
**figure** [1] - 50:4
**findings** [2] - 22:5, 34:15
**fine** [3] - 19:10, 15:3, 41:7
**first** [4] - 17:24, 23:12, 40:25, 47:20
**First** [1] - 46:6
**fix** [1] - 46:20
**flora** [1] - 33:21
**focus** [1] - 5:25
**focused** [2] - 8:9, 29:7
**focuses** [1] - 7:6
**focusing** [3] - 6:1, 40:3, 41:8
**follow** [1] - 11:5, 40:20
**followed** [1] - 34:20
**force** [1] - 20:3
**foremost** [1] - 41:1
**formation** [1] - 17:16
**FORSLEY** [1] - 40:13
**forward** [2] - 32:20, 41:17
**FORZLEY** [72] - 4:3, 4:14, 4:22, 5:9, 5:12, 5:15, 6:13, 6:16, 7:4, 7:20, 8:6, 8:20, 9:8, 9:17, 9:23, 10:2, 10:8, 10:11, 10:14, 10:20, 12:5, 12:11, 12:21, 13:3, 13:17, 13:21, 14:19, 24:7, 24:13, 24:17, 25:11, 27:20, 27:22, 28:2, 30:8, 30:14, 30:20, 30:25, 31:3, 31:9, 31:12, 31:19, 31:24, 32:6, 38:9, 38:12, 38:18, 39:2, 39:9, 39:12, 39:24, 40:20, 41:3, 41:6, 41:15, 41:21, 42:5, 47:14, 47:20, 48:7, 49:3, 49:12, 49:15, 49:23, 50:23, 51:2, 51:11, 51:15, 51:20, 51:23, 52:2, 52:21
**Forzley** [8] - 4:4, 5:19, 16:13, 24:1, 27:24, 30:6, 38:7, 38:9
**Forzley's** [1] - 37:24
**Four** [2] - 46:3, 46:4
**fourth** [1] - 34:9
**friends** [7] - 15:11, 15:18, 16:10, 21:1, 22:1, 36:25, 43:3
**front** [3] - 31:20, 31:22, 42:2
**full** [1] - 52:5
**functionally** [1] - 23:22
**fundamental** [8] - 29:5, 32:23, 33:1, 33:13, 34:9, 34:11, 35:4, 35:9
**future** [1] - 46:16

### G

**general** [3] - 24:18, 33:4, 44:24
**generally** [1] - 49:24
**given** [2] - 52:9, 52:10
**goals** [1] - 27:25
**government** [1] - 36:5
**grant** [1] - 28:16

**Grayson** [1] - 15:5
**grid** [1] - 23:3
**ground** [1] - 50:19
**grounds** [3] - 8:22, 27:1, 41:25
**group** [2] - 13:2, 34:13
**Group** [1] - 46:6
**guess** [1] - 48:24
**guy** [1] - 50:3

### H

**happy** [1] - 40:20
**harder** [1] - 18:20
**Harris** [5] - 15:5, 18:16, 42:8, 42:25, 48:2
**HARRIS** [66] - 4:12, 4:17, 8:3, 14:21, 14:23, 15:3, 15:9, 16:14, 17:2, 18:1, 18:6, 18:9, 18:11, 18:19, 18:25, 19:10, 20:6, 20:14, 21:13, 21:21, 22:13, 22:17, 22:23, 23:4, 23:8, 23:19, 24:3, 25:22, 26:1, 26:3, 27:2, 27:10, 27:21, 28:7, 28:9, 28:18, 29:3, 29:15, 29:21, 29:23, 30:1, 32:12, 32:21, 33:1, 34:24, 35:3, 35:19, 36:1, 36:9, 36:20, 37:6, 37:22, 38:3, 42:11, 43:1, 43:6, 43:21, 44:4, 44:13, 44:16, 44:19, 44:22, 45:9, 47:6, 47:11, 52:20
**hat** [1] - 25:15
**Hathi** [2] - 4:4, 5:20
**Hawaii** [3] - 33:18, 33:22, 33:24
**hazard** [1] - 48:24
**health** [2] - 24:21, 35:11
**Health** [2] - 4:4, 5:20
**hear** [3] - 16:11, 30:9, 47:17
**heard** [2] - 16:10, 27:5
**hearing** [1] - 9:2
**heat** [2] - 30:23, 30:24
**help** [3] - 19:17, 20:1
**helpful** [4] - 6:24, 32:16, 41:11, 49:6
**helping** [1] - 41:11
**helps** [2] - 32:16, 34:25
**here..** [1] - 15:10
**herring** [1] - 48:18
**hide** [1] - 37:14
**highlight** [1] - 10:21
**hip** [1] - 24:18
**holding** [1] - 17:9
**home** [4] - 20:20, 20:21, 20:23, 35:18
**homebound** [3] - 18:24, 20:17, 38:19
**homes** [1] - 10:25
**honestly** [2] - 25:11, 27:2
**Honor** [81] - 4:3, 4:8, 4:17, 4:25, 5:10, 8:3, 14:21, 15:3, 15:9, 16:1, 16:8, 16:14, 17:2, 17:4, 17:7, 17:17, 18:1, 18:9, 18:19, 18:25, 19:10, 20:6, 20:14, 21:13, 21:21, 22:13, 23:5, 23:8, 23:19, 24:3, 24:7, 25:22, 26:1, 26:3, 26:7, 27:2, 27:10, 28:7, 28:9, 28:18, 28:22, 29:3, 29:4, 29:15, 29:23, 30:1, 30:5, 32:12, 32:21, 33:2, 34:11, 34:16, 34:24, 35:3, 35:19, 36:1, 36:9, 36:20, 37:22, 37:23, 38:3, 38:6, 42:11, 43:1, 43:3, 43:6, 43:7, 44:5, 44:7, 44:8, 44:9, 44:13, 44:16, 44:19, 44:22, 45:10,

46:23, 47:6, 47:12, 52:20
**Honor's** [7] - 15:11, 15:18, 15:20, 26:13, 36:12, 37:15, 47:7
**hoping** [1] - 29:15
**hospice** [1] - 26:8
**hundred** [1] - 26:17
**hypothetical** [2] - 15:20, 37:15

