UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| JAY CUSKER, LMFT; ALISON GRAYSON; KATHRYN KLOOS, ND; and YOLANDA SUAREZ, DO, | Case No. 6:24-cv-00998-MTK |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| OREGON HEALTH AUTHORITY, an agency of the State of Oregon; and SEJAL HATHI, MD, Director of the Oregon Health Authority, | |
| Defendants. | |

_____

**KASUBHAI,** United States District Judge:

Plaintiffs Jay Cusker, LMFT, Alison Grayson, Kathryn Kloos, ND, and Yolanda Suarez, DO (collectively, "Plaintiffs"), filed this action against the Oregon Health Authority ("OHA") and its director, Sejal Hathi, MD (collectively, "Defendants"), alleging a violation of Title II of the Americans with Disabilities Act ("ADA"). [1] ECF No. 1. Before the Court is Defendants' Motion to Dismiss. ECF No. 13. For the following reasons, Defendants' motion is denied.

_____

[1] Plaintiffs also brought two state law claims, which the Court dismissed without prejudice at oral argument on this motion. *See* ECF No. 25.

## BACKGROUND

### I.     Oregon Psilocybin Services Act

The statute at issue in this case is the Oregon Psilocybin Services Act ("PSA"), which was enacted by Ballot Measure 109 in November 2020. Or. Rev. Stat. § ("ORS") 475A.200-722. The PSA aims to provide a regulatory framework to "[p]ermit persons licensed, controlled and regulated by this state to legally manufacture psilocybin products and provide psilocybin services to persons 21 years of age and older." ORS 475A.205

In enacting the PSA, "The People of the State of Oregon [found]" that "Oregon has one of the highest rates of mental illness in the nation," with "an estimated one in every five adults experiencing mental health problems." ORS 475A.200(1)-(2). The statute explains that "[s]tudies conducted by nationally and internationally recognized medical institutions indicate that psilocybin has shown efficacy, tolerability, and safety in the treatment of a variety of mental health conditions, including but not limited to addiction, depression, anxiety disorders, and end-of-life psychological distress." ORS 475A.200(5).

Another purpose of the PSA is to help educate people "about the safety and efficacy of psilocybin in treating mental health conditions" and "to develop a long-term strategic plan for ensuring that psilocybin services will become and remain a safe, accessible, and affordable therapeutic option for all persons [twenty-one] years of age and older in [Oregon] for whom psilocybin may be appropriate[.]" ORS 475A.205(1)(a),(c). Part of this long-term strategic plan includes "establishing a comprehensive regulatory framework concerning psilocybin products and services under state law." ORS 475A.205(e)(B).

The PSA heavily regulates the use of psilocybin and allows limited access to psilocybin services. The PSA limits the use of psilocybin to "psilocybin service center[s]" under the

supervision of "psilocybin service facilitator[s]." ORS 475A.498. During an "administration session" at a service center, a client "purchases, consumes, and experiences the effects of a psilocybin product under the supervision of a psilocybin service facilitator." ORS 475A.220(1). When a client completes a psilocybin session, the psilocybin service facilitator must certify that the individual has completed the administration session "in a form and manner prescribed by the authority, [and] that the client completed the administration session." ORS 475A.355(3). The PSA does not legalize the purchase, possession, or consumption of psilocybin outside of licensed premises or without a licensed facilitator present. ORS 475A.498.

## II.    Factual Background

Plaintiffs are licensed or trained[2] psilocybin service facilitators who seek to provide home-based psilocybin services to disabled and terminally ill clients who are unable to travel to psilocybin service centers. Compl. ¶¶ 4, 9, 11-14. Plaintiffs Suarez and Cusker sent letters to Defendant OHA requesting the development of a process "to provide reasonable accommodations to clients who could not travel to licensed service centers without violating the PSA and placing [their] facilitator license[s] in jeopardy." *Id.* ¶¶ 15-16. Defendant OHA responded that "there is no legal pathway to make accommodations for psilocybin to be consumed outside of a licensed service center and that the [PSA] would need to be amended to for accommodations to be permitted." *Id.* ¶ 17.

