UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| JAY CUSKER, LMFT; ALISON GRAYSON; KATHRYN KLOOS, ND; and DR. YOLANDA SUAREZ, DO, | Case No. 6:24-cv-00998-MTK |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| OREGON HEALTH AUTHORITY, *an agency of the State of Oregon*; and DR. SEJAL HATHI, MD, *Director of the Oregon Health Authority*, | |
| Defendants. | |

**KASUBHAI,** United States District Judge:

Plaintiffs Jay Cusker, LMFT; Alison Grayson; Kathryn Kloos, ND; and Yolanda Suarez, DO, filed this action against the Oregon Health Authority ("OHA") and its director, Sejal Hathi, MD, alleging a violation of Title II of the Americans with Disabilities Act ("ADA"). Compl., ECF No. 1. Before the Court is Defendants' Motion for Judgment on the Pleadings. ECF No. 43. For the following reasons, Defendants' motion is granted in part and denied in part.

## BACKGROUND

### I.      Oregon Psilocybin Services Act

At issue in this case is the Oregon Psilocybin Services Act ("PSA"), passed by Ballot Measure 109 in November 2020. Or. Rev. Stat. § ("ORS") 475A.200-722.

The PSA permits "persons licensed, controlled and regulated by [the] state to legally manufacture psilocybin products and provide psilocybin services to persons 21 years of age and older." ORS 475A.205. A person may only possess and consume psilocybin at a psilocybin service center under the supervision of a licensed facilitator. ORS 475A.498. A "psilocybin service center" is defined in the statute as an establishment at which "administration sessions are held" and "other psilocybin services may be provided." ORS 475A.220(13)(a). After an administration session is held at a psilocybin service center, the psilocybin service facilitator must certify that the administration session "was completed in accordance with all applicable requirements, specifications and guidelines, as determined by the Oregon Health Authority." ORS 475A.355(3).

Failure to comply with the PSA may result in both civil and criminal penalties. OHA may revoke, suspend, or restrict a facilitator's license if the licensee "[h]as violated a provision" of the PSA. ORS 475A.477. OHA is also authorized to impose a civil penalty of up to $5,000 for each violation. ORS 475A.513. Finally, a violation of the PSA is a criminal Class C violation, subject to a maximum fine of $500 per violation. ORS 475A.521, 153.018.

## II. Plaintiffs' Claims

Plaintiffs Cusker, Grayson, and Kloos are licensed psilocybin service facilitators. Am. Compl. ¶¶ 12-14, ECF No. 41. Plaintiff Suarez has completed the required training to become a psilocybin facilitator but has not applied for a license. *Id.* ¶ 15.

Plaintiffs allege that their past and prospective disabled clients are physically unable to relocate to a psilocybin service center and require home-based psilocybin services as a reasonable accommodation. *Id.* ¶¶ 5, 12-14, 20.

Plaintiff Cusker alleges that a patient with stage IV metastatic bile duct cancer sought psilocybin services from Cusker, but the patient was bedbound and unable to travel to a service

Page 2 — OPINION AND ORDER

center. *Id.* ¶ 12. The patient wanted to ease his psychological distress regarding his terminal condition, but Plaintiff Cusker could not provide those services and the patient passed away without receiving the treatment. *Id.*

Plaintiff Grayson alleges that she had a patient with terminal cancer who "struggled immensely with acceptance of his approaching death, which studies have repeatedly shown psilocybin-assisted therapy to be effective at relieving[.]" *Id.* ¶ 13. The patient's physical condition and side effects of chemotherapy rendered him unable to travel to a service center. *Id.* He "ultimately passed away without being able to access psilocybin treatment." *Id.*

Plaintiff Kloos alleges that "she was recently involved with the care of a hospice patient dying of terminal illness who wanted to receive psilocybin assisted therapy before he died." *Id.* ¶ 14. He was also unable to visit a service center because of his condition. *Id.* "The patient ultimately passed away without being able to access psilocybin services." *Id.*

Defendant OHA is the Oregon agency responsible for implementing the PSA. *Id.* ¶ 11. Plaintiffs Cusker, Grayson, and Suarez sent letters to OHA to request guidance on whether they could provide reasonable accommodations through home-based services "without violating the PSA and placing [their] facilitator license[s] in jeopardy." *Id.* ¶¶ 16-17. Defendant OHA responded to Plaintiffs Cusker and Grayson that the PSA provides "no legal pathway to make accommodations for psilocybin to be consumed outside of a licensed service center." *Id.* ¶ 18.

