**SCOTT J. ALDWORTH**, OSB No. 113123
saldworth@kelrun.com
Kell, Alterman & Runstein, L.L.P.
520 S.W. Yamhill, Suite 600
Portland, OR 97204
Telephone: +1.503.222.3531

*Of Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**EUGENE DIVISION**

JAY CUSKER, LMFT; ALISON GRAYSON; KATHRYN KLOOS, ND; and DR. YOLANDA SUAREZ, DO,

Plaintiffs,

v.

OREGON HEALTH AUTHORITY, an agency of the State of Oregon; and DR. SEJAL HATHI, MD, Director of the Oregon Health Authority,

Defendants.

Case No. 6:24-cv-00998-MTK

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

## TABLE OF CONTENTS

**Page(s)**


I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 2

III. Procedural History ........ 4

IV. Legal Standard ........ 5

V. ARGUMENT ........ 5

VI. CONCLUSION ........ 12




**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alexander v. Choate*,
469 U.S. 287 (1985)....6

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....5

*Cal. Found. for Indep. Living Ctrs. v. Cnty. of Sacramento*,
142 F. Supp. 3d 1035 (E.D. Cal. 2015)....7, 8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....5

*Crowder v. Kitagawa*,
81 F.3d 1480 (9th Cir. 1996)....6, 7, 8, 9

*Cusker v. Or. Health Auth.*,
No. 6:24-cv-00998-MTK, 2026 WL 752705 (D. Or. Mar. 17, 2026)....6

*D.M. v. Or. Sch. Activities Ass'n*,
No. 6:22-CV-01228-MTK, 2026 WL 776275 (D. Or. Mar. 19, 2026)
(Kasubhai, J)....5

*Green v. Tri-Cnty. Metro. Transp. Dist. of Oregon Or.*,
909 F. Supp. 2d 1211 (D. Or. 2012), *aff'd*, 583 F. App'x 832 (9th Cir. 2014)....8, 10

*Kulin v. Deschutes Cnty.*,
872 F. Supp. 2d 1093 (D. Or. 2012)....10

*Martin v. PGA Tour, Inc.*,
994 F. Supp. 1242 (D. Or. 1998)....11

*Nat'l Fed'n of the Blind v. Lamone*,
813 F.3d 494 (4th Cir. 2016)....9

*Payan v. L.A. Cmty. Coll. Dist.*,
11 F.4th 729 (9th Cir. 2021)....5

*PGA Tour, Inc. v. Martin*,
532 U.S. 661 (2001)....10, 11

*Queenside Hills Realty Co. v. Saxl*,
328 U.S. 80, 66 S. Ct. 850, 90 L. Ed. 1096 (1946)....9



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

*Townsend v. Quasim*,
328 F.3d 511 (9th Cir. 2003) ....................................................................................8, 10

**STATUTES**

42 U.S.C. §§ 12101–12213 (1990) ........................................................................... passim

ORS 475A.200 ........................................................................................................... passim

ORS 475A.205 ..........................................................................................................2, 3, 11

ORS 475A.220 ..................................................................................................................3

ORS 475A.355(3) ..............................................................................................................3

ORS 475A.498 ..................................................................................................................3

**RULES**

Fed. R. Civ. P. 56(a) ..........................................................................................................5

**REGULATIONS**

28 C.F.R. § 35.130(b)(7)(i) ..................................................................................................8



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

## LR 7-1 CERTIFICATION

Pursuant to Local Rule 7-1(a)(1)(A), undersigned counsel certifies that the parties made a good faith effort to resolve this motion by agreement but were unable to do so.

## LR 7-2 CERTIFICATION

This brief complies with the applicable word-count limitation under Local Rule 7-2(b) because it is under thirty-five (35) pages and consists of approximately 3,964 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

## I. INTRODUCTION

This case presents a straightforward question under Title II of the Americans with Disabilities Act ("ADA"): whether Defendants may categorically refuse to make reasonable modifications for homebound disabled and terminally ill individuals seeking psilocybin services under the Oregon Psilocybin Services Act, solely due to the statutory language within the act which requires services to be provided at a licensed service center. It may not. Oregon voters created the program to establish access to psilocybin services, including for terminally ill individuals suffering from end-of-life psychological distress and other disabling conditions. Yet Defendants administer the program in a manner that bars a discrete group of disabled Oregonians from participating at all.