**I**

**idea** [3] - 20:9, 28:4, 42:6
**III** [2] - 17:12, 19:20
**illegal** [14] - 14:13, 17:19, 19:5, 19:8, 48:5, 49:7, 49:22, 50:6, 50:10, 50:20, 50:22, 51:14, 51:17, 52:1
**illegal-under-federal-law** [1] - 19:5
**illegality** [3] - 49:9, 49:11, 50:1
**imagine** [1] - 7:25
**imagining** [1] - 26:16
**immunity** [2] - 9:16, 16:7
**impacts** [1] - 8:12
**impermissibly** [1] - 45:15
**implement** [1] - 21:4
**implementation** [3] - 23:16, 41:13, 47:4
**implemented** [1] - 32:18
**implicated** [1] - 16:5
**implication** [1] - 16:2
**implications** [3] - 15:19, 22:4, 43:17
**important** [3] - 5:2, 5:4, 47:17
**imposed** [2] - 33:19, 50:22
**imposing** [1] - 27:17
**in-home** [1] - 35:18
**in-state** [2] - 43:13, 45:16
**inapposite** [1] - 17:4
**Inc** [1] - 43:9
**included** [1] - 35:15
**includes** [2] - 13:25, 39:10
**Incorporated** [2] - 44:17, 45:23
**independent** [1] - 51:9
**indicates** [1] - 9:25
**indicating** [1] - 30:18
**indication** [1] - 35:8
**individuals** [6] - 7:14, 18:12, 18:13, 18:24, 34:13, 37:18
**inference** [1] - 36:15
**inferences** [2] - 28:24, 33:5
**information** [3] - 8:1, 24:5, 24:8
**initial** [1] - 33:6
**initiative** [3] - 22:2, 22:4, 36:11
**injunction** [2] - 35:10, 46:21
**injury** [6] - 15:16, 19:17, 26:14, 46:15, 46:20, 46:21
**inside** [1] - 25:3
**instance** [2] - 49:10, 51:25
**instances** [1] - 49:1
**instead** [1] - 15:21
**instructive** [1] - 43:24
**instructs** [1] - 18:2
**intact** [1] - 34:16
**intend** [1] - 41:17
**intended** [3] - 33:21, 34:13, 36:11
**intends** [1] - 42:19
**intensive** [1] - 33:14

**intent** [1] - 8:15
**intention** [1] - 37:12
**intentional** [2] - 22:3, 22:9
**intentionally** [1] - 37:18
**intentioned** [1] - 36:23
**intentions** [1] - 36:22
**interesting** [1] - 15:20
**interests** [1] - 25:20
**interpretation** [3] - 16:6, 22:21, 39:19
**interpreting** [1] - 48:1
**introduced** [1] - 15:4
**invalidate** [2] - 13:10, 21:11
**invalidated** [1] - 21:19
**invoked** [1] - 11:19
**invoking** [2] - 9:15, 13:12
**involve** [1] - 46:19
**involved** [1] - 50:13
**involvement** [1] - 39:22
**involving** [2] - 12:17, 43:12
**issue** [32] - 11:17, 12:8, 13:7, 14:12, 16:19, 17:24, 19:11, 19:13, 23:6, 23:9, 23:13, 24:12, 25:13, 25:16, 27:4, 27:5, 32:1, 35:7, 40:19, 41:2, 41:22, 42:21, 43:22, 47:23, 48:17, 49:9, 49:16, 51:9, 51:16, 52:5, 52:14
**issues** [9] - 16:23, 20:8, 26:24, 32:16, 41:10, 41:16, 42:3, 42:19, 49:5
**itself** [4] - 19:25, 23:5, 23:17, 52:1

**J**

**January** [1] - 45:25
**Jay** [1] - 15:5
**Jensen** [1] - 46:1
**JONES** [1] - 4:8
**Jones** [1] - 4:8
**Jordan** [1] - 15:4
**judge** [2] - 25:15, 25:20
**jump** [2] - 4:18, 6:3
**jumping** [1] - 23:12
**jurisdiction** [18] - 9:7, 9:11, 9:18, 9:22, 10:5, 12:13, 13:24, 29:24, 30:7, 30:19, 31:22, 42:20, 42:23, 48:22, 48:25, 49:24, 52:11, 52:13
**jurisdictional** [3] - 8:22, 14:9, 41:22

**K**

**Kathryn** [1] - 15:6
**keep** [4] - 15:21, 41:24, 42:13, 46:21
**key** [4] - 8:9, 13:4, 16:17, 51:4
**kind** [17] - 7:10, 9:25, 11:9, 11:10, 11:11, 13:4, 15:7, 15:19, 20:20, 25:1, 31:25, 37:5, 49:7, 49:25, 50:8, 50:12, 51:18
**kinds** [2] - 9:25, 24:21
**Kitagawa** [4] - 33:16, 33:18, 34:4, 38:6
**Kloos** [1] - 15:6
**knowledge** [1] - 24:18