Plaintiffs sue on behalf of themselves and their clients, alleging that Defendants violated Title II of the ADA "by refusing to permit the reasonable accommodation of home-based service necessary to allow individuals with disabilities to access services under the PSA." *Id.* ¶¶ 9, 24.

---

[2] Three of the four Plaintiffs are licensed. Compl. ¶¶ 11-13 Plaintiff Yolanda Suarez is a physician who has completed facilitator training but has not applied for a license to be a psilocybin service facilitator. *Id.* ¶ 14.

Plaintiffs allege that they "suffer continuous and ongoing/imminent injury by being unable to provide psilocybin services to disabled clients who require a reasonable accommodation of home-based service." *Id.* ¶ 20.

**STANDARDS**

## I.    Motion to Dismiss for Lack of Subject Matter Jurisdiction – Fed. R. Civ. P. 12(b)(1)

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks omitted). As such, courts are to presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Advanced Integrative Med. Sci. Institute, PLLC v. Garland*, 24 F.4th 1249, 1256 (2022). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). An objection that a federal court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(b)(1). The Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be either "facial" or "factual." *See Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016). A facial attack on subject matter jurisdiction is based on the assertion "that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction." *Id.*

## II.        Motion to Dismiss for Failure to State a Claim – Fed. R. Civ. P. 12(b)(6)

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Id.* To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *L.A. Lakers,* 869 F.3d at 800. The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556)

**DISCUSSION**

Defendants contend that Plaintiffs' ADA claim must be dismissed because (I) Plaintiffs lack standing to bring such a claim, and (II) Plaintiffs fail to state a claim.

**I.     Standing**

Defendants first move to dismiss Plaintiffs' ADA claim under Rule 12(b)(1), arguing that the Court lacks subject matter jurisdiction because Plaintiffs cannot establish standing.

The U.S. Constitution confers limited authority on the federal courts to hear only active cases or controversies brought by persons who demonstrate standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 337-38 (2016). Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* at 338. To establish Article III standing, "a plaintiff must show 'at an irreducible minimum' (1) 'that he *personally* has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant'; (2) that the injury 'fairly can be traced to the challenged action'; and (3) that the injury 'is likely to be redressed by a favorable decision.'" *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982)).

"[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself." *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982). "[E]valuating the issue of redressability requires an analysis of whether the court has the power to right or to prevent the claimed injury." *Shulman v. Kaplan*, 58 F.4th 404, 409 (9th Cir. 2023) (quotations and citation omitted). Defendants argue that Plaintiffs cannot establish redressability because they seek a remedy Defendants contend is not available in this Court.

Plaintiffs seek declaratory and injunctive relief requiring Defendants to allow psilocybin service facilitators to "provide the reasonable accommodation of home service when necessary to

allow disabled individuals access to psilocybin services." Compl. ¶ 35(b). Defendants argue that

this remedy is unavailable because (A) the Court cannot issue a remedy that would require

Defendants to allow violations of state and federal law, and (B) such a remedy would violate

separation of powers and federalism principles. For those reasons, Defendants argue Plaintiffs

cannot show redressability necessary to establish standing. Thus, the question before the Court is

whether it is within its power to grant the relief Plaintiffs seek.

### A.      State and Federal Controlled Substance Laws

Defendants first argue that the Court cannot use its remedial power where the requested

remedy would "require the State Defendants to directly facilitate[] conduct that is illegal under

both federal and state law." Defs.' Mot. 8-9. Specifically, Defendants argue that ordering them to

allow psilocybin facilitators to provide home service would violate state and federal law—in

particular the Controlled Substances Act ("CSA"), 21 U.S.C. § 802, *et seq.*; and Oregon's

Uniform Controlled Substances Act, ORS 475.005, *et seq.*—prohibiting the distribution,

dispensing, and possession of psilocybin. Plaintiffs argue that they do not seek to have the Court

require provision of controlled substances, but only to provide access to a service that disabled

individuals would otherwise be entitled to absent their disability.