Plaintiffs bring a single claim under the ADA challenging Defendants' "refus[al] to permit the reasonable accommodations necessary to allow individuals with disabilities to access services under the PSA." *Id.* ¶ 27. Plaintiffs sue on behalf of themselves and their clients "based on the injuries [Plaintiffs] have directly suffered" and to protect "their clients whose medical conditions prevent them from protecting their own interests through litigation." *Id.* ¶ 23.

Defendants OHA and Hathi, both charged with enforcement of the PSA, move for a judgment on the pleadings, arguing that Plaintiffs lack standing and fail to state a claim.

## STANDARDS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "[T]he pleadings are closed for the purposes of Rule 12(c) once a complaint and answer have been filed." *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005). "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1155 (9th Cir. 2015) (quotation marks and citation omitted). Dismissal for failure to state a claim under Rule 12(b)(6) "is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quotation marks and citation omitted).

## DISCUSSION

Defendants move for judgment in their favor and contend that (I) Plaintiffs lack standing because they fail to allege an imminent injury, and (II) Plaintiffs fail to state a claim under the ADA because they fail to allege a disability.

## I.      Standing

Defendants argue that Plaintiffs lack standing to seek declaratory and injunctive relief because their allegations of future harm are too speculative. Defendants argue that Plaintiffs fail to allege an imminent injury because Plaintiffs do not identify any specific prospective clients who will be denied psilocybin services.

To have standing, plaintiffs must allege an injury in fact that is both concrete and particularized, as well as actual or imminent. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). Plaintiffs may allege either an actual or threatened injury. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). When plaintiffs seek to challenge the legality of a statute that has yet to be enforced against them, "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). "Instead, [the Supreme Court] ha[s] permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent." *Id.* at 159.

### A.    Plaintiffs Cusker, Grayson, and Kloos

The Court finds that Plaintiffs Cusker, Grayson, and Kloos allege an imminent injury that satisfies standing.

Under *Driehaus*, enforcement of a statute is sufficiently imminent to constitute a threatened injury where a plaintiff asserts an intention to engage in a course of conduct that is (1) "proscribed by a statute," (2) "arguably affected with a constitutional interest," and (3) subject to "a credible threat of prosecution." *Id.* In *Driehaus*, the plaintiff was a pro-life organization that challenged a statute that prohibited "false statements during the course of any campaign for nomination or election to public office or office of a political party." *Id.* at 151 (quotation marks, alterations, and citation omitted). "Violation of the false statement statute [was] a first-degree misdemeanor punishable by up to six months of imprisonment, a fine up to $5,000, or both." *Id.* at 153 (citation omitted). The plaintiff organization tried to publish a billboard that stated that then-Congressman Steve Driehaus "voted FOR taxpayer-funded abortion." *Id.* at 154 (quotation marks and citation omitted). Driehaus complained to the Ohio Elections Commission that the

Page 5 — OPINION AND ORDER

organization violated the false statement statute, and a panel of that Commission found probable cause to believe that the organization violated the statute. *Id.* at 154. The organization filed suit seeking declaratory and injunctive relief to prevent enforcement of the allegedly unconstitutional statute. *Id.*

The Supreme Court applied a three-factor test to determine that the plaintiff organization had sufficiently alleged an imminent injury based on a credible threat of the statute's enforcement. First, the plaintiff alleged "an intention to engage in a course of conduct arguably affected with a constitutional interest" because its conduct involved political speech. *Id.* at 161-62. Second, the plaintiff's conduct was "arguably proscribed" by the challenged statute, since the Ohio Election Commission found probable cause that the plaintiff had violated the statute. *Id.* at 162 (quotation marks omitted). Third, there was a credible threat of enforcement because "there [was] a history of past enforcement" that involved both administrative proceedings and "the additional threat of criminal prosecution." *Id.* at 164-67. The defendants also "ha[d] not disavowed enforcement if [plaintiff] ma[d]e similar statements in the future." *Id.* at 165. Accordingly, the plaintiff organization had sufficiently alleged an imminent injury to challenge the statute even though it had not yet been subject to any enforcement. *Id.* at 167.