The material facts are not in dispute. The Oregon Psilocybin Services Act limits administration sessions to licensed service centers. As applied, that requirement denies meaningful access to Oregonians whose disabilities prevent them from traveling to those locations. Plaintiffs are licensed facilitators and care providers who work closely with such individuals, including terminally ill and homebound patients who sought psilocybin services but could not obtain them because Defendants refuse to permit any accommodation outside a service center. Plaintiffs presented the need for accommodation directly to Oregon Health Authority,



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

which confirmed that, in its view, there is no legal pathway to allow psilocybin administration outside a licensed service center.

Summary judgment is warranted because Plaintiffs' claim presents a legal issue on undisputed facts. Plaintiffs challenge a facially neutral rule that has a discriminatory effect on disabled individuals who are physically unable to travel to a service center. That is a classic disparate-impact claim under Title II. Title II and its implementing regulations require public entities to make reasonable modifications when necessary to avoid disability-based discrimination, unless the requested modification would fundamentally alter the nature of the program. Defendants cannot avoid that obligation by hiding behind the text of the statute.

Nor would the requested modification fundamentally alter the Oregon Psilocybin Services Act. The purpose of the program is to provide safe and accessible psilocybin services to Oregonians, not to require that every administration session occur at a service center regardless of disability. A limited modification permitting access for homebound individuals who cannot travel would further, not undermine, the statute's stated purpose. Because there is no genuine dispute that the service-center requirement denies meaningful access to a class of disabled individuals, and because Defendants remain legally obligated to make reasonable modifications, Plaintiffs are entitled to judgment as a matter of law.

## II. FACTUAL BACKGROUND

The following facts are not in reasonable dispute.

In November 2020, Oregon voters passed Ballot Measure 109, codified as the Oregon Psilocybin Services Act ("PSA"), ORS 475A.200 to 475A.722. Defendant Oregon Health Authority ("OHA") is tasked with implementing the PSA by "[e]stablish[ing] a comprehensive regulatory framework concerning psilocybin products and psilocybin services under state law." ORS 475A.205(e)(B).

The PSA permits the ingestion of psilocybin in the presence of licensed psilocybin facilitators following the completion of certain procedures within the setting of a licensed



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

"service center." *See, e.g.*, ORS 475A.205; ORS 475A.498. For example, a client "[purchases,] consumes[,] and experiences the effects of a psilocybin product under the supervision of a psilocybin service facilitator" during what is called an "administration session," which is conducted at a "service center." ORS 475A.220(1); ORS 475A.220(8). Plaintiffs are all licensed psilocybin facilitators as provided within the PSA. *See* First Amended Complaint ("FAC") (Dkt. 41) ¶¶ 12–14; *see also* Cusker Decl. at ¶1; *see also* Kloos Decl. at ¶1.

Upon the completion of an administration session, the psilocybin service facilitator must certify that the individual has completed the administration session "in a form and manner prescribed by the authority, [and] that the client completed the administration session." ORS 475A.355(3). The PSA does not legalize the purchase, possession, or consumption of psilocybin outside of licensed premises or without a licensed facilitator present. ORS 475A.498.

One of the findings underlying the creation of the PSA, as provided within the statute, is that psilocybin has shown efficacy, tolerability, and safety in treating various mental health conditions, including addiction, depression, anxiety disorders, and end-of-life psychological distress. ORS 475A.200(5). Among the stated purposes of the PSA are to help educate people "about the safety and efficacy of psilocybin in treating mental health conditions" and "to develop a long-term strategic plan for ensuring that psilocybin services will become and remain a safe, accessible[,] and affordable therapeutic option for all persons [twenty-one] years of age and older in [Oregon] for whom psilocybin may be appropriate[.]" ORS 475A.205(1)(a), (c).

Plaintiffs have had disabled individuals as clients who have expressed a desire to pursue psilocybin services but were barred from doing so because they were physically unable to travel to a service center. *See* FAC ¶¶ 12–14; *see also* Cusker Decl. at ¶¶2-3; *see also* Kloos Decl. at ¶¶2-3.