**L**

**lack** [3] - 19:22, 41:1, 41:25
**lacks** [1] - 15:15
**landlord** [1] - 50:15

**language** [2] - 7:5, 34:12
**large** [1] - 25:6
**larger** [1] - 33:17
**last** [5] - 34:9, 43:9, 45:9, 47:15, 47:16
**Law** [1] - 17:21
**law** [76] - 5:8, 5:24, 6:6, 7:1, 7:20, 7:21, 8:14, 8:23, 9:2, 9:6, 9:11, 9:14, 9:21, 11:3, 11:5, 11:6, 11:16, 11:20, 11:21, 11:25, 12:12, 12:15, 13:10, 13:13, 13:25, 14:1, 14:2, 14:8, 16:11, 16:15, 16:24, 17:9, 17:11, 17:13, 17:15, 17:16, 19:5, 20:3, 21:6, 21:11, 21:14, 25:10, 29:13, 29:25, 30:4, 30:7, 31:14, 31:22, 32:1, 32:7, 32:17, 32:18, 34:6, 35:12, 35:17, 36:23, 37:20, 38:5, 39:6, 39:16, 40:1, 42:23, 43:17, 43:25, 47:10, 47:25, 48:6, 49:8, 49:18, 49:22, 50:9, 51:17, 52:9
**laws** [1] - 16:8
**lay** [1] - 25:1
**lead** [1] - 14:23
**leapfrogging** [1] - 23:12
**least** [6] - 5:7, 7:21, 19:8, 40:7, 40:18, 42:21
**leave** [2] - 28:16, 28:19
**left** [2] - 28:1, 40:9
**legal** [4] - 7:18, 10:7, 35:12, 49:6
**legality** [2] - 12:16, 16:24
**legalization** [3] - 6:19, 11:12, 11:13
**legalized** [1] - 6:6
**legally** [2] - 7:16, 7:21
**legislate** [1] - 21:17
**legislation** [3] - 12:10, 12:16, 38:2
**legislative** [3] - 22:5, 34:15, 39:23
**legislature** [1] - 36:8
**license** [3] - 31:7, 45:14, 48:14
**licensed** [3] - 7:14, 8:10, 38:14
**licenses** [2] - 45:19, 48:12
**licensing** [7] - 24:9, 43:13, 43:16, 45:14, 46:10, 47:12, 48:9
**life** [7] - 21:23, 22:4, 22:6, 22:7, 25:17, 26:7, 34:14
**likely** [1] - 30:3
**Lilly** [1] - 17:6
**limit** [1] - 22:24
**limitations** [3] - 27:13, 49:18, 49:19
**limited** [11] - 6:6, 6:8, 11:12, 11:13, 13:20, 36:3, 38:4, 39:5, 40:4, 48:24, 49:24
**limiting** [1] - 28:14
**limits** [3] - 34:21, 38:14, 38:16
**line** [5] - 32:22, 34:24, 50:5, 50:8, 51:20
**lines** [1] - 23:2
**Liquor** [2] - 45:23, 46:13
**litigation** [1] - 42:1
**located** [1] - 50:14
**location** [1] - 24:19
**look** [11] - 11:21, 12:15, 17:14, 17:15, 23:4, 30:11, 30:16, 31:13, 31:15, 35:16, 49:6
**looked** [1] - 43:15
**looking** [2] - 17:20, 50:5
**lost** [2] - 35:20, 50:15

**loud** [2] - 5:3, 5:4
**lying** [1] - 25:7

## M

**Maine** [1] - 46:7
**manufacture** [1] - 34:19
**marijuana** [6] - 7:10, 50:13, 50:23, 51:5, 51:8, 51:12
**Market** [3] - 19:18, 28:10, 50:11
**marketed** [1] - 6:20
**Maryland** [2] - 46:2
**matter** [3] - 6:10, 42:15, 42:19
**matters** [5] - 4:15, 48:4, 49:21, 49:25, 52:11
**mean** [20] - 9:19, 10:2, 12:11, 20:15, 24:12, 24:16, 25:4, 25:5, 25:14, 25:17, 27:11, 27:14, 30:15, 31:1, 38:18, 40:25, 41:19, 42:1, 44:8, 48:16
**Measure** [1] - 27:18
**measure** [3] - 6:5, 6:18, 36:7
**meat** [1] - 11:9
**mechanisms** [1] - 20:22
**medical** [6] - 7:3, 7:8, 7:10, 7:11, 7:13, 7:17
**mention** [1] - 16:11
**mentioned** [5] - 26:7, 33:3, 33:7, 45:2, 46:13
**merits** [1] - 34:10
**metaphor** [2] - 10:13, 20:24
**microphones** [1] - 4:20
**mics** [1] - 5:3
**might** [13] - 7:25, 16:5, 18:17, 27:12, 30:18, 34:21, 36:2, 40:19, 44:8, 46:25, 47:2, 48:5, 50:5
**mind** [1] - 10:20
**minute** [1] - 52:14
**mistaken** [1] - 36:2
**misunderstood** [1] - 36:3
**mobile** [11] - 20:18, 22:12, 22:16, 23:14, 25:3, 25:4, 25:5, 25:10, 25:16, 26:6, 38:16
**modification** [1] - 33:13
**modified** [1] - 25:6
**moment** [3] - 11:25, 24:2, 25:15
**momentum** [1] - 15:2
**morning** [5] - 4:1, 4:3, 4:8, 14:21, 14:22
**mortar** [2] - 25:7, 27:13
**motion** [26] - 5:6, 5:25, 8:9, 8:16, 8:21, 9:4, 10:19, 11:9, 11:19, 12:6, 12:7, 28:22, 29:12, 31:5, 31:12, 33:4, 33:11, 33:15, 39:20, 39:24, 40:11, 40:21, 41:6, 41:23, 47:19, 52:17
**motions** [1] - 41:25
**mouth** [1] - 10:18
**move** [3] - 4:19, 8:4, 26:25
**moving** [1] - 11:9
**MR** [67] - 4:8, 4:12, 4:17, 8:3, 14:21, 14:23, 15:3, 15:9, 16:14, 17:2, 18:1, 18:6, 18:9, 18:11, 18:19, 18:25, 19:10, 20:6, 20:14, 21:13, 21:21, 22:13, 22:17, 22:23, 23:4, 23:8, 23:19, 24:3, 25:22, 26:1, 26:3, 27:2, 27:10, 27:21,

28:7, 28:9, 28:18, 29:3, 29:15, 29:21, 29:23, 30:1, 32:12, 32:21, 33:1, 34:24, 35:3, 35:19, 36:1, 36:9, 36:20, 37:6, 37:22, 38:3, 42:11, 43:1, 43:6, 43:21, 44:4, 44:13, 44:16, 44:19, 44:22, 45:9, 47:6, 47:11, 52:20
**MS** [73] - 4:3, 4:14, 4:22, 5:9, 5:12, 5:15, 6:13, 6:16, 7:4, 7:20, 8:6, 8:20, 9:8, 9:17, 9:23, 10:2, 10:8, 10:11, 10:14, 10:20, 12:5, 12:11, 12:21, 13:3, 13:17, 13:21, 14:19, 24:7, 24:13, 24:17, 25:11, 27:20, 27:22, 28:2, 30:8, 30:14, 30:20, 30:25, 31:3, 31:9, 31:12, 31:19, 31:24, 32:6, 38:9, 38:12, 38:18, 39:2, 39:9, 39:12, 39:24, 40:13, 40:20, 41:3, 41:6, 41:15, 41:21, 42:5, 47:14, 47:20, 48:7, 49:3, 49:12, 49:15, 49:23, 50:23, 51:2, 51:11, 51:15, 51:20, 51:23, 52:2, 52:21