Defendants argue, and this Court agrees, that federal courts generally cannot award relief

that would require a violation of federal law. To support their argument, Defendants rely on

various non-precedential decisions in which district courts have refused to enforce contracts that

would require a violation of the CSA. *See J. Lilly, LLC v. Clearspan Fabric Structures Int'l, Inc.*,

No. 3:18-cv-01104-HZ, 2020 WL 1855190, at *12 (D. Or. Apr. 13, 2020); *Next Step Advisors

LLC v. True Harvest Holdings Inc.*, 641 Supp. 3d 655, 657-58 (D. Ariz. 2022); *Bart St. III v.

ACC Enters., LLC*, No. 2:17-cv-00083-GMN-VCF, 2018 WL 4682318, at *5 (D. Nev. Sept. 27,

2018); *Mann v. Gullickson*, No. 15-cv-03630-MEJ, 2016 WL 6473215, at *7 & n.4 (N.D. Cal. Nov. 2, 2016)). Even if those cases were precedential, they are inapposite and do not help the Court decide the question before it. The fundamental disagreement at issue here is whether the requested remedy requires Defendants to allow violations of state and federal law, or whether it merely provides ADA-required "access" to otherwise-available services. Defendants' cited cases do not resolve this question.

Plaintiffs rely on *Smith v. 116 S Market LLC*, in which the Ninth Circuit held that an order requiring the defendant to provide access to a marijuana dispensary consistent with ADA obligations did not mandate an illegal act under the CSA. 831 F. App'x. 355, 356 (9th Cir. 2020). There, the district court had ordered the defendant to provide ADA-compliant parking spaces and access routes to its property, which it was leasing to a marijuana dispensary. *Id.* On appeal, the defendant argued that the court lacked the power to order that relief because it would force the defendant to facilitate access to marijuana, an illegal act that violates the CSA. *Id.* The Ninth Circuit rejected the defendant's argument and affirmed the district court's decision, holding that the district court's order was silent as to marijuana use and "merely require[d] that the [d]efendant comply with its obligations under the ADA." *Id.*

The Court agrees with Plaintiffs and finds that their requested remedy rests on physical access rather than use or distribution of a controlled substance in violation of state and federal laws. Plaintiffs do not ask the Court to order the provision of a controlled substance, as Defendants contend. Instead, much like the remedy in *116 S Market*, Plaintiffs seek compliance with the ADA so that their disabled clients will have the same physical access to a service that is available to nondisabled individuals. In *116 S Market*, the plaintiff was a person with paraplegia who was unable to access a marijuana dispensary due to his disability and legally obtain

marijuana. *116 S Market*, 831 F. App'x. at 356. Similarly, here, Plaintiffs' clients are individuals who are unable to travel to and access psilocybin service centers due to their disabilities and legally obtain psilocybin services. Providing physical access to the service at issue here is therefore analogous to the physical access at issue in *116 Market*; the difference is only in the manner of that physical access. Because the remedy sought here would provide ADA-required access rather than mandate a violation of the CSA, a remedy is available in this Court.

### B.      Separation of Powers and Federalism

Defendants next argue that it would be improper for the Court to order Plaintiffs' requested remedy because it is incompatible with the limitations on federal courts imposed by separation of powers and federalism principles.

First, Defendants argue that it would be improper for the Court to order Plaintiffs' remedy under separation of powers principles because the remedy would allow psilocybin service facilitators to administer psilocybin in clients' homes, thus "expand[ing] access to a controlled substance" that "remains categorically illegal under federal law." Defs.' Mot. 10. Defendants' separation of powers arguments rests on the presumption that the remedy requires Defendants to allow violations of the CSA, and fails for the same reasons addressed in the prior section of this opinion.