Here, Plaintiffs Cusker, Grayson, and Kloos meet each of the *Driehaus* factors and sufficiently allege an imminent injury based on a credible fear of PSA enforcement.

### 1.    Plaintiffs' Intended Conduct Is Proscribed by Statute

First, Plaintiffs allege an intention to engage in conduct that is proscribed by statute. Plaintiffs allege that they intend to accommodate their patients' disabilities by providing psilocybin services outside of a service center, which is directly contrary to the PSA's requirement that psilocybin be consumed only at a psilocybin service center. ORS 475A.498.

Page 6 — OPINION AND ORDER

Defendants argue that Plaintiffs fail to allege an intent to engage in unlawful conduct because they fail to allege specific patients they will serve in the future. However, the Court finds that Plaintiffs need not name specific patients they wish to treat; it is sufficient that they are in a position to do so and intend to do so, in violation of the law. For example, in *Isaacson v. Mayes*, abortion providers challenging an anti-abortion statute on behalf of their patients did not name specific patients who sought abortion services; it was enough that "Plaintiffs declared an intention to perform abortions . . . [and that] many abortions they would otherwise perform could be deemed violations of the statute." 84 F.4th 1089, 1099 (9th Cir. 2023). Similarly, here, Plaintiffs allege that they became licensed psilocybin facilitators, discussed psilocybin services with interested patients who were unable to travel to service centers, and wrote to OHA to obtain guidance as to those services. Plaintiffs expect to have similar patients "in the near future" and believe they have a "professional and legal obligation to" provide services that are currently proscribed by statute. Am. Compl. ¶ 20. These allegations sufficiently establish an intent to engage in unlawful conduct.

### 2. Plaintiffs' Intended Conduct Implicates Constitutional Interests

Second, Plaintiffs' intended conduct is "arguably affected with a constitutional interest." *Driehaus*, 573 U.S. at 159. A statute that threatens monetary fines and revocation of a professional license implicates constitutional interests in property under the Fourteenth Amendment. *Isaacson*, 84 F.4th at 1099. Here, as in *Isaacson*, Plaintiffs face a threat to their property through the loss of their licenses, the loss of revenue, and the monetary penalties imposed by both the civil and criminal provisions of the PSA. *See* ORS 475A.477, 475A.513, 475A.521. Plaintiffs' intended conduct thus implicates their constitutional interests under the Fourteenth Amendment.

Page 7 — OPINION AND ORDER

3.    Plaintiffs' Intended Conduct Is Subject to Prosecution

Third and finally, Plaintiffs' conduct is subject to "a credible threat of prosecution." *Driehaus*, 573 U.S. at 159. To establish such a threat, the Ninth Circuit usually requires a plaintiff to allege (1) "a concrete plan to violate the law," (2) "a specific warning or threat to initiate proceedings" by enforcement authorities, and (3) a "history of past prosecution or enforcement." *Isaacson*, 84 F.4th at 1099 (quotation marks and citation omitted). But where the challenged law was recently enacted and plaintiffs choose to avoid enforcement by refraining from the unlawful conduct, plaintiffs need not show a history of past prosecution. *Id.* at 1099-1100. Both the Ninth Circuit and Supreme Court "have found standing where no one had ever been prosecuted under the challenged provision." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000) (citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979)). Further, criminal consequences are not necessary; the threat of "administrative action . . . may give rise to harm sufficient to justify pre-enforcement review." *Driehaus*, 573 U.S. at 165.

To start, because the PSA was enacted less than four years before Plaintiffs filed suit and Plaintiffs have voluntarily refrained from engaging in unlawfully administering psilocybin, Plaintiffs need not allege a history of past prosecution. Accordingly, the Court looks only to whether Plaintiffs have alleged a concrete plan to violate the PSA and whether they have received a warning or threat of enforcement. Plaintiffs sufficiently allege both.

Plaintiffs allege a concrete plan to violate the PSA. Defendants argue that Plaintiffs allege only a mere desire, not a concrete plan, to provide services in violation of the PSA. Defendants argue that those allegations are insufficient to establish a concrete plan under *Lujan*.