On or around September and October 2023, Plaintiffs Cusker and Grayson each independently sent letters to OHA inquiring whether they could provide reasonable accommodations to homebound, disabled clients, such as at-home psilocybin treatment. *See* Cusker Decl. at ¶4; *see also* Exhibit 1 to Aldworth Decl. at 19:17–21, 21:15–17; *see also* Exhibit



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

3 to Aldworth Decl. OHA responded that, under its interpretation of the PSA, there is no legal pathway to allow for modifications for disabled Oregonians seeking to access the program yet unable to travel to a service center – categorically rejecting modifications of this nature without regard to any disabled person's individual circumstance. Exhibit 1 to Alworth Decl. at 59:17–22, 60:10–18, 61:23–25, 62:1–4; *see also* Cusker Decl. at ¶5; *see also* Exhibit 4 to Aldworth Decl. OHA has not evaluated the burden or feasibility of such modifications beyond its reading of the statue. *See* Exhibit 1 to Aldworth Decl. at 68:12–25, 69:1–3.

Plaintiffs brought the present action with a single claim under the ADA, challenging Defendants' "refus[al] to permit the reasonable accommodations necessary to allow individuals with disabilities to access services under the PSA." FAC ¶ 27. Plaintiffs seek prospective declaratory and injunctive relief, to allow them to provide reasonable accommodations to disabled clients as required by the ADA. *See id.* ¶¶ 10–11.

## III. PROCEDURAL HISTORY

The Court has ruled twice on substantive issues in this case, each time largely in Plaintiffs' favor.

First, the Court found that "Plaintiffs' ADA claim is redressable and they have established standing" and denied OHA's motion to dismiss. Order on Motion to Dismiss (Dkt. 27) at 11. In so doing, the Court found it could provide ADA-required access as a remedy for Plaintiffs' claims, *id.* at 7–9, that no separation of powers or federalism concerns barred this remedy, *id.* at 9–11, and that Plaintiffs had stated a claim under the ADA despite OHA's arguments that the ADA was at odds with the Controlled Substances Act, *id.* at 11.

Second, the Court denied OHA's motion for judgment on the pleadings as to Plaintiffs Cusker, Grayson, and Kloos.[1] Order on Motion for Judgment on the Pleadings (Dkt. 56) at 13. In so doing, the Court found that Plaintiffs Cusker, Grayson, and Kloos had standing to bring their

[1] The Court found that Plaintiff Suarez lacked standing to assert her claim. Dkt. 56 at 13.



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

ADA claims. *Id.* at 5–11. The Court also found that they "sufficiently allege disability on a collective basis and state a claim under the ADA." *Id.* at 13.

## IV. LEGAL STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show 'that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law.'" *D.M. v. Or. Sch. Activities Ass'n*, No. 6:22-CV-01228-MTK, 2026 WL 776275, at *2 (D. Or. Mar. 19, 2026) (Kasubhai, J) (quoting Fed. R. Civ. P. 56(a)) (alteration in original). "Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute." *Id*. (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial." *Id*. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## V. ARGUMENT

### A. Summary judgment is appropriate because there is no genuine issue of material fact that Defendants are in violation of the ADA.

As the Court noted in denying Defendants' Motion for Judgment on the Pleadings, Plaintiffs have brought a disparate impact claim under the ADA. Dkt. 56 at 13. As the Ninth Circuit recently explained, "[w]here a plaintiff challenges a program's policy or practice of failing to remedy systemic barriers, rather than the individual's experience with requesting accommodations to address those barriers, this type of claim is more appropriately evaluated under the disparate impact framework than the failure to reasonably accommodate framework." *Payan v. L.A. Cmty. Coll. Dist.*, 11 F.4th 729, 739 (9th Cir. 2021).

Here, summary judgment is appropriate on Plaintiffs' disparate impact claim because: (1) there is no genuine issue of material fact that the service center requirement has a disparate impact on individuals with disabilities; (2) as a matter of law, Defendants are required to make reasonable modifications to the service center requirement when necessary to allow disabled



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

individuals to access the PSA program; (3) as a matter of law, the fact that the service center requirement is written into the PSA statute does not excuse Defendants from their obligation to make reasonable modifications; and (4) the requested modifications would not fundamentally alter the nature of the PSA program.

**1. The service center requirement has a disparate impact on individuals with disabilities.**

"Discrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect." *Cusker v. Or. Health Auth.*, No. 6:24-cv-00998-MTK, 2026 WL 752705, at *6 (D. Or. Mar. 17, 2026) (quoting *Alexander v. Choate*, 469 U.S. 287, 295 (1985)). Through the ADA, "Congress intended to prohibit outright discrimination, as well as those forms of discrimination which deny disabled persons public services disproportionately due to their disability." *Id.* (quoting *Crowder v. Kitagawa*, 81 F.3d 1480, 1483 (9th Cir. 1996)). When a facially neutral law or policy has the effect of denying disabled individuals "'meaningful access' to state-provided services," this gives rise to a disparate impact claim under Title II of the ADA. *Crowder*, 81 F.3d at 1484 (citation omitted).