## N

**name** [2] - 6:6, 38:8
**narrowly** [2] - 27:15, 41:23
**nature** [3] - 12:8, 36:3, 46:18
**necessarily** [1] - 9:18
**need** [6] - 9:14, 29:9, 33:8, 36:19, 40:23, 42:18
**needed** [1] - 43:22
**needing** [1] - 42:9
**nervous** [2] - 10:15, 31:2
**neutral** [1] - 38:13
**never** [1] - 28:2
**New** [4] - 46:3, 46:4, 46:5
**next** [1] - 23:11
**Ninth** [17] - 16:17, 18:2, 19:18, 19:19, 31:18, 33:15, 34:1, 43:8, 43:10, 43:18, 44:19, 50:12, 50:18, 51:1, 51:2, 51:4
**Northeast** [1] - 46:6
**Northern** [1] - 46:5
**notice** [1] - 8:2
**notions** [1] - 20:8
**notwithstanding** [1] - 19:3
**number** [3] - 27:19, 43:10, 44:17

## O

**objection** [1] - 49:21
**obtain** [2] - 7:16, 7:19
**obviously** [7] - 28:19, 28:22, 29:12, 30:2, 35:10, 37:3, 44:10
**off-facility** [1] - 6:11
**offend** [1] - 31:7
**offer** [2] - 21:9, 44:10
**offered** [1] - 22:21
**offers** [1] - 37:8
**officer** [1] - 10:5
**official** [1] - 9:10
**offsite** [1] - 6:11
**oftentimes** [2] - 12:14, 12:17
**OHA** [9] - 5:21, 11:4, 16:2, 22:17, 23:23, 25:9, 28:13, 29:15, 33:10
**OHA's** [2] - 15:16, 23:20
**omissions** [1] - 39:11

**on-facility-site** [1] - 28:14
**once** [1] - 14:25
**one** [21] - 5:7, 15:12, 16:17, 17:6, 19:5, 24:6, 27:12, 29:18, 31:21, 31:24, 34:13, 35:10, 40:2, 40:5, 43:2, 44:15, 45:3, 45:22, 46:22
**one's** [1] - 25:18
**onsite** [1] - 28:14
**operate** [1] - 24:15
**opinion** [1] - 41:4
**opportunity** [1] - 8:14
**opposed** [2] - 6:23, 39:21
**oral** [1] - 28:25
**order** [7] - 14:3, 20:3, 50:9, 51:5, 52:14
**ordered** [1] - 50:16
**orders** [1] - 14:1
**Oregon** [15] - 4:4, 5:20, 6:5, 7:9, 7:21, 11:8, 12:12, 17:9, 17:13, 21:3, 21:6, 21:9, 32:5, 32:7, 35:12
**Oregon's** [1] - 38:20
**Oregonians** [1] - 21:5
**otherwise** [5] - 20:12, 36:23, 40:17, 48:5, 49:22
**ought** [1] - 42:24
**out-of-circuit** [1] - 46:1
**out-of-state** [1] - 45:17
**out-of-staters** [1] - 48:12
**outcome** [2] - 41:16, 46:8
**outlined** [1] - 23:23
**overlap** [1] - 26:17
**overlay** [1] - 11:11
**overreached** [1] - 26:20
**own** [3] - 15:1, 21:18, 25:18
**owner** [1] - 16:20

## P

**PA** [1] - 12:20
**pace** [1] - 42:13
**parameters** [2] - 25:3, 32:17
**parking** [4] - 19:22, 50:17, 51:7
**part** [2] - 35:25, 36:4
**partial** [1] - 8:20
**participate** [2] - 35:12, 35:13
**particular** [1] - 25:2
**particularly** [1] - 24:11
**parties** [1] - 42:22
**parties'** [1] - 52:9
**partner** [2] - 16:21, 19:6
**parts** [2] - 8:4, 8:18
**party** [2] - 19:11, 50:2
**pass** [1] - 36:7
**passed** [1] - 7:1
**passing** [1] - 27:18
**past** [2] - 20:13, 26:10
**Patients** [2] - 46:6, 46:7
**patients** [5] - 22:5, 22:6, 22:8, 26:8
**paying** [1] - 48:19
**people** [21] - 4:10, 7:2, 7:11, 7:16, 7:18, 14:25, 24:23, 24:24, 25:5, 25:7, 35:24, 36:5, 36:13, 36:16, 37:2, 37:15, 37:16, 37:17, 38:11, 38:16
**pepper** [1] - 14:15