Second, Defendants argue that a court order granting Plaintiffs' remedy would violate federalism principles because it would "expand[] the use of psilocybin beyond that currently authorized by state law" given that the PSA only allows psilocybin to be administered in psilocybin service centers. *Id.* In response, Plaintiffs argue that Defendants' argument fails because the PSA's restriction on administering psilocybin services only in psilocybin service centers conflicts with ADA requirements. Given this conflict, Plaintiffs argue that the ADA must

prevail over the PSA under the Supremacy Clause and that providing for reasonable accommodation under the ADA would therefore not be improper despite violating the PSA.

Plaintiffs rely on *Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996), for the proposition that the Court may grant relief that would be illegal under state law if such relief is necessary to comply with the ADA. The state statute at issue in *Crowder* required a 120-day quarantine for guide dogs entering the state of Hawaii. *Id.* at 1482. After two visually-impaired plaintiffs brought an ADA claim seeking modifications of that requirement, the district court refused to consider those modifications because the state legislature had already considered and rejected them, and the court concluded that such modifications are within the province of the legislature rather than the courts. *Id.* at 1485. The Ninth Circuit reversed, explaining that "in virtually all controversies involving the ADA and state policies that discriminate against disabled persons, courts will be faced with legislative (or executive agency) deliberation over relevant statutes, rules and regulation." *Id.* The Court concluded that Hawaii's quarantine requirement was "a policy, practice[,] or procedure which discriminates against visually-impaired individuals by denying them meaningful access to state services . . . by reason of their disability in violation of the ADA." *Id.* at 1485. The Ninth Circuit acknowledged the same federalism issues that Defendants argue in this case, noting that it was "mindful of the general principle that courts will not second-guess the public health and safety decisions of state legislatures." *Id.* (citing *Queenside Hills Realty Co. v. Saxl*, 328 U.S. 80, 82-83 (1946)). However, the court reasoned that "when Congress has passed antidiscrimination laws such as the ADA which require reasonable modifications to public health and safety policies, it is incumbent upon the courts to insure that the mandate of federal law is achieved." *Id.*

Plaintiffs here—like the plaintiffs in *Crowder*—challenge and seek modification of a state law to provide what Plaintiffs contend is a reasonable accommodation under the ADA. Defendants do not appear to contest that the Supremacy Clause would apply in this case if the ADA were the only federal law at issue. Instead, they argue that because the accommodation sought would violate a second federal law—the CSA—and because Plaintiffs fail to explain "how the ADA modifies or overrides the CSA," Plaintiffs' Supremacy Clause argument fails. Defs.' Reply 5. Defendants' argument is unpersuasive for the same reasons already explained above: the remedy sought here relates to access and does not mandate violation of the CSA.

For the same reasons discussed in *Crowder*, the Court finds that it would not violate federalism principles to order modification of the PSA if such modification is necessary to bring the act in compliance with the ADA. Therefore, Plaintiffs' ADA claim is redressable and they have established standing.

## II.    Motion to Dismiss for Failure to State a Claim

Defendants also move to dismiss Plaintiffs' ADA claim under Rule 12(b)(6), arguing that Plaintiffs fail to state a claim because there is an "irreconcilable contradiction in that Plaintiffs seek to invoke the power of one federal law (the ADA) to protect conduct that is expressly prohibited under another federal law (the CSA)." Defs.' Mot. 11. This argument mirrors Defendants' standing arguments and fails for the same reason: this case is about whether Defendants must make "reasonable accommodation of home-based service necessary to allow individuals with disabilities to access services under the PSA," Compl. ¶ 24, not whether to authorize "an expansion of Oregon's limited legalization of psilocybin." Defs.'s Mot. 12. It therefore does not bring the ADA into conflict with the CSA.

**CONCLUSION**

For the reasons above, Defendants' Motion to Dismiss (ECF No. 13) is DENIED.

DATED this <u>30th</u> day of May 2025.

<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI (He / Him)
United States District Judge