This case is distinguishable from *Lujan*. In *Lujan*, the plaintiffs challenged regulations under the Endangered Species Act that would allegedly harm endangered species such as crocodiles, elephants, and leopards. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 557-58, 562-65

Page 8 — OPINION AND ORDER

(1992). Two of the plaintiff organization's members alleged prior visits to Egypt and Sri Lanka, where the regulations would allegedly harm endangered species. *Id.* at 563-64. The plaintiff's members alleged that they intended to return to those countries to observe the endangered animals, but at least one of the members "confessed that she had no current plans" to return. *Id.* (quotation marks and citation omitted). The Supreme Court held that "[s]uch some day intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the actual or imminent injury that [Supreme Court] cases require." *Id.* at 564 (quotation marks omitted).

Here, Plaintiffs have demonstrated more than "some day intentions." Plaintiffs Cusker, Grayson, and Kloos took all the required steps to become licensed psilocybin facilitators, discussed the intended course of conduct with prospective patients, reached out to OHA for guidance as to how to effectuate their plans, and then filed this lawsuit to allow them to engage in the proscribed conduct. Further, this case is unlike *Lujan* because the desired conduct is unlawful. As the Supreme Court noted in *Driehaus*, nothing in its previous decisions "requires a plaintiff . . . to confess that he will in fact violate th[e] law." 573 U.S. at 163. Like in that case, where plaintiffs pled the "specific statements they intend[ed] to make in [the] future," here, Plaintiffs demonstrate a concrete plan to violate the PSA by alleging the specific conduct they intend to take in the future: administering psilocybin to individuals who have disabilities and are unable to travel to a service center. *Id.* at 161.

Plaintiffs also allege a warning or threat of enforcement by OHA. To allege a credible threat of enforcement, Plaintiffs need not allege that they received an explicit warning; rather, other circumstances may indicate a reasonable fear of enforcement. *Isaacson*, 84 F.4th at 1100.

An enforcement authority's refusal to disavow an intention to prosecute is also probative of a credible threat of enforcement. *Driehaus*, 573 U.S. at 164.

Here, Plaintiffs wrote to OHA to seek guidance on its enforcement of the PSA, and Defendant OHA explicitly advised Plaintiffs that providing home-based services is unlawful. If Plaintiffs were to provide such services, they face criminal and civil penalties under the PSA in addition to the loss of their professional licenses. OHA has not disavowed any intent to prosecute Plaintiffs for violating the PSA and has not otherwise pointed to anything that suggests enforcement is unlikely. Plaintiffs have sufficiently alleged a credible threat of enforcement.

In sum, Plaintiffs Cusker, Grayson, and Kloos sufficiently allege an imminent injury posed by OHA's credible threat of enforcement of a statute that implicates Plaintiffs' constitutional interests. Those Plaintiffs have standing to challenge Defendants' alleged ADA violation.

### B.    Plaintiff Suarez

Plaintiff Suarez, on the other hand, does not have standing. Unlike Plaintiffs Cusker, Grayson, and Kloos, Plaintiff Suarez is not a licensed psilocybin facilitator and thus has not had, and could not have, clients who receive psilocybin treatment. Am. Compl. ¶ 15. She does not allege that she has ever worked with or spoken to clients who expressed an interest in receiving psilocybin services outside of a licensed service center. Plaintiff Suarez alleges a desire to engage in the proscribed course of conduct, but her failure to obtain both the license and the patients that would allow her to do so means she does not satisfy any of the *Driehaus* factors. She is not in a position to engage in the proscribed course of conduct even if it were legal. She has fewer, if any constitutional interests that are affected by the challenged conduct because she does not face loss of her facilitator's license or revenue, since she has no license that would allow her to obtain such revenue. Finally, she is not subject to a credible threat of enforcement

Page 10 — OPINION AND ORDER

because she cannot be said to have any concrete plan to violate the PSA. Accordingly, Plaintiff Suarez has not sufficiently alleged an imminent injury to establish her standing in this case.