A disparate impact claim may be brought when a certain class of disabled individuals is denied equal access to a public service or program due to a facially neutral law or policy. For example, in *Crowder*, the Ninth Circuit reviewed a state statute that required a 120-day quarantine for all cats, dogs, and other carnivorous animals entering Hawaii. *Id.* at 1481-82. The Court held that, although the law was facially neutral, it had the effect of discriminating against visually impaired individuals who utilized guide dogs:

> Although Hawaii's quarantine requirement applies equally to all persons entering the state with a dog, its enforcement burdens visually-impaired persons in a manner different and greater than it burdens others. Because of the unique dependence upon guide dogs among many of the visually-impaired, Hawaii's quarantine effectively denies these persons - the plaintiffs in this case - meaningful access to state services, programs, and activities while such services, programs, and activities remain open and easily accessible by others. The quarantine, therefore, discriminates against the plaintiffs by reason of their disability.



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

*Id.* at 1484. Because the law had the effect of denying disabled individuals access to state services and programs, the Court held that the state was required to make reasonable modifications necessary to avoid discrimination. *Id.* at 1485; *see also Cal. Found. for Indep. Living Ctrs. v. Cnty. of Sacramento*, 142 F. Supp. 3d 1035, 1061 (E.D. Cal. 2015) ("'To challenge a facially neutral government policy on the ground that it has a disparate impact on people with disabilities, the policy must have the effect of denying meaningful access to public services.' A policy may deny meaningful access by imposing a disproportionate burden on the disabled. When a state's polices discriminate in violation of the ADA, the state ***must*** make reasonable modifications to avoid the discrimination.") (emphasis added and citations omitted).

Here, Plaintiffs seek to provide services to individuals whose disabilities render them homebound. *See* Cusker Decl. at ¶¶2-3; *see also* Kloos Decl. at ¶¶2-3; *see also* Exhibit 3 to Aldworth Decl. There is no genuine issue of material fact that the facially neutral service center requirement has the effect of discriminating against these individuals. By definition, individuals who are homebound are unable to travel to a service center. Because of this, homebound individuals are being denied meaningful access to the PSA program. Oregonians who do not have this type of disability are able to freely access services under the program, but individuals who are homebound are unable to access such services solely by reason of their disabilities. Because the service center requirement effectively denies meaningful access to the PSA program to homebound individuals, there is no genuine issue of material fact that it has the effect of discriminating against such individuals because of their disabilities and gives rise to disparate impact claim under Title II of the ADA.

**2. Defendants are required to make reasonable modifications to the service center requirement when necessary to allow disabled individuals to access the PSA program.**

The regulations implementing the ADA explicitly state, "[a] public entity ***shall*** make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service,



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

program, or activity." 28 C.F.R. § 35.130(b)(7)(i) (emphasis added). Again, courts have repeatedly held that public entities are required to make reasonable modifications when a statute or policy has a disparate impact on individuals with disabilities. *See e.g., Crowder*, 81 F.3d at 1485; *Townsend v. Quasim*, 328 F.3d 511, 517 (9th Cir. 2003) ("When a state's policies discriminate against the disabled in violation of the ADA, the ADA's regulations mandate reasonable modifications to those policies in order to avoid discrimination on the basis of disability, at least when such modification would not fundamentally alter the nature of the services provided by the state."); *Cal. Found. for Indep. Living Ctrs.*, 142 F. Supp. 3d at 1061 ("When a state's polices discriminate in violation of the ADA, the state must make reasonable modifications to avoid the discrimination."); *Green v. Tri-Cnty. Metro. Transp. Dist. of Oregon Or.*, 909 F. Supp. 2d 1211, 1216 (D. Or. 2012), *aff'd*, 583 F. App'x 832 (9th Cir. 2014) ("Title II of the ADA imposes liability on a public entity for not making reasonable accommodations to the known physical or mental limitations of a user of their services") (internal quotations and citation omitted). The only exception to this requirement is when the public entity can demonstrate that the requested modifications would fundamentally alter the nature of the program, which, as discussed below, is not the situation here. Because the PSA's service center requirement has the effect of denying disabled individuals meaningful access to the program, Defendants are required as a matter of law to allow reasonable modifications necessary to enable the individuals Plaintiffs wish to treat to have access to the program.