**percent** [1] - 26:17
**perfectly** [1] - 15:3
**perhaps** [3] - 5:4, 12:17, 21:19
**Peridot** [7] - 43:9, 44:16, 45:2, 45:3, 45:9, 45:22, 46:13
**Peridot's** [1] - 46:15
**permission** [1] - 10:25
**permit** [1] - 20:11
**person** [3] - 4:11, 28:3, 51:8
**physical** [2] - 23:2, 24:19
**physically** [1] - 35:13
**pick** [1] - 5:5
**picked** [1] - 15:11
**picture** [1] - 52:5
**pictures** [1] - 24:23
**pitches** [1] - 14:18
**place** [1] - 25:1
**plaintiff** [4] - 4:17, 19:21, 45:4, 45:13
**Plaintiffs** [1] - 15:5
**plaintiffs** [27] - 4:12, 5:21, 5:22, 7:25, 9:20, 10:24, 11:19, 11:23, 12:18, 13:14, 14:4, 14:15, 18:13, 19:14, 23:24, 26:5, 26:10, 26:15, 26:19, 26:21, 28:24, 29:8, 30:24, 33:8, 42:15, 52:12, 52:15
**plaintiffs'** [8] - 16:16, 23:20, 33:4, 33:6, 35:11, 36:15, 37:13
**planning** [1] - 44:6
**play** [1] - 50:1
**playing** [1] - 27:24
**pleadings** [1] - 12:7
**pleased** [1] - 29:3
**plenty** [1] - 28:1
**plumbing** [1] - 23:2
**plus** [1] - 46:22
**point** [20] - 4:10, 5:16, 8:15, 11:3, 14:3, 16:3, 21:25, 33:4, 33:7, 33:10, 33:12, 33:18, 34:9, 35:4, 36:10, 36:25, 42:10, 43:8, 47:7
**pointed** [2] - 13:5, 15:19
**points** [4] - 5:7, 32:23, 33:3, 38:24
**policy** [2] - 25:19, 33:23
**position** [8] - 11:10, 14:9, 16:3, 22:17, 23:20, 25:9, 30:8, 37:13
**positions** [1] - 52:9
**positive** [1] - 50:9
**possess** [1] - 14:6
**possibility** [2] - 16:5, 20:16
**possible** [3] - 8:24, 22:18, 26:19
**potentially** [1] - 40:15
**power** [5] - 11:19, 11:22, 13:24, 14:12, 19:16
**powers** [1] - 40:3
**predictably** [1] - 45:17
**prefer** [1] - 4:4
**prejudice** [4] - 28:17, 30:4, 43:1, 52:10
**preliminary** [1] - 4:15
**premature** [3] - 25:23, 34:10, 35:5
**preparatory** [1] - 34:18
**prepared** [1] - 29:5
**prescription** [1] - 7:13
**present** [1] - 34:17
**press** [2] - 35:1, 35:2

**presumably** [1] - 37:7
**pretend** [1] - 28:2
**pretty** [3] - 11:17, 41:23, 47:24
**prevail** [3] - 31:20, 31:21, 42:4
**prevent** [2] - 18:14, 52:13
**prevents** [1] - 35:10
**primarily** [2] - 5:25, 6:1
**principle** [2] - 19:1, 39:21
**principles** [1] - 49:20
**problem** [3] - 13:8, 25:17, 36:4
**proceedings** [1] - 52:22
**proceeds** [1] - 19:4
**process** [2] - 7:18, 24:9
**product** [1] - 7:24
**program** [9] - 15:24, 21:3, 21:9, 37:17, 37:19, 43:13, 43:15, 45:15, 46:10
**programs** [2] - 45:19, 47:12
**prohibited** [1] - 14:7
**prohibits** [1] - 36:24
**pronouncing** [1] - 38:8
**properly** [1] - 44:15
**protect** [2] - 14:13, 33:21
**protected** [3] - 15:25, 39:15
**provide** [10] - 18:22, 18:24, 20:5, 20:21, 22:11, 23:13, 23:17, 35:18, 50:16, 51:24
**provided** [2] - 21:22, 48:2
**providers** [1] - 7:17
**provides** [1] - 37:7
**provision** [3] - 13:16, 22:24, 35:18
**provisions** [1] - 35:15
**provocative** [1] - 26:2
**PSA** [11] - 6:7, 8:7, 12:20, 19:12, 21:23, 34:14, 34:15, 38:22, 45:6, 47:2, 47:9
**PSA's** [1] - 47:4
**psilocybin** [18] - 6:6, 7:3, 7:12, 7:16, 10:24, 10:25, 13:2, 14:6, 16:24, 21:2, 21:5, 21:12, 24:24, 34:19, 35:18, 38:14, 38:21, 48:10
**Psilocybin** [1] - 6:7
**public** [4] - 21:9, 27:18, 37:8, 37:11
**pull** [3] - 17:7, 41:9, 44:4
**purported** [1] - 46:19
**purpose** [3] - 36:11, 37:12, 51:10
**purposes** [2] - 7:3, 41:10
**pursuant** [1] - 12:25
**pursue** [3] - 42:16, 42:19, 52:16
**pursuing** [1] - 11:23
**pushed** [1] - 32:22
**put** [3] - 22:7, 42:8, 42:9
**putting** [2] - 25:14, 32:3

**Q**

**qualifying** [1] - 17:18
**quarantine** [1] - 33:20
**questions** [9] - 8:2, 14:15, 14:24, 28:22, 29:2, 29:4, 30:17, 32:16, 34:5
**quick** [1] - 18:19
**quickly** [4] - 17:8, 18:18, 34:22, 42:10
**quiet** [1] - 15:7
**quite** [1] - 8:7
**quote** [1] - 46:14