## II.    Failure to State a Claim

Defendants additionally argue that Plaintiffs fail to state a claim under the ADA because they do not allege a qualified disability under that statute—Plaintiffs do not "identify the disability or disabilities that the hypothetical clients will have." Defs.' Mot. 15. Plaintiffs contend that Defendants misconstrue their claim as an individualized ADA claim and argue that they state a claim under the disparate impact framework that applies to programmatic ADA challenges. Pls.' Resp. 16, ECF No. 44. This Court agrees with Plaintiffs and finds that they successfully state a disparate impact claim under the ADA.

"Discrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect." *Alexander v. Choate*, 469 U.S. 287, 295 (1985). In 1990, Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Congress noted that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, [and] failure to make modifications to existing facilities and practices . . . ." 42 U.S.C. § 12101(a)(5). "Congress intended to prohibit outright discrimination, as well as those forms of discrimination which deny disabled persons public services disproportionately due to their disability." *Crowder v. Kitagawa*, 81 F.3d 1480, 1483 (9th Cir. 1996).

Generally, a plaintiff alleging a violation of Title II of the ADA must show that "he is a qualified individual with a disability[.]" *Payan v. L.A. Cmty. Coll. Dist.*, 11 F.4th 729, 737 (9th

Page 11 — OPINION AND ORDER

Cir. 2021). But Title II's enforcement provision extends relief to "any person alleging discrimination on the basis of disability." 42 U.S.C. § 12133. Accordingly, a plaintiff can allege a qualified disability sufficient for a Title II claim even if the plaintiff does not have a disability. *Socal Recovery v. Costa Mesa*, 56 F.4th 802, 814 (9th Cir. 2023).

For example, in *Socal Recovery*, the plaintiffs were companies that operated sober living homes in Costa Mesa, California for individuals recovering from drug and alcohol addiction. *Id.* at 805. The City of Costa Mesa amended its zoning ordinances and required the closure of sober living homes that operated within 650 feet of each other. *Id.* The City denied the plaintiffs' requests for accommodations and the plaintiffs filed suit, alleging that the City's ordinances violated the ADA. *Id.* The district court granted summary judgment to the City because the plaintiffs failed to provide individualized evidence of their residents' disabilities. *Id.* at 813.

On appeal, the Ninth Circuit reversed the district court and held that the plaintiffs "stated a claim under the ADA because they were alleging discrimination on the basis of disability." *Id.* (quotation marks and citations omitted). Rather than providing evidence of their residents' individual disabilities, the plaintiff companies could allege disability "on a collective basis by demonstrating that they serve[d] or intend[ed] to serve individuals with actual disabilities." *Id.* at 814. The companies could "meet their burden by proffering admissible evidence that they ha[d] policies and procedures to ensure that they serve[d] or [would] serve those with actual disabilities" and that they would adhere to those policies. *Id.* at 814-15.

Here, Plaintiffs similarly allege discrimination on the basis of disability despite not having a disability themselves. Like in *Socal Recovery*, Plaintiffs "serve or intend to serve individuals with actual disabilities." *Id.* at 814. Plaintiffs allege that their previous patients were bedbound and that their prospective patients are similarly disabled and unable to travel to a

psilocybin service center. The Court can plausibly infer from Plaintiffs' allegations that a patient unable to reach a psilocybin service center would be disabled under the ADA. *See* 42 U.S.C. § 12102(1)-(2) (defining "disability" as including "a physical or mental impairment that substantially limits . . . walking, standing, lifting, bending . . . ."). And, as described above, Plaintiffs have adhered to all the necessary procedures to show that they will serve those disabled individuals if permitted. Plaintiffs cannot be expected to show existing policies and procedures at this stage because those policies and procedures would be in violation of the law challenged here. Rather, Plaintiffs demonstrated their intent to serve disabled individuals by obtaining their facilitator licenses, discussing treatment options with disabled clients and with the OHA, and filing suit to enable them to administer such treatment. Plaintiffs sufficiently allege disability on a collective basis and state a claim under the ADA.

## CONCLUSION

For the reasons discussed above, Defendants' Motion for Judgment on the Pleadings (ECF No. 43) is GRANTED with regard to Plaintiff Suarez's standing and DENIED on all other grounds.

DATED this 17th day of March 2026.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (he/him)
United States District Judge