### 3. The fact that the service center requirement is written into the PSA statute does not excuse Defendants from their obligation to make reasonable modifications.

Defendants have consistently taken the position that they are unable to allow reasonable modifications to the service center requirement because it is written into the PSA's statutory language and Defendants do not "have the authority to change state law." Exhibit 1 to Aldworth Decl. at 59:17-22; *see also* Exhibit 2 to Cusker Decl.; *see also* Exhibits 2, 3, 4 to Aldworth Decl. This position has no legal basis.



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

The Ninth Circuit in *Crowder* explicitly rejected this exact argument. In that case, the district court had refused to consider the plaintiffs' proposed modifications because the legislature had already considered the issue and decided, through the language of the statute, that the quarantine requirement would apply to all dogs entering the state. 81 F.3d at 1485. The Ninth Circuit held that such deference to the legislature was in error and that statutory language did not override the legal obligation to make reasonable modifications under the ADA:

> The district court concluded it could not assess the reasonableness of the plaintiffs' proposed modifications in light of the legislature's own consideration of the issue. Yet in virtually all controversies involving the ADA and state policies that discriminate against disabled persons, courts will be faced with legislative (or executive agency) deliberation over relevant statutes, rules and regulations.
>
> The court's obligation under the ADA and accompanying regulations is to ensure that the decision reached by the state authority is appropriate under the law and in light of proposed alternatives. Otherwise, any state could adopt requirements imposing unreasonable obstacles to the disabled, and when haled into court could evade the antidiscrimination mandate of the ADA merely by explaining that the state authority considered possible modifications and rejected them.
>
> We are mindful of the general principle that courts will not second-guess the public health and safety decisions of state legislatures acting within their traditional police powers. *See Queenside Hills Realty Co. v. Saxl*, 328 U.S. 80, 82-83, 66 S. Ct. 850, 851-52, 90 L. Ed. 1096 (1946). However, when Congress has passed antidiscrimination laws such as the ADA, which require reasonable modifications to public health and safety policies, it is incumbent upon the courts to insure that the mandate of federal law is achieved.

*Id.* As stated above, the court held that reasonable modifications for disabled individuals were required under the ADA, even though the quarantine requirement was written into the state statute. *Id.*; *see also Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 508 (4th Cir. 2016) ("[D]efendants' argument—that the mere fact of a state statutory requirement insulates public entities from making otherwise reasonable modifications to prevent disability discrimination—cannot be correct.")



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

Here, the fact that the service center requirement is written into the statutory language of the PSA does not excuse Defendants from their obligations under the ADA. What Plaintiffs seek is not to "change state law," as Defendants contend. *See* Exhibit 1 to Aldworth Decl. at 59:22. Rather, it is a reasonable modification to state law, which is fully consistent with—and required by—the ADA. Defendants' attempt to shirk their responsibilities under the ADA by hiding behind statutory language has no legal merit. As a matter of law, Defendants are required to make reasonable modifications that are necessary to enable disabled individuals to access services under the PSA, even if that means making modifications to statutory requirements.

**4. The requested modifications would not fundamentally alter the nature of the PSA.**

As referenced *infra*, Defendants have consistently taken the position that they need not allow reasonable modifications to the service center requirement because deviation from the statutory language of the PSA would itself result in a fundamental alteration of the program. *See* Dkt. Def. Mot. to Dismiss at pp. 8, 11; *see also* Def. Answer to FAC at p.2; Exhibit 1 to Aldworth Decl. at 61:23-62:02; *see also* Exhibits 2, 4 to Aldworth Decl. Defendants misconstrue the law. *See, e.g., Kulin v. Deschutes Cnty*., 872 F. Supp. 2d 1093, 1100 (D. Or. 2012) ("simply because a requested accommodation would alter a substantive rule or regulation does not render it unreasonable"); *Townsend*, 328 F.3d at 19 (explaining that "a change to the way services are currently provided" is not in itself a fundamental alteration from the program, despite "Congress's and the state legislature's considered policy decisions to provide long term care services to medically needy persons only in nursing homes.").