**R**

**race** [3] - 13:1, 13:7, 16:1
**race-based** [1] - 13:7
**races** [1] - 37:16
**racial** [1] - 13:1
**raise** [4] - 41:17, 41:20, 41:21, 42:3
**raised** [4] - 21:25, 27:4, 41:3, 41:9
**ramp** [3] - 20:23, 50:17, 51:7
**rather** [2] - 7:12, 30:16
**rational** [1] - 33:22
**reach** [2] - 12:9, 34:10
**read** [8] - 20:10, 22:20, 22:23, 23:13, 35:14, 44:11, 44:14, 48:7
**ready** [1] - 12:1
**real** [2] - 11:1, 12:7
**realized** [1] - 10:17
**really** [15] - 5:4, 6:16, 7:9, 8:8, 8:9, 13:4, 38:1, 39:20, 40:8, 40:19, 41:8, 47:25, 48:17, 48:19
**reason** [10] - 6:14, 7:2, 13:21, 27:7, 28:21, 39:1, 44:1, 44:2, 51:3, 52:15
**reasonable** [10] - 21:8, 23:14, 25:21, 25:24, 26:23, 28:24, 29:11, 33:5, 33:11, 37:9
**reasonableness** [2] - 29:6, 33:2
**reasons** [1] - 6:23
**recent** [1] - 43:8
**recently** [1] - 45:3
**recipients** [1] - 34:13
**recognize** [2] - 29:18, 30:2
**recognized** [1] - 37:20
**recognizes** [3] - 7:7, 21:23, 26:9
**recognizing** [1] - 47:8
**record** [2] - 35:8, 36:14
**red** [1] - 48:18
**redress** [5] - 15:15, 32:10, 46:14, 49:25, 51:22
**redressability** [43] - 12:1, 12:4, 13:20, 14:11, 16:19, 17:12, 17:24, 17:25, 18:3, 18:21, 19:2, 19:14, 19:20, 23:10, 27:4, 27:7, 27:16, 28:6, 28:8, 28:10, 28:11, 29:7, 32:14, 33:18, 34:5, 38:25, 39:18, 39:21, 40:16, 40:18, 41:1, 41:5, 41:13, 42:4, 42:17, 45:12, 45:18, 45:21, 49:20, 51:21, 52:6
**redressable** [2] - 46:20, 50:7
**redressing** [1] - 11:22
**refiled** [1] - 30:5
**refocus** [1] - 49:1
**regarding** [1] - 34:19
**regardless** [4] - 9:12, 21:5, 23:23, 36:22
**regulations** [1] - 34:20
**relating** [2] - 31:25, 49:5
**relevance** [1] - 47:1
**relief** [2] - 14:4, 34:3
**remain** [2] - 5:11, 34:16
**remedies** [1] - 39:8
**remedy** [31] - 12:8, 12:17, 14:11, 16:21, 18:4, 18:7, 18:10, 18:22, 19:3, 19:16, 26:14, 26:17, 26:20, 27:6, 27:8, 28:13, 33:25, 37:4, 39:5, 48:9, 48:10, 49:6, 49:17, 50:2, 50:6, 50:19, 50:21, 51:24,

51:25
**remote** [1] - 4:21
**remotely** [1] - 5:2
**reporter** [6] - 4:21, 4:24, 5:1, 5:5, 5:17, 18:17
**represent** [2] - 5:19, 15:5
**representing** [1] - 26:15
**request** [4] - 11:7, 12:23, 23:21, 28:12
**requests** [1] - 23:21
**require** [6] - 12:9, 14:12, 20:2, 20:3, 38:2, 51:7
**required** [2] - 23:25, 34:2
**requirement** [9] - 8:11, 15:22, 18:12, 34:16, 34:17, 35:10, 38:13
**requirements** [3] - 20:18, 24:20, 34:7
**requires** [3] - 21:7, 37:8, 46:16
**requiring** [2] - 18:23, 20:10
**residency** [1] - 46:16
**resolve** [3] - 19:3, 25:15, 42:2
**resolved** [1] - 42:15
**respect** [2] - 5:7, 44:21
**respectful** [1] - 31:8
**respectfully** [1] - 38:3
**respond** [2] - 42:9, 47:14
**rest** [2] - 32:3, 41:9
**restricting** [1] - 12:18
**rests** [1] - 51:13
**result** [2] - 9:1, 9:2
**retain** [1] - 9:6
**reverse** [1] - 9:5
**reversed** [3] - 43:11, 43:19, 43:20
**review** [1] - 38:2
**reviewing** [1] - 49:21
**revise** [2] - 12:10, 27:12
**RICO** [2] - 16:20, 19:2
**room** [3] - 24:24, 24:25, 28:3
**rounds** [1] - 46:16
**routes** [1] - 19:23
**rule** [2] - 14:3, 40:23
**rules** [1] - 34:18
**ruling** [1] - 51:3
**rulings** [1] - 14:2
**run** [1] - 31:16
**RV** [1] - 25:6

**S**

**Sacramento** [2] - 43:9, 44:17
**Sadie** [2] - 4:3, 5:19
**safety** [1] - 24:21
**sake** [1] - 29:16
**salient** [1] - 33:17
**saw** [1] - 16:16
**scenario** [2] - 23:22, 49:8
**scenarios** [1] - 13:9
**schedule** [1] - 11:16
**scheme** [2] - 6:19, 7:8
**school** [2] - 40:1, 49:8
**School** [1] - 17:22
**screen** [1] - 35:1
**seat** [1] - 5:16
**seated** [1] - 5:11
**second** [1] - 33:7

**seconds** [1] - 35:2
**see** [1] - 32:7
**seek** [4] - 12:8, 18:13, 26:6
**seeking** [10] - 8:17, 8:18, 8:21, 14:11, 26:21, 34:3, 35:9, 48:10, 49:6, 50:2
**seem** [2] - 24:11, 36:18
**Sejal** [1] - 5:20
**sense** [1] - 31:14
**separation** [1] - 40:3
**serve** [2] - 18:13
**service** [33] - 7:23, 8:11, 15:22, 15:23, 18:15, 19:8, 20:18, 20:19, 20:24, 22:12, 22:15, 22:24, 23:1, 23:3, 23:14, 24:4, 24:10, 24:15, 24:18, 24:25, 25:3, 25:16, 33:19, 33:20, 34:2, 35:11, 37:7, 37:8, 38:14, 38:17
**Services** [1] - 6:7
**services** [9] - 18:24, 20:5, 20:21, 21:22, 22:8, 22:21, 22:24, 26:11, 37:11
**servicing** [2] - 15:21, 18:12
**sessions** [1] - 34:18
**sets** [1] - 46:9
**setting** [1] - 11:25
**settings** [2] - 5:18, 25:8
**settlement** [1] - 25:15
**share** [1] - 24:5
**shield** [1] - 34:6
**shift** [1] - 33:9
**shooting** [1] - 24:17
**shot** [1] - 32:2
**show** [1] - 33:10
**showing** [1] - 33:8
**shown** [2] - 28:9, 28:11
**shows** [2] - 28:10, 28:11
**Shulman** [6] - 16:17, 18:2, 19:1, 19:17, 28:11
**side** [8] - 15:12, 15:19, 16:10, 16:16, 21:1, 22:1, 37:1, 43:3
**sidestep** [1] - 35:24
**sight** [1] - 33:23
**silent** [1] - 51:5
**similar** [3] - 46:9, 49:5, 50:25
**simple** [1] - 17:13
**simply** [9] - 15:17, 16:8, 17:23, 21:11, 37:14, 47:9, 48:24, 49:1, 49:19
**sit** [3] - 17:15, 23:19, 25:1
**site** [1] - 28:14
**situation** [3] - 11:17, 29:17, 45:10
**slow** [2] - 18:20, 34:23
**slowly** [1] - 5:18
**smartest** [1] - 28:2
**smile** [1] - 31:2
**smiling** [1] - 30:25
**soccer** [1] - 27:25
**sold** [4] - 6:17, 7:21, 37:1, 37:2
**solve** [1] - 25:17
**someone** [4] - 38:18, 49:6, 49:13, 50:9
**sometimes** [1] - 5:18
**somewhat** [1] - 30:22
**soon** [2] - 10:17, 18:17
**sorry** [7] - 10:8, 14:23, 18:19, 27:20, 44:6, 46:3, 49:14
**sort** [18] - 6:18, 6:19, 7:6, 7:24, 8:11,