Instead, a requested modification fundamentally alters the nature of the subject program if it alters an "essential aspect" of the program. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 682–83 (2001).[2] "In routine cases, the fundamental alteration inquiry may end with the question [of] whether a rule is essential." *Id.* at 683 n.38. In *PGA*, the Supreme Court considered whether

---

[2] "The Ninth Circuit has made clear that even though Title II of the ADA uses the term reasonable modifications rather than reasonable accommodations, those terms create identical standards." *Green*, 909 F. Supp. 2d at 1216 (internal quotations and citation omitted).



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

allowing a disabled golfer "to use a golf cart, despite the walking requirement" that applied to the PGA Tour would "fundamentally alter the nature" of the event. *Id*. at 682. The *PGA* Court determined that it would not because "the use of carts is not itself inconsistent with the fundamental character of the game of golf" because "the essence of the game has been shotmaking," as "reflected in the very first of the Rules of Golf." *Id*. at 683–84 (internal citations omitted). The *PGA* Court went on to state that even if "the walking rule is 'outcome affecting,'" the petitioner's "refusal to consider [the individual's] personal circumstances in deciding whether to accommodate his disability runs counter to the clear language and purpose of the ADA." *Id*. at 688.

Here, like in *PGA*, allowing for reasonable modifications from the service enter requirement for homebound Oregonians is not inconsistent with the fundamental character of the PSA because the fundamental character of the PSA is "to improve the physical, mental, and social well-being of ***all people*** in this state," and to ensure "that psilocybin services will become and remain a safe, ***accessible*** and affordable therapeutic option" for Oregonians. ORS 475.205(1)(b)-(c) (emphasis added). As in *PGA*, the very first provision of the PSA provides the essence of the program - that "psilocybin has shown efficacy, tolerability, and safety in the treatment of a variety of mental health conditions, including but not limited to addiction, depression, anxiety disorders, and end-of-life psychological distress," such that a regulatory framework should be developed that will allow Oregonians to be provided psilocybin services. ORS 475A.200(5). Thus, the service center requirement is not an essential attribute of the PSA itself – access to psilocybin services is. Accordingly, modifications from the service center requirement would not fundamentally alter the program.

Defendants' refusal to consider requests for modification from the service center requirement for homebound Oregonians additionally fails as a matter of law because, as the Supreme Court explained in *PGA*, requests for modification should not be denied on a categorical basis. *See also*, *Martin v. PGA Tour, Inc.*, 994 F. Supp. 1242, 1249 (D. Or. 1998) (a fundamental alteration inquiry "focuses on the specifics" of the disabled person's "circumstances



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

and not on the general nature of the accommodation"). As a matter of law, Defendants cannot refuse to assess requests for modification from the service center requirement on a categorical basis, nor insist that any modification to the text of the PSA would fundamentally alter the nature of the program.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Summary Judgment and enter judgment in their favor on their Title II ADA claim. The Court should declare that Defendants' categorical refusal to allow reasonable modifications to the Oregon Psilocybin Services Act's service-center requirement unlawfully denies disabled, homebound individuals meaningful access to the program. The Court should further enjoin Defendants from enforcing the service-center requirement without reasonable modification, where such modification is necessary to afford program access to otherwise eligible individuals with disabilities and would not fundamentally alter the nature of the program.



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

Dated: April 17, 2025

**KELL, ALTERMAN & RUNSTEIN, L.L.P.**

By: *s/ Scott J. Aldworth*

SCOTT J. ALDWORTH, OSB No. 113123
saldworth@kelrun.com
DENNIS STEINMAN, OSB No. 954250
dsteinman@kelrun.com
Kell, Alterman & Runstein, L.L.P.
520 S.W. Yamhill, Suite 600
Portland, OR 97204
Telephone: +1.503.222.3531

**PERKINS COIE LLP**

HOLLY MARTINEZ, OSB No. 192265
hmartinez@perkinscoie.com
Perkins Coie LLP
1120 NW Couch St., Floor 10
Portland OR, 97209
Telephone: +1.503.727.2281
Fax: +1.503.727.2222

JORDAN HARRIS, *pro hac vice*
jordanharris@perkinscoie.com
Perkins Coie LLP
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: +1.206.359.8000
Fax: +1.206.359.9000

**NATIONAL PSYCHEDELICS ASSOCIATION**

KATHRYN L. TUCKER, *pro hac vice*
kathryn@yournpa.org
National Psychedelics Association
453 Manor Pl. NW, Apt. 2
Washington, DC 20010
Telephone: +1.206.595.0097

*Attorneys for Plaintiffs*