11:11, 13:10, 13:12, 19:24, 23:23, 27:14, 27:15, 36:24, 39:25, 46:22, 49:24, 50:4, 50:7
**sought** [3] - 12:25, 26:11, 33:10
**sounds** [1] - 15:9
**South** [2] - 19:17, 28:10
**spaces** [3] - 19:23, 50:17, 51:7
**spare** [1] - 42:12
**speaker** [1] - 18:20
**speaking** [2] - 10:8, 18:17
**speaks** [1] - 27:8
**special** [2] - 10:4, 20:20
**specific** [2] - 6:9, 6:23
**specifically** [4] - 16:19, 17:18, 18:23, 19:20
**specify** [1] - 48:21
**spectrum** [1] - 50:5
**spin** [1] - 44:23
**spot** [2] - 42:8, 42:10
**squarely** [2] - 26:25, 51:13
**stage** [3] - 27:3, 33:15, 34:11
**stand** [2] - 5:10, 5:15
**standard** [1] - 36:18
**standing** [16] - 8:19, 12:4, 14:10, 15:1, 17:12, 23:7, 23:10, 30:13, 41:1, 41:2, 41:18, 41:20, 41:21, 41:25, 42:1, 42:14
**start** [1] - 14:25
**State** [3] - 45:23, 46:4, 46:13
**state** [72] - 5:8, 5:24, 8:22, 8:23, 9:2, 9:6, 9:9, 9:10, 9:11, 9:12, 9:13, 9:14, 9:20, 10:1, 10:4, 10:5, 11:3, 11:4, 11:5, 11:12, 11:25, 13:13, 15:21, 16:3, 16:6, 17:15, 18:11, 18:23, 20:4, 20:10, 23:16, 27:5, 28:13, 29:10, 29:13, 29:20, 29:21, 29:25, 30:2, 30:4, 30:5, 30:7, 30:10, 31:14, 31:22, 32:1, 33:24, 34:6, 37:14, 38:5, 39:23, 40:9, 40:17, 42:4, 42:18, 42:22, 42:23, 43:13, 43:15, 43:17, 45:15, 45:16, 45:17, 46:9, 48:2, 48:4, 51:17, 52:9, 52:10, 52:16
**state's** [2] - 45:14, 47:2
**staters** [1] - 48:12
**States** [1] - 32:4
**states** [1] - 48:11
**statue** [2] - 23:2, 34:20
**status** [1] - 10:4
**statute** [37] - 6:11, 6:15, 6:23, 12:19, 12:25, 13:5, 13:12, 13:15, 16:4, 20:10, 21:18, 22:10, 22:11, 22:18, 22:20, 22:23, 23:5, 23:13, 23:17, 23:23, 25:16, 25:19, 26:9, 27:12, 27:13, 35:15, 35:25, 36:3, 36:19, 36:20, 37:6, 38:10, 38:13, 38:19, 41:12
**statutory** [4] - 13:6, 34:12, 39:4, 39:19
**still** [5] - 20:15, 20:24, 26:6, 48:8
**Street** [1] - 50:11
**stretch** [1] - 20:12
**strikes** [3] - 10:12, 10:14, 27:23
**struggling** [1] - 28:21
**stuck** [1] - 48:23
**Suarez** [1] - 15:6
**subject** [2] - 40:18, 42:19

**submit** [1] - 11:12
**substance** [4] - 7:21, 11:14, 11:15, 11:16
**Substances** [2] - 14:8, 39:17
**sue** [1] - 9:20
**sued** [1] - 19:22
**sufficiently** [1] - 26:14
**suggest** [1] - 37:25
**suggested** [1] - 21:1
**suggesting** [3] - 16:2, 26:23, 48:3
**summarize** [1] - 33:3
**supplemental** [6] - 9:6, 9:10, 9:18, 9:21, 10:5, 44:9
**support** [3] - 32:6, 47:19
**suppose** [1] - 8:13
**supposed** [1] - 45:1
**Supremacy** [2] - 36:23, 38:4
**Supreme** [2] - 32:4, 32:5
**surprised** [1] - 30:9
**survive** [2] - 9:6, 32:19
**swoop** [1] - 29:18
**system** [2] - 7:13, 37:3

**T**

**tailored** [1] - 38:21
**talks** [3] - 22:6, 39:24, 40:6
**temporary** [1] - 20:19
**ten** [1] - 35:2
**tenant** [1] - 50:23
**term** [1] - 10:7
**terminating** [1] - 17:19
**terms** [4] - 11:22, 17:23, 21:18, 40:1
**text** [1] - 17:7
**THE** [140] - 4:1, 4:6, 4:10, 4:13, 4:15, 4:18, 4:19, 4:23, 4:25, 5:1, 5:11, 5:13, 6:8, 6:14, 6:22, 7:16, 7:25, 8:4, 8:16, 9:5, 9:15, 9:18, 9:24, 10:7, 10:9, 10:12, 10:16, 11:23, 12:10, 12:14, 12:22, 13:14, 13:18, 14:14, 14:20, 14:22, 14:25, 15:7, 16:12, 16:22, 17:21, 18:5, 18:7, 18:10, 18:16, 18:21, 19:7, 19:24, 20:7, 21:11, 21:15, 22:11, 22:14, 22:20, 23:1, 23:6, 23:9, 24:1, 24:4, 24:11, 24:14, 25:2, 25:14, 25:25, 26:2, 26:18, 27:7, 27:11, 27:23, 28:4, 28:8, 28:12, 28:25, 29:13, 29:20, 29:22, 29:24, 30:6, 30:12, 30:15, 30:21, 31:2, 31:6, 31:10, 31:17, 31:20, 32:2, 32:9, 32:13, 32:25, 34:22, 35:1, 35:14, 35:20, 36:2, 36:18, 37:5, 37:21, 37:24, 38:7, 38:10, 38:16, 39:1, 39:7, 39:10, 39:20, 40:12, 40:14, 40:22, 41:4, 41:7, 41:19, 41:24, 42:7, 42:12, 43:5, 43:20, 44:1, 44:11, 44:14, 44:18, 44:21, 45:5, 46:24, 47:9, 47:13, 47:15, 48:1, 48:15, 49:10, 49:14, 49:19, 50:21, 51:1, 51:9, 51:13, 51:19, 51:21, 51:24, 52:3
**themselves** [1] - 6:24
**theoretically** [2] - 18:3, 19:4
**theory** [1] - 15:16
**therapies** [2] - 21:24, 26:9
**therapy** [1] - 6:21
**therefore** [1] - 45:7

**they've** [1] - 29:11
**thinking** [3] - 8:25, 13:18, 31:11
**third** [1] - 33:12
**three** [5] - 5:7, 5:22, 27:23, 27:25
**throughout** [1] - 42:1
**throw** [3] - 14:17, 47:9, 47:11
**throwing** [1] - 10:9
**tired** [1] - 5:16
**today** [3] - 6:2, 23:20, 52:4
**together** [3] - 21:12, 21:20, 22:7
**took** [1] - 32:10
**touch** [1] - 43:2
**touching** [1] - 21:25
**towards** [1] - 17:20
**track** [2] - 31:23, 35:22
**traditional** [1] - 20:7
**train** [1] - 35:20
**transfer** [1] - 19:4
**transport** [1] - 34:19
**travel** [4] - 20:3, 20:4, 20:11, 20:21
**treats** [1] - 38:10
**Tree** [7] - 43:9, 44:16, 45:2, 45:3, 45:9, 45:22, 46:13
**trial** [4] - 41:22, 50:16, 51:3
**tried** [1] - 10:1
**trip** [1] - 14:25
**true** [2] - 33:5, 42:11
**truly** [1] - 38:18
**truth** [1] - 28:23
**try** [6] - 5:17, 9:13, 18:20, 42:2, 46:25, 50:4
**trying** [6] - 12:11, 16:15, 35:21, 35:23, 42:19, 50:2
**turn** [4] - 10:18, 24:1, 30:23, 30:24
**twice** [1] - 35:2
**two** [7] - 5:8, 10:12, 10:14, 32:23, 33:3, 39:25, 46:22
**typically** [1] - 39:12

**U**

**ultimate** [1] - 19:11
**ultimately** [1] - 20:22
**unable** [2] - 26:6, 35:13
**unauthorized** [1] - 48:5
**unconventional** [1] - 12:22
**under** [40] - 5:7, 5:8, 7:21, 11:15, 11:24, 12:2, 15:16, 16:24, 17:9, 19:5, 19:22, 21:6, 22:18, 23:1, 23:25, 25:10, 25:16, 25:18, 25:21, 28:5, 28:6, 29:8, 35:12, 36:14, 37:20, 37:21, 37:22, 37:23, 39:7, 39:15, 45:14, 48:5, 48:15, 48:16, 49:22, 51:17, 52:17
**understood** [2] - 22:4, 37:24
**unenforceable** [1] - 17:10
**unique** [4] - 11:10, 11:17, 33:21, 40:8
**United** [2] - 32:4, 46:7
**unless** [1] - 9:24
**unpublished** [1] - 19:18
**unreasonable** [1] - 33:13
**up** [20] - 4:16, 5:5, 5:10, 10:3, 14:25, 15:11, 17:7, 22:15, 23:9, 30:23, 30:24, 31:16, 32:4, 40:9, 40:21, 41:14, 41:22,

42:13, 44:4, 49:9
**upheld** [1] - 51:3
**upholding** [2] - 11:6, 13:25
**usurped** [2] - 36:16, 38:5

**V**

**Variscite** [2] - 46:3, 46:4
**vehicle** [1] - 22:14
**versus** [1] - 46:3
**view** [2] - 9:4, 11:18
**violate** [2] - 13:15, 50:9
**violated** [1] - 37:13
**violates** [2] - 21:19, 21:22
**violation** [12] - 13:15, 17:10, 20:12, 23:15, 23:16, 36:21, 38:1, 45:15, 47:10, 51:9, 51:13, 51:25
**violations** [3] - 20:8, 46:19, 47:5
**visiting** [1] - 33:24
**voice** [1] - 15:7
**voted** [4] - 22:3, 35:25, 36:3, 36:5
**voters** [5] - 6:5, 6:17, 11:8, 22:3, 36:22

**W**

**walked** [1] - 29:1
**walking** [3] - 15:1, 25:5, 25:6
**warning** [1] - 18:16
**Washington** [7] - 45:23, 45:25, 46:12, 46:13, 46:16
**ways** [1] - 39:25
**weekend** [1] - 52:19
**welcome** [2] - 5:11, 52:18
**well-established** [1] - 47:25
**Western** [2] - 45:24, 46:12
**wheelchairs** [1] - 15:23
**wheels** [1] - 24:16
**white** [1] - 46:22
**willing** [3] - 23:24, 26:22, 29:16
**willingness** [1] - 32:15
**word** [2] - 47:15, 47:16
**worth** [1] - 32:11
**wrinkle** [2] - 39:13
**written** [1] - 22:19
**wrote** [1] - 44:15

**Y**

**year** [1] - 43:9
**Yolanda** [1] - 15:6
**York** [4] - 46:3, 46:4, 46:5

**Z**

**zero** [1] - 27:25