DAN RAYFIELD
Attorney General
SHAUNEE MORGAN #194256
ALEXANDER C. JONES #213898
CARTER BRACE #243828
Assistant Attorneys General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: Shaunee.Morgan@doj.oregon.gov
Alex.Jones@doj.oregon.gov
Carter.Brace@doj.oregon.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JAY CUSKER, LMFT; ALISON GRAYSON; KATHRYN KLOOS, ND; and DR. YOLANDA SUAREZ, DO,

Plaintiffs,

v.

OREGON HEALTH AUTHORITY, an agency of the State of Oregon; and DR. SEJAL HATHI, MD, Director of the Oregon Health Authority,

Defendants.

Case No. 6:24-cv-00998-MTK

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

LR 7-1 CERTIFICATION ........ 1

LR 7-2 CERTIFICATION ........ 1

MOTION ........ 1

MEMORANDUM OF LAW ........ 1

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 3

A. Oregon's Psilocybin Services Act (PSA) ........ 3

B. The PSA in Practice ........ 3

1. Oregon Psilocybin Services (OPS) ........ 3

2. Psilocybin Product Manufacturers ........ 4

3. Laboratories ........ 4

4. Psilocybin Service Centers ........ 5

5. Psilocybin Service Facilitators ........ 6

6. Clients ........ 7

7. Product Tracking System ........ 7

8. Life Cycle of a Psilocybin Product ........ 9

9. Transportation, Storage, and Disposal of Psilocybin Products ........ 10

C. This Litigation ........ 12

III. LEGAL STANDARDS ........ 12

IV. ARGUMENT ........ 13

A. The Court Lacks Jurisdiction Over This Case. ........ 13

1. Plaintiffs Cusker and Kloos lack standing to assert an ADA claim. ........ 14

2. Plaintiffs' alleged injuries cannot be redressed through this litigation. ........ 20

3. Plaintiff Grayson's ADA claim is moot. ........ 22

B. Plaintiffs have not met their burden for an ADA Title II claim. ........ 24



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

C. Altering the PSA to allow off-site psilocybin services would be a fundamental alteration. .......... 25

1. Standard for Fundamental Alteration Defense .......... 26

2. Allowing for the provision of psilocybin services outside of licensed service centers would be a fundamental alteration of the PSA. .......... 27

a. Safety and Health Risks .......... 28

b. Risks of Diversion and Tampering .......... 28

c. Need to Redevelop Tracking System .......... 29

d. Changes to How Psilocybin Products are Transferred, Sold, and Stored .......... 30

e. Changes to Facilitator Role and Training .......... 30

f. Need for New Program and Standards to Evaluate Requests for Off-Site Services .......... 31

g. Need for Inspection of Off-Site Premises .......... 31

h. Need for Safety and Emergency Plans for Off-Site Premises .......... 32

V. CONCLUSION .......... 33



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU of Nev. v. Lomax*,
471 F.3d 1010 (9th Cir. 2006) ....................14

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................13

*Arc of Wash. State Inc. v. Braddock*,
427 F.3d 615 (9th Cir. 2005) ....................26

*Bayer v. Neiman Marcus Group, Inc.*,
861 F.3d 853 (9th Cir. 2017) ....................23, 24

*Block v. City of Los Angeles*,
253 F.3d 410 (9th Cir. 2001) ....................18

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................24

*Cline v. Indus. Maint. Eng'g & Contracting Co.*,
200 F.3d 1223 (9th Cir. 2000) ....................12

*Crandall v. Starbucks Corp.*,
249 F. Supp. 3d 1087 (N.D. Cal. 2017)....................19

*Crawford v. Uber Technologies, Inc.*,
616 F. Supp. 3d 1001 (N.D. Cal. 2022)....................27

*Crowder v. Kitagawa*,
81 F.3d 1480 (9th Cir. 1996) ....................26

*E. Bay Sanctuary Covenant v. Trump*,
932 F.3d 742 (9th Cir. 2018) ....................14

*Etienne v. Ferguson*,
791 F. Supp. 3d 1226 (W.D. Wash. 2025)....................15, 16

*Fortyune v. Am. Multi-Cinema, Inc.*,
364 F.3d 1075 (9th Cir. 2004) ....................27

*Foster v. Carson*,
347 F.3d 742 (9th Cir. 2003) ....................24



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Gamble v. City of Escondido*,
*104 F.3d 300 (9th Cir. 1997)* ....................25

*Glass v. Hillsboro Sch. Dist. 1J*,
142 F. Supp. 2d 1286 (D. Or. 2001) ....................20

*Hewitt v. Helms*,
482 U.S. 755 (1987)....................23

*Insight Psychology & Addiction, Inc. v. City of Costa Mesa*,
801 F. Supp. 3d 942 (C.D. Cal. 2025) ....................24, 25

*Isaacson v. Mayes*,
84 F.4th 1089 (9th Cir. 2023) ....................15

*Kulin v. Deschutes Cnty.*,
872 F. Supp. 2d 1093 (D. Or. 2012) ....................27

*Lavelle-Hayden v. Legacy Health*,
744 F. Supp. 3d 1135 (D. Or. 2024) ....................18

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................13, 15

*M.S. v. Brown*,
902 F.3d 1076 (9th Cir. 2018) ....................21, 22

*Martin v. PGA Tour, Inc.*,
994 F. Supp. 1242 (D. Or. 1998), *aff'd*, 204 F.3d 994 (9th Cir. 2000), *aff'd*,
532 U.S. 661 (2001)....................25

*Matter of York*,
78 F.4th 1074 (9th Cir. 2023) ....................24

*Mayfield v. City of Mesa*,
131 F.4th 1100 (9th Cir. 2025) ....................25

*Olmstead v. L.C. ex rel. Zimring*,
*527 U.S. 581 (1999)* ....................26

*Orr v. Bank of Am., NT & SA*,
285 F.3d 764 (9th Cir. 2002) ....................18

*Pac. Nw. Generating Co-op. v. Brown*,
822 F. Supp. 1479 (D. Or. 1993), *aff'd*, 38 F.3d 1058 (9th Cir. 1994)....................22

*Pierce v. County of Orange*,
526 F.3d 1190 (9th Cir. 2008) ....................25



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Planned Parenthood Great Northwest. v. Labrador*,
122 F.4th 825, 837 (9th Cir. 2024) ....................15

*PNW Metal Recycling, Inc. v. Dep't of Env't Quality*,
371 Or. 673 (2023)....................22

*Powers v. Ohio*,
499 U.S. 400 (1991)....................20

*Pruett v. Arizona*,
606 F. Supp. 2d 1065 (D. Ariz. 2009) ....................26

*Rubin v. City of Santa Monica*,
308 F.3d 1008 (9th Cir. 2002) ....................14

*S. A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co.*,
690 F.2d 1235 (9th Cir. 1982) ....................13

*San Diego Cnty. Gun Rights Comm. v. Reno*,
98 F.3d 1121 (9th Cir. 1996) ....................15

*Shavelson v. Bonta*,
608 F. Supp. 3d 919 (N.D. Cal. 2022)....................27

*Slojewski v. Polam Fed. Credit Union*,
473 Fed. Appx. 534 (9th Cir. 2012) (unpublished)....................19

*Smith & Lee Assocs., Inc. v. City of Taylor*,
*102 F.3d 781 (6th Cir. 1996)* ....................22

*Spencer v. Kemna*,
523 U.S. 1 (1998)....................14

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014)....................15, 20

*Townsend v. Quasim*,
328 F.3d 511 (9th Cir. 2003) ....................26, 32

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................13

*United States v. $133,420.00 in U.S. Currency*,
672 F.3d 629 (9th Cir. 2012) ....................12

*Van Asdale v. Int'l Game Tech.*,
577 F.3d 989 (9th Cir. 2009) ....................19



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Wash. Env't Council v. Bellon*,
732 F.3d 1131 (9th Cir. 2013) ....................20

*Where Do We Go Berkeley v. Cal. Dep't of Transp.*,
32 F.4th 852 (9th Cir. 2022) ....................26, 27, 28, 32

*Yaeger v. Bowlin*,
693 F.3d 1076 (9th Cir. 2012) ....................18

*Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041 (9th Cir. 1999) ....................27

**Statutes**

ORS 475A.205....................28

ORS 475A.210 to 475A.722....................3

ORS 475A.220.................... *passim*

ORS 475A.220(1) ....................6

ORS 475A.235....................3, 7

ORS 475A.275....................3

ORS 475A.290(2) ....................4

ORS 475A.305....................3, 5

ORS 475A.310....................5

ORS 475A.325....................3, 6

ORS 475A.345....................6, 7

ORS 475A.355....................3, 6, 7

ORS 475A.360(1) ....................6, 7

ORS 475A.380(1) ....................31

ORS 475A.400....................7, 8, 28, 29

ORS 475A.435(3) ....................3

ORS 475A.498....................3, 5, 6, 7

ORS 475A.590....................4, 9



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

ORS 475A.594 ....... 4, 9

ORS 475A.606 ....... 4, 9

**United States Code**

42 U.S.C. § 12132 ....... 23

**Rules and Regulations**

28 C.F.R. § 35.130(b)(7)(i) ....... 26, 32

28 C.F.R. § 35.150(a)(3) ....... 27

Fed. R. Civ. P. 56(a) ....... 12

Fed. R. Evid. 801(c) ....... 18

OAR 333-333-1010 ....... 4, 5, 9

OAR 333-333-2020(1)(e) ....... 9

OAR 333-333-2300(2) ....... 9

OAR 333-333-3010 ....... 6

OAR 333-333-3020 ....... 6, 31

OAR 333-333-3060 ....... 6

OAR 333-333-3090 ....... 6

OAR 333-333-4450 ....... 5

OAR 333-333-4460(1) ....... 5

OAR 333-333-4510(1)–(2) ....... 11

OAR 333-333-4550(1) ....... 11

OAR 333-333-4600(1)–(2) ....... 11

OAR 333-333-4620(1) ....... 11

OAR 333-333-4630(1)(c) ....... 11

OAR 333-333-4650(1) ....... 11

OAR 333-333-5000 ....... 7



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

OAR 333-333-5120 ....6

OAR 333-333-5120(1)....7

OAR 333-333-5130 ....6, 7, 29

OAR 333-333-5170(1), (3) ....9, 10

OAR 333-333-5240(2)....10

OAR 333-333-6030(1)(c) ....4

OAR 333-333-7010 ....4

OAR 333-333-7020(1)....9

OAR 333-333-7150 ....4

OAR 333-333-8000 ....12

OAR 333-333-8100 ....9, 10, 11

**Constitutional Provisions**

U.S. Const., Art. III, § 2....13



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## LR 7-1 CERTIFICATION

Pursuant to Local Rule 7-1(a)(1)(A), counsel for Defendants certify that they conferred in good faith with counsel for Plaintiffs on Defendants' Motion for Summary Judgment and the parties were unable to resolve the dispute.

## LR 7-2 CERTIFICATION

This brief complies with the applicable word-count limitation under Local Rule 7-2(b) because it is under 11,000 words, including headings footnotes, and quotations, but excluding the caption, table of contents, table of cases and authority, signature block, exhibits, and any certificates of counsel.

## MOTION

Pursuant to Federal Rule of Civil Procedure 56, Defendants Oregon Health Authority and Director Sejal Hathi, MD move for an order granting summary judgment in their favor on Plaintiffs' claim under the Americans with Disabilities Act.

This motion is supported by the Declaration of Angela Allbee ("Allbee Declaration"), the Declaration of Shaunee Morgan ("Morgan Declaration"), and Defendants' Response to Plaintiffs' Motion for Summary Judgment, each filed concurrently herewith, as well as the Memorandum of Law set forth below, and the existing Court file.

## MEMORANDUM OF LAW

### I. INTRODUCTION

Oregon's voters were presented with and approved a ballot measure to provide for a narrow legalization of psilocybin in the state. The measure was subsequently codified by the Legislature through the Psilocybin Services Act ("PSA"). Central to the ballot measure, the PSA, and the comprehensive system that the State Defendants have designed is that the sale and consumption of psilocybin may occur *only* at licensed centers. Plaintiffs believe that this core requirement of the PSA violates the Americans with Disabilities Act ("ADA") vis-a-vis terminally ill disabled individuals who are unable to travel to the centers. Plaintiffs do not challenge the ballot initiative that was presented to the voters or the PSA adopting that initiative.



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Instead, they challenge the State Defendants' compliance with the express limitations written into the PSA and ask the Court to usurp the democratic and legislative process and mandate that the state allow for the sale and consumption of psilocybin outside of licensed facilities.

Plaintiffs' claim fails for several reasons: (1) lack of Article III standing; (2) failure to satisfy the elements of an ADA claim; and (3) requested relief that would result in a fundamental alteration to the PSA.

First, the Court lacks jurisdiction over this case. There is no evidence that Plaintiffs Cusker and Kloos are at imminent risk of not being able to provide facilitation services to any person with a disability unable to travel to a licensed service center. Thus, they have *no* injury for standing purposes. Further, the Court cannot redress Plaintiffs' alleged injury because it lacks authority to order Defendants to take an action (i.e., allow for the sale and consumption of psilocybin outside of licensed service center) that they have no authority to do under state law. And Plaintiff Grayson's claim is moot because she is no longer a licensed facilitator and cannot benefit from any decision of this Court.

Second, even if Plaintiffs had established this Court's jurisdiction, Defendants would be entitled to summary judgment for Plaintiffs' failure to make the necessary prima facie showing for their ADA Title II claim. Plaintiffs have not provided any admissible evidence showing that the PSA's service-center requirement disparately impacts individuals with disabilities. Nor have they met their burden of showing that their requested modification is reasonable. Plaintiffs have not even specified *how* they want or expect the service-center requirement to be modified.

Third, to the extent Plaintiffs are asking this Court to rewrite the PSA to allow for the provision of psilocybin services outside of licensed service centers, such a modification would fundamentally alter the PSA by undermining OHA's ability to address health and safety risks, imposing extensive financial and administrative burdens on OHA, and requiring the creation of new monitoring and tracking systems.

Defendants are therefore entitled to summary judgment in their favor.



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## II. BACKGROUND

### A. Oregon's Psilocybin Services Act (PSA)

The PSA establishes a regulatory framework for the lawful manufacture, delivery, and possession of psilocybin products in the state of Oregon. ORS 475A.275; *see generally* ORS 475A.210 to 475A.722. Under the PSA, a client may purchase a psilocybin product at a "psilocybin service center" from a licensed "psilocybin service center operator" and then consume the product under the supervision of a licensed "psilocybin service facilitator." ORS 475A.220(13)–(15); ORS 475A.305 (service center operator license); ORS 475A.325 (facilitator license); ORS 475A.435(3) (sale must be restricted to the licensed service center). "A client may purchase, possess, and consume a psilocybin product . . . [o]nly at a psilocybin service center; and . . . [o]nly under the supervision of a psilocybin service facilitator." ORS 475A.498.

A "psilocybin service facilitator" is "an individual that facilitates the provision of psilocybin services in this state." ORS 475A.220(15). Psilocybin services include an "administration session": "a session held at a psilocybin service center at which a client purchases, consumes, and experiences the effects of a psilocybin product under the supervision of a psilocybin service facilitator." ORS 475A.220(1), (16). Under the PSA, an administration session "must be held at a psilocybin service center." ORS 475A.355(2).

### B. The PSA in Practice

#### 1. Oregon Psilocybin Services (OPS)

The PSA is implemented by Oregon Psilocybin Services ("OPS"), a section housed within the Public Health Division of the Oregon Health Authority ("OHA"). Allbee Decl. ¶ 9. OPS's role is to develop and administer the regulatory framework for the provision of psilocybin services subject to the PSA. *See* Allbee Decl. ¶¶ 15–17. OPS is a fee-based section, which means that its operations are funded by licensing fees. *Id.* ¶ 13; ORS 475A.235(2)(d)(G), (5).

OHA itself does not produce psilocybin products or provide psilocybin services; rather, OHA administers the licensing and regulation of the individuals and businesses who participate



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

in the manufacturing, testing, and sale of psilocybin products and the provision of psilocybin services. *Id.* ¶¶ 21, 27–52, Ex. 12 at 42. OHA licenses and regulates four license types: manufacturers, service centers, laboratories, and facilitators. *Id.* ¶¶ 27–52, Ex. 12 at 42. For initial licenses and subsequent renewals, OHA conducts thorough review of the application and required documents, conducts site inspections as applicable, and ensures the applicant has completed any requisite training programs. *Id.* ¶¶ 33, 38, 45, 52. Each of those four roles is separately defined and regulated under the PSA, as further explained below.

**2. Psilocybin Product Manufacturers**

A "psilocybin product manufacturer" is "a person that manufacturers psilocybin products in this state." ORS 475A.220(11). Each psilocybin product manufacturer "must have a manufacturer license issued by [OHA] for the premises at which the psilocybin products are manufactured." ORS 475A.290(2). Administrative rules establish requirements for the production, storage, packaging, labeling, transfer, and tracking of psilocybin products by manufacturers. *See* OAR 333-333-2010 through 333-333-2410.

**3. Laboratories**

The PSA directs OHA to adopt rules establishing standards for testing psilocybin products as is necessary to protect public health and safety. ORS 475A.590(1). That testing must be conducted by a laboratory licensed and accredited by OHA. ORS 475A.590(6); ORS 475A.594; ORS 475A.606. Administrative rules establish minimum compliance testing standards for psilocybin products, and a manufacturer or service center may not transfer, accept, or provide a psilocybin product unless it has been sampled and tested in accordance with those rules. OAR 333-333-7010(1)–(2); *see* OAR 333-333-7010 through OAR 333-333-7150. Laboratories may not receive, possess, or perform sampling or testing of psilocybin products from any source other than a licensed premises. OAR 333-333-6030(1)(c).



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**4. Psilocybin Service Centers**

A "psilocybin service center" is an establishment at which administration sessions are held and at which other psilocybin services may be provided. ORS 475A.220(13). An "administration session" is "a session . . . at which a client . . . consumes[] and experiences the effects of a psilocybin product under the supervision of a psilocybin service facilitator." ORS 475A.220(1). "A client may purchase, possess, and consume a psilocybin product . . . [o]nly at a psilocybin service center." ORS 475A.498(1).

A psilocybin service center operator must have a service center operator license issued by OHA for the premises at which psilocybin services are provided. ORS 475A.305(2). The PSA establishes specific requirements for where a service center may be located. *See, e.g.*, ORS 475A.305(2)(d) (service center must not be located in an area that is within the limits of incorporated city or town and is zoned exclusively for residential use); ORS 475A.310 (service center may not be within 500 feet of an elementary or secondary school).

Administrative rules provide further requirements aimed at ensuring the safety of service center premises, including the requirement that every service center must create and maintain a service center safety and emergency plan. OAR 333-333-4460(1). Psilocybin products may be transferred to and consumed by a client, and administration sessions may take place, only within a "client administration area" within the licensed premises of a service center. OAR 333-333-1010(16); OAR 333-333-4450(7). Client administration areas must be free of conditions that could pose a risk to clients experiencing the effects of consuming psilocybin products. OAR 333-333-4450(2). During an administration session, only clients and facilitators may access the client administration area unless each client receiving services in that area has given prior written consent for other individuals to be present during the session. OAR 333-333-4450(4). Service center licensees must take reasonable steps to prevent access to client administration areas by unauthorized individuals while administration sessions are taking place. OAR 333-333-4450(4).



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**5. Psilocybin Service Facilitators**

"A client may purchase, possess, and consume a psilocybin product . . . [o]nly under the supervision of a psilocybin service facilitator." ORS 475A.498. A "psilocybin service facilitator" is "an individual that facilitates the provision of psilocybin services in this state." ORS 475A.220(15). Psilocybin services include a "preparation session," an "administration session," and an "integration session." ORS 475A.220(16). A "preparation session" is "a meeting between a client and a psilocybin service facilitator that must occur before the client participates in an administration session." ORS 475A.220(9). An "administration session" is "a session at which a client consumes and experiences the effects of a psilocybin product under the supervision of a psilocybin service facilitator." ORS 475A.220(1). An "integration session" is "a meeting between a client and a psilocybin service facilitator that may occur after the client completes an administration session." ORS 475A.220(3). While preparation sessions and integration sessions *may* be held at a psilocybin service center, "[a]n administration session *must* be held at a psilocybin service center." ORS 475A.345(2); ORS 475A.360(2); ORS 475A.355(2) (emphasis added).

A psilocybin facilitator must have a facilitator license issued by OHA. ORS 475A.325(2). The PSA establishes minimum eligibility requirements for a facilitator license, which include "completion of education and training prescribed and approved by [OHA]" and passage of "an examination approved, administered or recognized by [OHA]." ORS 475A.325(2)(e)–(f); *see* OAR 333-333-3010 through OAR 333-333-3090 (establishing requirements and process for OHA approval of a facilitator training program). Each training program must cover certain curriculum modules specified in the rules. OAR 333-333-3020(1); OAR 333-333-3060.

Administrative rules further set out requirements for facilitator conduct and define a facilitator's scope of practice. *See* OAR 333-333-5120; OAR 333-333-5130. Facilitators have a duty to put clients' interest above their own, and facilitators may not engage in any financial



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

transactions with clients that violate that duty. OAR 333-333-5120(1). A facilitator may not transfer, sell, or otherwise handle any psilocybin product while they are facilitating a preparation, administration, or integration session. OAR 333-333-5130(2).

### 6. Clients

A "client" is "an individual that is provided psilocybin services in this state." ORS 475A.220(2). "A client may purchase, possess, and consume a psilocybin product: (1) Only at a psilocybin service center; and (2) Only under the supervision of a psilocybin service facilitator." ORS 475A.498.

Under Oregon's model for psilocybin services, clients may access services for any reason and do not have to be a state resident. Allbee Decl. ¶ 54; *see* ORS 475A.235(4) ("[OHA] may not require a client to be diagnosed with or have any particular medical condition as a condition to being provided psilocybin services.").

Before a client participates in an administration session, the client must attend a preparation session with a psilocybin facilitator. ORS 475A.345(1); *see* OAR 333-333-5000 (Preparation Session Requirements). During the preparation session, among other requirements, the facilitator must review several documents with the client, including an informed consent document, a Client Bill of Rights, a product information document, applicable sections of the service center's emergency plan, and the service center's policy on possession of firearms and weapons. OAR 333-333-5000(8). After completing a preparation session and signing a client information form, a client may participate in an administration session. ORS 475A.355(1). "An administration session must be held at a psilocybin service center." ORS 475A.355(2). After the administration session, the client may, but need not, participate in an integration session. ORS 475A.360(1).

### 7. Product Tracking System

The PSA requires OHA to track psilocybin products. ORS 475A.400(1). The purposes of tracking include preventing the diversion of psilocybin products to other states, preventing



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

persons from substituting or tampering with psilocybin products, ensuring an accurate accounting of the production, processing, and sale of psilocybin products, ensuring that laboratory testing results are accurately reported, and ensuring compliance with the PSA and rules adopted under the PSA. ORS 475A.400(2). The PSA requires that the tracking system be capable of tracking, at a minimum: the manufacturing of psilocybin products, the sale of psilocybin products by a licensed service center operator to a client, the sale and purchase of psilocybin products between licensees (such as between manufacturers and service centers), and the transfer of psilocybin products between licensed premises. ORS 475A.400(3).

OHA designed, developed, and implemented its own system for tracking psilocybin products: the OPS Product Tracking System ("PTS"). Allbee Decl. ¶ 61. PTS is a part of OPS's online platform for Training Program, Licensing, and Compliance ("TLC"). *Id.* ¶ 61. From 2021 to February 2026, OHA spent approximately $2,000,000 to develop and implement TLC, including approximately $500,000 spent between 2021 and 2025 to develop PTS. *Id.* ¶ 62.

PTS tracks inventory and record-keeping activities of psilocybin products. *Id.* ¶ 63. PTS is used by manufacturers, laboratories, and service centers to input tracking data for the psilocybin products that they are creating, testing, transferring, and selling. *Id.* ¶ 63. It has separate pages for manufacturers, laboratories, and service centers to view and input data relevant to their license type with respect to psilocybin products. *Id.* ¶¶ 63–64, Exs. 13–15 (PTS user manuals for manufacturers, laboratories, and service centers). OPS has access to all PTS data and monitors activity to ensure compliance. *Id.* ¶ 63.

Psilocybin facilitators do not use and do not have access to PTS, and there is no PTS portal for any point of access for facilitators. *Id.* ¶ 65. That is because facilitators do not sell, transfer, or otherwise handle or receive psilocybin products. *Id.* ¶ 65.

PTS is designed around the PSA's service-center model and assumes that psilocybin products will be stored by service centers and sold to and consumed by clients only at licensed service centers. *Id.* ¶ 66.



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

### 8. Life Cycle of a Psilocybin Product

The PSA and its implementing administrative rules govern psilocybin products throughout their life cycle, from cultivation through consumption or disposal. *Id.* ¶ 68. At each stage of its life cycle, a psilocybin product must be stored at licensed premises, except when it is being transferred between licensed premises subject to the requirements governing product transport. *Id.* ¶ 68; *see* OAR 333-333-8100(2)(c)(B) ("Licensees . . . may not transfer psilocybin products to, nor store psilocybin products in or at any unlicensed premises.").

A psilocybin product begins with the cultivation of psilocybin-producing fungi by a manufacturer. Allbee Decl. ¶ 69. Each quantity of fungi that is harvested must be identified with a specific "harvest lot," and each quantity of fungi, psilocybin extract, or edible psilocybin product must be identified with a specific "process lot," each of which must have a unique identification number that is entered into the product tracking system. OAR 333-333-1010(41), (68), (97); OAR 333-333-2020(1)(e).

Every psilocybin product produced by a manufacturer must be tested by a laboratory licensed and accredited by OHA. Allbee Decl. ¶ 70; ORS 475A.590(1), (6); ORS 475A.594; ORS 475A.606. When ordering tests, the manufacturer must provide the laboratory with various information required by rule, including the unique identification numbers assigned to products that will be samples. OAR 333-333-7020(1).

After being tested, a psilocybin product may be transferred to a service center. Allbee Decl. ¶ 71. A psilocybin product transferred to a service center for ultimate sale to a client must be in sealed client packaging using tamper tape, wrapping, or a similar method that indicates the product has not been opened prior to purchase. OAR 333-333-2300(2). Psilocybin products may only be sold and transferred to clients within a designated administration area at a service center by a licensee representative of the service center. OAR 333-333-5170(1), (3). The licensee representative of the service center must transfer the psilocybin product to the client in sealed client packaging and must ensure that the client consumes psilocybin products promptly,



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

except for “secondary doses” of psilocybin products that have been purchased by a client. OAR 333-333-5170(4)–(5). A client may purchase a secondary dose of psilocybin product(s) prior to beginning the administration session, which the client then may choose to consume during the administration session. Allbee Decl. ¶ 73; OAR 333-333-5240(2). The secondary dose must be stored at a designated, secured location within the service center’s licensed premises and must remain in sealed client packaging until consumed. OAR 333-333-5240(3)(c), (e). If the client does not consume the secondary dose during the administration session, the client must return the secondary dose to the service center, and the service center must provide the client with a refund for the price of the secondary dose if it remains in its original sealed client packaging. OAR 333-333-5240(3)(f), (6).

The service center representative must observe the client consuming any psilocybin products and dispose of packaging waste appropriately. OAR 333-333-5170(6).

**9. Transportation, Storage, and Disposal of Psilocybin Products**

Administrative rules establish strict requirements for the transportation of psilocybin products between licensed premises (i.e., between manufacturers, laboratories, and service centers). OAR 333-333-8100. Prior to removing a psilocybin product from the originating licensed premises for the purposes of transport or delivery, the originating licensee must use the product tracking system to generate a printed transport manifest which is built into the TLC-PTS system. OAR 333-333-8100(3)(a).

When transporting a psilocybin product, a licensee must: store psilocybin products in the delivery vehicle within a locked, secured area, shielded from view of the exterior of the vehicle; use a delivery vehicle that is equipped with an alarm system; travel directly from the originating location to the destination location described in the manifest route; and notify OHA of every stop at an unlicensed location that exceeds two hours in duration and is not already listed in the manifest route. OAR 333-333-8100(2)(b)(A)–(K). The licensee may not: make any unnecessary stops except to other licensed premises receiving inventory as described on the manifest; remove



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

psilocybin products from the vehicle before arriving at the destination recorded in the manifest; transfer psilocybin products to, or store psilocybin products in or at any unlicensed premises; void or change a manifest after departing the originating licensed premises; or travel with any persons not listed on the manifest. OAR 333-333-8100(2)(c)(A)–(D). Upon receipt of a delivery of psilocybin products, the receiving licensee must: record each applicable unique identification number in the product tracking system as accepted and received or as rejected; verify the psilocybin products received are as described on the manifest and record receipt of the psilocybin products in the product tracking system if accepted; and document any differences between the quantities specified on the manifest and the quantities received in the product tracking system. OAR 333-333-8100(4).

Licensees must store psilocybin products in accordance with strict requirements. Allbee Decl. ¶ 78. All psilocybin products must be stored within a limited access area on licensed premises, either within a locked safe or within an enclosed area with a steel door with a steel frame and a commercial grade, non-residential lock. OAR 333-333-4510(1)–(2). A licensee is responsible for the security of all psilocybin products on the licensed premises or in transit from the licensed premises, including providing adequate safeguards against theft or diversion of psilocybin products. OAR 333-333-4550(1). Each licensed premises must have a fully operational security alarm system with at least two operational "panic buttons" that immediately notify a security company or law enforcement. OAR 333-333-4600(1)–(2). Each licensed premises must have a fully operational video recording system, covering all points of ingress and egress to and from indoor areas of the licensed premises, all areas where psilocybin products are stored or produced, and all areas where psilocybin waste is required to be stored, destroyed, or rendered unusable. OAR 333-333-4620(1); OAR 333-333-4630(1)(c); OAR 333-333-4650(1). Security cameras must continuously record for 24 hours a day. OAR 333-333-4650(1).

Administrative rules also establish strict requirements for the disposal of psilocybin products, as well as solid and liquid waste generated during production and processing of



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

psilocybin products. *See* OAR 333-333-8000. Licensees must store psilocybin waste in either a limited access area or a locked waste receptacle located on the licensed premises until it is disposed. OAR 333-333-8000(2). All psilocybin waste that has been disposed of or destroyed must be recorded as waste in the product tracking system. OAR 333-333-8000(8).

### C. This Litigation

Plaintiffs Cusker, Grayson, Kloos, and Suarez filed the First Amended Complaint ("Complaint") in this matter on September 22, 2025. *See* ECF No. 41. Plaintiffs Cusker and Kloos are licensed facilitators under the PSA. *See* ECF No. 61 ¶ 1, ECF No. 62 ¶ 1. Plaintiff Grayson was a licensed facilitator until July 2025, *see* Morgan Decl. Ex. 7 (Grayson Depo.) 10:2–11:1, and Plaintiff Suarez has never been a licensed facilitator, *see* ECF No. 41 at 7. The Complaint alleges that Defendants' position that they cannot allow for the provision of psilocybin services outside of licensed service centers violates the ADA rights of disabled individuals seeking those services. *See* ECF No. 41 at 9. Plaintiffs seek injunctive and declaratory relief.

Plaintiffs filed their Motion for Summary Judgment on April 17, 2026, wherein they argue that they "seek to provide services to individuals whose disabilities render them homebound," ECF No. 59 at 11, and that the "service center requirement is not an essential attribute of the PSA." *Id*. at 15.

## III. LEGAL STANDARDS

A grant of summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of fact exists if sufficient evidence favors the nonmoving party such that "a reasonable . . . jury could return a verdict for the nonmoving party." *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (citation omitted). To overcome summary judgment, the opposing party must demonstrate a factual dispute that is both material and genuine. *See United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir.



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

2012) (for purposes of summary judgment "a plaintiff cannot rely on mere allegations but rather must set forth by affidavit or other evidence specific facts" (internal quotation marks and citation omitted)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (nonmoving party must demonstrate a dispute "over facts that might affect the outcome of the suit under the governing law" to preclude entry of summary judgment). Furthermore, "[a] party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S. A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

## IV. ARGUMENT

### A. The Court Lacks Jurisdiction Over This Case.

The doctrines of standing and mootness bar this Court's review of Plaintiffs' claim. The judicial power of the federal courts is limited to "cases" and "controversies." U.S. Const., Art. III, § 2. As the Supreme Court has recently noted: "Under Article III, federal courts do not adjudicate hypothetical or abstract disputes. Federal courts do not possess a roving commission to publicly opine on every legal question. Federal courts do not exercise general legal oversight of the Legislative and Executive branches, or of private entities." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021).

As it relates to standing, the "irreducible constitutional minimum" requires plaintiffs to prove three elements. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, plaintiffs must prove they have suffered an "injury in fact"' that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks omitted). Next, that injury must be "fairly traceable to the challenged action of the defendant." *Id.* (citation and alterations omitted). Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" by the court. *Id.* (internal quotation marks omitted).



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

"Whereas standing is evaluated by the facts that existed when the complaint was filed, mootness inquiries, however, require courts to look to changing circumstances that arise after the complaint is filed. If a 'live' controversy no longer exists, the claim is moot." *ACLU of Nev. v. Lomax*, 471 F.3d 1010, 1016 (9th Cir. 2006) (internal quotation marks and alterations omitted). For federal courts to maintain jurisdiction, Article III requires that cases continue to present a case or controversy for their entire duration. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) ("This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate . . . . The parties must continue to have a 'personal stake in the outcome' of the lawsuit." (citation omitted)). "Generally, a case is rendered moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1013 (9th Cir. 2002) (internal quotation marks and citation omitted).

Defendants are entitled to summary judgment because this case fails to present the requisite case and controversy for Article III purposes for three reasons: (1) Plaintiffs Cusker and Kloos lack standing because the record demonstrates they are not at imminent risk of not being allowed to provide psilocybin facilitation services outside of licensed service centers[1]; (2) the Court lacks authority to grant the relief Plaintiffs seek, which is for Defendants to violate their statutory authority under the PSA; and (3) Plaintiff Grayson's claim is moot because she no longer has a facilitator's license.

**1. Plaintiffs Cusker and Kloos lack standing to assert an ADA claim.**

Courts have "a continuing obligation to assure [their] jurisdiction." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 763 n.6 (9th Cir. 2018) (citations omitted). While general factual allegations of injury may suffice to establish standing at the pleading stage, at summary judgment, the "plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by

[1] In its Opinion and Order on Defendants' Motion for Judgment on the Pleadings, the Court found that Plaintiff Suarez had failed to "sufficiently allege[] an imminent injury" and therefore lacked standing to pursue a claim against Defendants. ECF No. 56 at 10-11.



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

affidavit or other evidence 'specific facts' . . . which for the purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 561 (citing FRCP 56(e)).

In its Opinion and Order on Defendants' Motion for Judgment on the Pleadings, this Court applied the Supreme Court's test for pre-enforcement challenges established in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), to the question of whether the Complaint adequately pled an injury-in-fact. *See* ECF No. 56 at 5-6. Under *Driehaus*, a plaintiff must demonstrate the requisite injury-in-fact by showing "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Driehaus*, 573 U.S. at 159. While "'[a] plaintiff need not plan to break the law' to show an 'intention to engage in a course of conduct under *Driehaus*,'" *Etienne v. Ferguson*, 791 F. Supp. 3d 1226, 1240 (W.D. Wash. 2025) (citation omitted), the Ninth Circuit has held that "'some day' intentions—without . . . specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *San Diego Cnty. Gun Rights Comm. v. Reno,* 98 F.3d 1121, 1127 (9th Cir. 1996) (quoting *Lujan*, 504 U.S. at 564).

Here, the undisputed record shows that Plaintiffs Cusker and Kloos offer nothing more than the hope of one day being able to provide home-based services as facilitators *if* that possibility becomes available to them. In its Opinion and Order on Defendants' Motion for Judgment on the Pleadings, the Court cited favorably to *Isaacson v. Mayes*, 84 F.4th 1089 (9th Cir. 2023). However, *Isaacson* is factually distinguishable in a meaningful way. There, the physician plaintiffs challenging a law that criminalized the "performance of abortions sought solely because of genetic abnormalities" had "regularly" performed those kinds of abortions before the enactment of the law. *Isaacson,* 84 F.4th at 1094. In other words, their intention for future conduct was demonstrated by their documented past conduct. This analysis is generally consistent with courts' application of the *Driehaus* test to pre-enforcement challenges. For example, in *Planned Parenthood Great Northwest. v. Labrador,* the physician plaintiffs'



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

intention to refer patients to abortion providers in other states in violation of the challenged opinion letter was demonstrated by the fact that they provided those referrals before the issuance of that letter. 122 F.4th 825, 837 (9th Cir. 2024); *see also Etienne*, 791 F. Supp. 3d at 1240 (clergy members' intention to not report possible abuse if the information was learned through confession in violation of challenged statute was demonstrated because of their existing practice of not reporting such information).

In contrast, Plaintiffs Cusker and Kloos have no past or current experience doing what they seek to do through this lawsuit, namely to provide facilitation services outside of licensed service centers. And, as detailed below, any intention of engaging in that practice in the future is based exclusively on their hope for the outcome of this litigation.

***Plaintiff Cusker***

There is no evidence that Plaintiff Cusker had or is likely to imminently have homebound terminally ill and disabled clients seeking psilocybin services. The Complaint alleges that "Plaintiff Cusker is not able to provide psilocybin services to clients whose medical condition prevents them from traveling to a licensed service center." ECF No. 41 ¶12. Plaintiff Cusker testified that that allegation refers to four clients: (1) one client from Ashland, Oregon diagnosed with bile duct cancer who traveled to the licensed service center and did, in fact, receive psilocybin services, Morgan Decl. Ex. 6 (Cusker Depo.) at 16:13–22, (2) one client from Portland, Oregon who was too ill to receive psilocybin services, *id.* at 15:13–22, and (3) two other clients from unspecified parts of Oregon who could not take psilocybin due to their cancer medications. *Id.* at 18:5–15.

Plaintiff Cusker also testified that he "[did not] have a clue" as to how many clients he expected to have in the future who would request home based psilocybin services, *id.* at 22:14–17, and also had "no idea" how much income he estimates he had lost due to not being able to provide psilocybin services in people's homes. *Id.* at 25:5–9. He further testified that his expectation of having future clients was based on being able to "reach the palliative care clients"



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

and providing "education" to those individuals about the availability of psilocybin and "creating . . . alliances with physicians and hospices" to find those potential clients. *Id.* at 23:4-20, 24:2–9.

***Plaintiff Kloos***

Plaintiff Kloos testified that, since obtaining her facilitator license in 2023, she had provided facilitation services to only three individuals and in two group settings; all at licensed service centers. Morgan Decl. Ex. 5 (Kloos Depo.) at 12:2–7. In response to the question of how she solicits clients for psilocybin facilitations, she testified: "I don't look for clients. I wait for clients to present themselves to me. My main source of income is my naturopathic practice. And I like to have the facilitator license in case somebody, like a referral from another physician or a referral through the community, comes to me, I can be ready to serve. So I'm not—I know a lot of people advertise, but I'm not advertising." *Id.* at 13:13–20. At the time of her deposition, Plaintiff Kloos testified that she had no disabled clients seeking psilocybin services. *Id.* at 28:24–29:2. She further testified that she had been contacted only once by an individual seeking at home psilocybin services due to him being paralyzed. *Id.* at 16:7–18:10. She also testified to being aware, through her naturopathic work, of a woman with terminal cancer who "said she really wanted to receive" psilocybin services, *id.* at 20:3–6, but did not know if the woman was still alive or the "status of where she is." *Id.* at 29:5–-10.

In sum, Plaintiffs' deposition testimony shows that Plaintiffs Cusker and Kloos lack standing to pursue injunctive and declaratory relief because the alleged injury, the threat of not being able to provide psilocybin facilitation services outside of licensed services to terminally ill and homebound clients, was purely speculative when the Complaint was filed.

Furthermore, the record outside of those depositions contains no admissible evidence to support a finding that Plaintiffs Cusker and Kloos are at risk of any imminent harm or that a ruling from this Court would have any immediate effect on their rights. In support of Plaintiffs' Motion for Summary Judgment, both Plaintiffs offer identical testimony that they "have been contacted by individuals who have expressed a desire to pursue psilocybin services, but could



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

not do so because they were physically unable to travel to a licensed service center." *See* ECF No. 61 at 2 (Cusker Decl.); ECF No. 62 at 2 (Kloos Decl.). However, this testimony is neither competent nor admissible as required at the summary judgment stage and should be excluded for two reasons.

First, Plaintiffs' testimony is hearsay that does not fall within any exception and would therefore not be admissible at trial. *See* Fed. R. Evid. 801(c) (defining "hearsay" as a statement "the declarant does not make while testifying at the current trial or hearing" and "a party offers in evidence to prove the truth of the matter asserted in the statement"); *see also Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). Pursuant to Rule 56(c)(4), "[a]n affidavit or declaration used to support . . . a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on matters stated." Plaintiffs Cusker and Kloos lack personal knowledge about the conditions or circumstances of the individuals who have contacted them, do not testify that these individuals are disabled, and offer no competent evidence for the Court to discern whether they are, in fact, in any position to provide at home psilocybin services to any disabled individual. *See Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) (holding that affidavit containing statements not based on personal knowledge that would not otherwise be admissible in evidence did not meet the requirements of Rule 56(e)); *see also Lavelle-Hayden v. Legacy Health*, 744 F. Supp. 3d 1135, 1147 (D. Or. 2024) (excluding from summary judgment consideration articles that were offered for a hearsay purpose).

Second, the Court should disregard Plaintiffs' testimony as to the existence of potential clients under the "sham affidavit rule." That rule "prevents a party who has been examined at length on deposition from raising an issue of fact simply by submitting an affidavit contradicting his own prior testimony, which would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Yaeger v. Bowlin*, 693 F.3d 1076, 1080 (9th



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Cir. 2012) (internal quotation marks omitted). In applying the rule, the court must "make a factual determination that the contradiction [is] actually a sham" and conclude that the inconsistency is "clear and unambiguous." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009).

The Complaint contains vague allegations about disabled and/or terminally ill individuals who allegedly sought facilitation services from Plaintiffs. ECF No. 41 ¶¶ 12–14. Plaintiffs Cusker and Kloos were specifically deposed about those allegations and about the existence of any then-current or potential individuals seeking at home psilocybin services from them. As discussed above, Plaintiffs failed to identify current or potential clients seeking at-home psilocybin services. The inconsistency between Plaintiffs' testimony now at summary judgment and their responses during their deposition is not minor. For example, during both of their depositions, Plaintiffs Cusker and Kloos answered "no" to the question of whether they currently had any disabled clients seeking psilocybin services. Morgan Decl. Ex. 6 (Cusker Depo.) at 28:14–16, Ex. 5 (Kloos Depo.) at 28:24–29:2. In the declarations, both take the opposite position and do not explain the discrepancy. *See Crandall v. Starbucks Corp.*, 249 F. Supp. 3d 1087, 1100 (N.D. Cal. 2017) (applying sham affidavit rule to exclude expert's declaration testimony that conflicted with report and "[did] not explain why he changed his conclusion"); *see also Slojewski v. Polam Fed. Credit Union*, 473 Fed. Appx. 534, 535 (9th Cir. 2012) (unpublished) (upholding exclusion of declaration where declarant "made no attempt . . . to explain his prior deposition testimony . . . [or] claim that he was confused during his deposition."). To the extent Plaintiffs' vague testimony as to having been contacted by individuals references the individuals discussed in the First Amended Complaint and in the depositions, those individuals had either died by the time the complaint was filed (Morgan Decl. Ex. 6 (Cusker Depo.) at 16:16–19, Ex. 5 (Kloos Depo.) at 16:19–25), were otherwise ineligible to receive psilocybin services based on their medical conditions (Morgan Decl. Ex. 6 (Cusker Depo.) at 17:19–25), or Plaintiffs lacked information about them (Morgan Decl. Ex. 5 (Kloos



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Depo.) at 29:5–10). To the extent Plaintiffs' new testimony references additional individuals who have contacted them after the depositions, as noted above, that testimony is barred by the hearsay rules and is also irrelevant for the standing analysis.

In conclusion, Plaintiffs Cusker and Kloos have failed to meet their burden to demonstrate they have suffered an injury under the *Driehaus* standard. There is no evidence to show that either Plaintiff has anything but a speculative expectation of having a disabled and terminally ill individual request facilitation services outside of a licensed service center. Therefore, Plaintiffs Cusker and Kloos lack standing to assert their ADA claim against Defendants.[2]

**2. Plaintiffs' alleged injuries cannot be redressed through this litigation.**

This Court has no authority to provide the relief Plaintiffs seek. As noted above, for Article III standing, Plaintiffs must show, among other things, that their injuries are likely to be redressed by a favorable court decision. *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1139–40 (9th Cir. 2013). Here, Plaintiffs claim that they are injured by being unable to provide psilocybin services outside of licensed service centers to disabled clients. ECF No. 41 ¶ 21; *see also* ECF No. 59 at 8. They seek: (1) a declaration that Defendants' refusal to allow psilocybin services outside of licensed service centers violates the ADA and (2) an injunction requiring Defendants to allow facilitators to provide psilocybin services outside of licensed service centers and prohibiting Defendants from taking disciplinary action against facilitators who provide such services when those services are "reasonable accommodation[s] to an individual whose disability

[2] Plaintiffs' failure to demonstrate an injury-in-fact means they lack associational standing and third party standing in addition to Article III standing. *See Glass v. Hillsboro Sch. Dist. 1J*, 142 F. Supp. 2d 1286, 1287–88 (D. Or. 2001) (plaintiffs without a disability asserting an ADA claim based on "their association with . . . disabled [individuals] . . . must also demonstrate that [the plaintiffs] themselves were harmed; that is, that they suffered a specific, separate, and direct injury to themselves caused by defendant's actions"); *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991) (to "bring actions on behalf of third parties," a "litigant must have suffered an injury in fact, thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute" (internal quotation marks omitted); *see also* ECF No. 43 at 17–24 (discussing associational standing and third-party standing); ECF No. 45 at 11–15 (same).



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

requires" them. *See* ECF No. 41 at 10–11; *see also* ECF No. 59 at 16. This Court lacks authority to order state Defendants to perform actions expressly prohibited under their governing statutes.

The Ninth Circuit's opinion in *M.S. v. Brown*, 902 F.3d 1076 (9th Cir. 2018) is instructive. There, the Oregon Legislature voted to enact SB 833, a bill that would have restored driving privileges for undocumented immigrants residing in Oregon. *Id.* at 1080. After the governor signed SB 833, however, a group of people filed a petition to refer the bill as a ballot measure to a state-wide referendum, per a provision of the Oregon Constitution authorizing such a procedure. *Id.* at 1081. Oregon voters rejected SB 833 in that referendum, with the result that the bill never became law. *Id.* The plaintiffs in *M.S.* sued the Governor of Oregon and other state officials from the Department of Transportation, claiming that the voters' rejection of the ballot measure was motivated by animus towards Mexicans and Central Americans and sought a declaration that the ballot measure violated their "rights under the Equal Protection and Due Process Clauses . . . , and [was] void and unenforceable." *Id.* at 1084. The Ninth Circuit held that the declaration would not redress plaintiffs' inability to obtain or renew driving privileges because majority voter *approval* via referendum was necessary to effectuate SB 833. *Id.* The court held that "state officials would not be required—indeed, would not have the statutory authority—to issue driver cards even if the declaration were issued," *id.*, and that such a declaration would "violate[] principles of federalism." *Id.* at 1086.

The same principles are applicable here. Plaintiffs seek a court order allowing psilocybin facilitators to provide services in people's homes or otherwise outside of a licensed service center. *See, e.g.*, Morgan Decl. Ex. 6 (Cusker Depo.) at 32:14–17 ("I'm asking that licensed psilocybin facilitators can go in to hospices and can go into homes for those people who are not physically or emotionally capable of going in to a service center."). That request is in direct contradiction to the ballot measure presented to the voters of Oregon and the resulting legislation codified in state statute. The certified ballot caption read: "Allows manufacture, delivery,



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

administration of psilocybin at supervised, licensed facilities; imposes two-year development period." Morgan Decl. Ex. 3 at 8. The original draft caption was different. It read: "Creates regulatory program allowing licensed manufacture, delivery, and administration of psilocybin (psychoactive substance from fungus)." *Id.*, Ex. 1 at 3. However, the chief petitioners commented that the draft version was "flawed" in that the "caption should more explicitly emphasize the supervised licensing scheme." *Id.*, Ex. 3 at 4. In other words, the fact that psilocybin would only be sold and consumed at licensed centers was central to the ballot measure presented to voters, adopted by the Legislature, and put into practice by Defendants.

Like the unsuccessful plaintiffs in *M.S.*, Plaintiffs here do not challenge the initiative process or the terms of the PSA. *See* 902 F.3d at 1089. Instead, they ask the Court to order Defendants to create a law and implement a system that was *not* adopted through any democratic process. The State Defendants here have no such authority. *See PNW Metal Recycling, Inc. v. Dep't of Env't Quality*, 371 Or. 673, 676 (2023) ("[A]n agency's authority is defined by the legislature. An agency is a creature of statute, and the scope of its substantive power is set forth in and circumscribed by its enabling statute."). What Plaintiffs seek in this lawsuit is an "encroachment upon the functions of a legislative body [which] would violate the time-honored principle of separation of powers of the three great departments of our Government." *See M.S.*, 902 F.3d at 1087 (quoting *Smith & Lee Assocs., Inc. v. City of Taylor*, 102 F.3d 781, 797 (6th Cir. 1996)). Because Plaintiffs cannot establish the redressability element of standing, this Court lacks jurisdiction over their claim.

**3. Plaintiff Grayson's ADA claim is moot.**

Plaintiff Grayson's claim for injunctive and declaratory relief is moot. Mootness is "determined on a claim by claim basis." *Pac. Nw. Generating Co-op. v. Brown*, 822 F. Supp. 1479, 1506 (D. Or. 1993), *aff'd*, 38 F.3d 1058 (9th Cir. 1994).

Plaintiffs seek injunctions "requir[ing] Defendants to allow facilitators licensed under the PSA to provide reasonable accommodations when necessary to allow disabled individuals access



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

to psilocybin services, and to notify licensed facilitators that such accommodations are permitted" and "[p]rohibit[ing] Defendants from taking any disciplinary or other adverse action against any facilitator licensed under the PSA solely on account of the facilitator's provision of reasonable accommodation to an individual whose disability requires this." *See* ECF No. 41 at 10–11.

Plaintiff Grayson's request for injunctive relief is moot because she is no longer a licensed facilitator. *See* Morgan Decl. Ex. 7 (Grayson Depo.) at 10:4–11:1 (noting that she is "not currently licensed" and was last licensed in "June or July" of 2025). Plaintiff Grayson therefore has no legal authorization to offer psilocybin services under the PSA and is no longer under the regulatory jurisdiction of Defendants as it relates to the provision of psilocybin services. The injunctive relief Plaintiffs seek will therefore have no effect on her. *See Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853, 864 (9th Cir. 2017) ("A plaintiff who cannot reasonably be expected to benefit from prospective relief ordered against the defendant has no claim for an injunction.").

Plaintiff Grayson's claim for declaratory relief is also moot. "[T]he test for mootness as applied to a claim for declaratory relief is whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 853 (internal quotation marks and citation omitted). A proper declaratory judgment "settl[es] . . . some dispute *which affects the behavior of the defendant towards the plaintiff*." *Id.* (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (emphasis in *Hewitt*)). Here, Plaintiffs seek a declaration that "Defendants have violated 42 U.S.C. § 12132[ ]by refusing to permit the reasonable accommodation necessary to allow individuals with disabilities who require such accommodation to access services under the PSA[.]" ECF No. 41 at 10. There is no evidence to suggest that Plaintiff Grayson is an individual with a disability who could request or be provided access to psilocybin services under the PSA. Furthermore, without her facilitator license,



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Plaintiff Grayson cannot provide *any* psilocybin services, with or without reasonable accommodations. *See Bayer*, 861 F.3d at 868 (finding ADA declaratory claim moot where employee was no longer employed by defendant and "the parties have no relationship beyond this litigation[.]").

This Court has already found that Plaintiff Suarez did not have standing because she "is not a licensed facilitator" and "is not in a position to engage in the proscribed course of conduct[.]" ECF No. 56 at 10. Plaintiff Grayson's claim now fails for the same reason. *See Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003) ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).").

**B. Plaintiffs have not met their burden for an ADA Title II claim.**

Even if this Court had jurisdiction over this case, Defendants would be entitled to summary judgment because Plaintiffs have failed to present material questions of fact concerning essential elements of their claim.

"[T]he 'plain language' of Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Matter of York*, 78 F.4th 1074, 1088 (9th Cir. 2023) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)) (emphasis in *York*). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23. "The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323.

Here, Plaintiffs have the initial burden of showing that the challenged law has a disparate impact on individuals with disabilities. *Insight Psychology & Addiction, Inc. v. City of Costa*



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Mesa*, 801 F. Supp. 3d 942, 970 (C.D. Cal. 2025) (citing *Gamble v. City of Escondido*, 104 F.3d 300, 306 (9th Cir. 1997)). Plaintiffs also have the burden of showing the existence of a reasonable accommodation that would enable individuals to participate in the services at issue, including showing that such a modification would be reasonable. *Pierce v. County of Orange*, 526 F.3d 1190, 1217 (9th Cir. 2008); *Mayfield v. City of Mesa*, 131 F.4th 1100, 1110 (9th Cir. 2025); *Martin v. PGA Tour, Inc.*, 994 F. Supp. 1242, 1248 (D. Or. 1998), *aff'd*, 204 F.3d 994 (9th Cir. 2000), *aff'd*, 532 U.S. 661 (2001).

As explained in Defendants' Response to Plaintiffs' Motion for Summary Judgment, Plaintiffs have failed to make any showing, much less a sufficient showing, on those elements. *See* Defs' Resp. to Pls.' Mot. for Summ. J. § IV.A. Plaintiffs have not set "set forth 'statistics or other proof' demonstrating . . . that the challenged practice ha[s] a 'significantly adverse or disproportionate impact' on a protected group." *See Insight Psychology*, 801 F. Supp. 3d at 970 (quoting *Gamble*, 104 F.3d at 306). Nor have Plaintiffs satisfied their "initial burden of producing evidence of the existence of a reasonable accommodation," *see Mayfield*, 131 F.4th at 1110, and of "proving . . . that the requested modification is reasonable." *See Martin*, 994 F. Supp. at 1248. Indeed, Plaintiffs have failed to identify any potential modification, let alone present any evidence that it would be reasonable. For those reasons, there is no genuine dispute of material fact on these issues, and Defendants are entitled to judgment as a matter of law.

**C. Altering the PSA to allow psilocybin services outside of licensed service centers would constitute a fundamental alteration to the program.**

If a plaintiff shows "'the existence of a reasonable accommodation' that would enable [individuals with disabilities] to participate in the program, service, or activity at issue," "[t]he public entity may then rebut this by showing that the requested accommodation would require a fundamental alteration or would produce an undue burden." *Pierce*, 526 F.3d at 1217 (internal quotation omitted). Here, Plaintiffs have failed to specify a modification and have failed to show that any modification would be reasonable, so there is no showing for Defendants to rebut. To the extent Plaintiffs are seeking a modification of the PSA to allow administration sessions



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

outside of licensed service centers—and if such a vague modification were enough to satisfy their initial burden—such a modification would fundamentally alter the PSA.

**1. Standard for Fundamental Alteration Defense**

Title II of the ADA requires public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i).

The question of whether a modification is a "fundamental alteration" depends on many of the same factors to whether the modification is "reasonable." *See Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 862 (9th Cir. 2022) (citing *Crowder v. Kitagawa*, 81 F.3d 1480, 1486 (9th Cir. 1996); *Townsend v. Quasim*, 328 F.3d 511, 519 (9th Cir. 2003)) (evaluating a defendant's fundamental-alteration defense in terms of the modification's "reasonableness"). Thus, the inquiry "depends on how [the modification] impacts the goals of an agency's program." *Id.* For "programs designed to address risks to the public," the inquiry "depends on the nature of the risk, whether the proposed modification would affect the agency's ability to address the risk, and the probability of worsening the risk if the agency is forced to alter its programs." *Id.* (citing *Crowder*, 81 F.3d at 1486). Courts "also 'take into account financial and other logistical limitations on [the program].'" *Id.* (quoting *Townsend*, 328 at 519).

"The Supreme Court has instructed courts to be sympathetic to fundamental alteration defenses." *Arc of Wash. State Inc. v. Braddock*, 427 F.3d 615, 618 (9th Cir. 2005) (citing *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 605 (1999)). To that end, "public entities are not required to create new programs that provide heretofore unprovided services to assist disabled persons." *Townsend*, 328 F.3d at 518 (citations omitted).

Courts in this circuit have found that requested modifications were fundamental alterations where the modification would waive a requirement of state law designed to protect the public, *see Pruett v. Arizona*, 606 F. Supp. 2d 1065, 1078–79 (D. Ariz. 2009), exempt an



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

individual from complying with a vital requirement of a program, *see Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1050(9th Cir. 1999), transform the benefit provided by a program, *see Shavelson v. Bonta*, 608 F. Supp. 3d 919, 923, 927–28 (N.D. Cal. 2022), or remove a fundamental protection for individuals using the program. *See id.*

By contrast, courts in this circuit have found that modifications were not fundamental alterations where they were already within the scope of an organization's operating model, *see Crawford v. Uber Technologies, Inc.*, 616 F. Supp. 3d 1001, 1009 (N.D. Cal. 2022), would have negligible effects on the operations of the organization making the modification, *see Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1084 (9th Cir. 2004), or would have similarly negligible impact on the goals of the program, as evidenced by the fact that the modifications had previously been approved by that program. *See Kulin v. Deschutes Cnty.*, 872 F. Supp. 2d 1093, 1105–06 (D. Or. 2012).

**2. Allowing for the provision of psilocybin services outside of licensed service centers would be a fundamental alteration of the PSA.**

Here, as noted, Plaintiffs have not specified what modification they are seeking, and their Complaint and Motion merely seek to require Defendants to allow "reasonable accommodations" or "reasonable modifications" in general. *See* ECF No. 41 ¶ 28(b); ECF No. 59 at 16. Even if the modifications at issue were limited to allowing off-site psilocybin services, such a modification would fundamentally alter the PSA. Allbee Decl. ¶ 84. The provision of psilocybin services outside of licensed service centers would undermine "the goals of [the PSA]," undermine "the agency's ability to address the risk[s]" to the public that the PSA is "designed to address," heighten "the probability of worsening th[ose] risk[s]," and fail to account for the "financial and other logistical limitations"[3] on OHA's administration of the PSA. *See*

[3] The financial and administrative burdens discussed below also demonstrate that modifying the PSA to allow off-site psilocybin services would impose "undue financial and administrative burdens" on OHA. Allbee Decl. ¶ 84; *see* 28 C.F.R. § 35.150(a)(3); *Where Do We Go Berkeley*, 32 F.4th at 862.



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Where Do We Go Berkeley*, 32 F.4th at 862. The impacts of such a change are discussed in detail in the Declaration of Angela Allbee and are summarized below.

**a. Safety and Health Risks**

One of the stated purposes of the PSA is to ensure that psilocybin services are "safe." *See* ORS 475A.205(1)(c). The service-center model of the PSA serves to guard against risks to health and safety, including adverse medical or behavioral reactions by having consumption take place at a licensed service center, which is subject to various safety-related requirements and is subject to inspection by OHA. Allbee Decl. ¶ 86. Holding an administration session in an off-site location may heighten potential risks, including the presence of weapons or dangerous objects, other drugs, or other individuals who may have access to the property and may interfere with the administration session or pose a safety risk. *Id.* ¶ 87. Instead of being in an environment specifically designed, inspected, and approved for use as an administration area, the administration session would be taking place in a location over which OHA would have no regulatory oversight. *Id.* ¶ 87. Furthermore, facilitators are not trained on how to address additional challenges that could occur on a variety of unregulated premises. *Id.* ¶ 87.

**b. Risks of Diversion and Tampering**

The PSA is also designed to prevent diversion and tampering of psilocybin products. *See* ORS 475A.205(2); ORS 475A.400(2)(a)–(b). The service-center model of the PSA serves to minimize those risks. Allbee Decl. ¶ 90. Each licensed premises is subject to various requirements and restrictions, and the location and status of each psilocybin product is tracked throughout its lifetime as it moves from one licensed premises to another. *Id.* ¶ 90. Once a psilocybin product is removed from a licensed premises, it leaves the system of restrictions, safety controls, and tracking that allows OHA to exercise oversight. *Id.* ¶ 91.

An off-site model for providing psilocybin services would inherently provide OHA with less ability to prevent diversion, substitution, and tampering. *Id.* ¶ 92. Further, even if OHA were to attempt to develop an off-site model designed to address some of these risks, that



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

development would require extensive and costly changes to various aspects of the existing system. *Id.* ¶ 92.

**c. Need to Redevelop Tracking System**

Allowing off-site psilocybin services would undermine OHA's ability to track psilocybin products. *Id.* ¶ 93; *see* ORS 475A.400 (requiring OHA to have a system for tracking psilocybin products). OHA's PTS is built around the PSA's service-center model. Allbee Decl. ¶ 93. Changing the tracking system to reflect off-site psilocybin services would be a costly and time-consuming process, and it would have a detrimental impact on OPS operations, staff capacity, and budget, as well as the ability to protect health and safety through compliance and regulation activities. *Id.* ¶ 94.

If a licensee representative of a service center were to transfer and sell psilocybin products off-site, OHA would have to build a new portal within PTS for the licensee representative to track the transfer and sale of the product. *Id.* ¶ 98. Development of that portal alone would likely take at least one year and would also require extensive rewriting of the rules to allow for off-site sale of psilocybin products. *Id.* ¶ 98.

If a psilocybin facilitator were to transfer and sell psilocybin products off-site, the required changes would be even more extensive and costly, involving the creation of a whole new portal within PTS for use by facilitators, and more extensive rewriting of rules, which currently prohibit facilitators from selling or transferring psilocybin products. *Id.* ¶ 99; *see* OAR 333-333-5130(3). Redevelopment of PTS would likely require OPS to pause development of other priorities, such as the TLC Compliance System, which would mean that OPS is not able to create the appropriate tracking and efficiencies needed for compliance, investigations, and hearings. *Id.* ¶¶ 95–96. Also, significant increases to licensing fees would be required to cover costs, and many licensees may be priced out of the program. *Id.* ¶ 94.



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**d. Changes to How Psilocybin Products are Transferred, Sold, and Stored**

The rules strictly control where and how psilocybin products may be stored, transferred, sold, and consumed. *Id.* ¶ 101. Those rules are designed to reflect the PSA's prohibition on off-site consumption of psilocybin products. *Id.* ¶ 101. Rewriting those rules to allow off-site administration sessions would be an extensive and costly process and would require OHA to make various policy determinations about how to set up a program that the PSA expressly forbids. Allbee Decl. ¶ 102. OHA would have to effectively rewrite the PSA itself. *Id.* ¶ 102.

For example, OHA would have to write a new set of rules allowing for the transfer of a psilocybin product to unlicensed premises and would have to determine who is allowed to make such a transfer and under what circumstances. *Id.* ¶ 103. Regardless of who would make that transfer, the necessary changes to the rules would represent fundamental changes to those licensees' roles, requiring development of new requirements to govern the conduct, eligibility, and training of those licensees. *Id.* ¶ 103. OHA would also have to write new rules governing the storage of psilocybin products, and those changes would have to reflect changes to the tracking system. *Id.* ¶ 104.

These examples are not exhaustive; the rules, as a whole, were developed around the service-center model prescribed by the PSA. *Id.* ¶ 105. To create exemptions from the service-center requirement, OHA would have to go through each rule to determine how a new off-site model would impact the existing system and how to re-write the rules to account for those changes. *Id.* ¶ 105. OHA would also have to develop and continually implement new systems for enforcing those rules, new forms, updates to the website, additional technical support for licensees, public education, internal training of staff, and potential increases to investigations and regulatory work. *Id.* ¶ 106.

**e. Changes to Facilitator Role and Training**

If OHA were to require all facilitators to be trained and qualified to conduct off-site administration sessions, then OHA would have to adopt rules changing the minimum standards



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

of education and training requirements for all facilitators. *Id.* ¶ 110; *see* ORS 475A.380(1). The adoption of those new standards would then require all providers of facilitator training programs to alter *their* programs accordingly and submit them for review and approval by OHA. Allbee Decl. ¶ 110; *see* OAR 333-333-3020 (training program application requirements). This would impose new burdens on training program providers, and OHA's review of the altered training programs would involve further process and expense. Allbee Decl. ¶ 110.

Alternatively, if OHA were to require facilitators to meet specific training requirements only if they intend to provide off-site psilocybin services, OHA would have to develop a parallel or additional system of training and approval for off-site facilitators, which would likely require even more extensive rulemaking, regulatory, and system development. *Id.* ¶ 111. Either way, this would be an extensive and costly process. *Id.* ¶ 111.

#### f. Need for New Program and Standards to Evaluate Requests for Off-Site Services

Allowing off-site administration sessions for individuals with disabilities would require OHA to develop new standards for evaluating requests for off-site services. *Id.* ¶ 112. Someone would have to determine whether potential clients were disabled and whether their specific disability prevented them from travelling to a licensed service center. *Id.* ¶ 113. Under the PSA and the existing rules, neither licensee representatives of a service center nor facilitators are required, authorized, or trained to make those determinations. *Id.* ¶ 113. To allow either set of licensees to conduct those determinations, OHA would have to develop a system and criteria for them to do so, which would require changes to the eligibility and training requirements of those licensees. *Id.* ¶ 113.

#### g. Need for Inspection of Off-Site Premises

If an administration session takes place outside of a licensed service center, that location will not have been inspected by OHA to ensure compliance with the PSA, including its provisions designed to protect safety and health and to prevent diversion of psilocybin products. Allbee Decl. ¶ 115. Providing for the inspection of off-site locations would be an extensive and



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

costly process, requiring additional positions to be approved by the Oregon Legislature (including for additional OHA staff or third party vendors to conduct the inspections) and significant increases in licensing fees to support the cost of the work, and may create significant backlogs for site inspections for manufacturer, laboratory, and service center premises. *Id.* ¶ 116. OHA would also have to develop new standards and requirements for off-site locations, and to determine whether, when, and how each of the requirements and restrictions for service centers would apply to off-site locations, and whether and how to develop additional standards specifically tailored to off-site psilocybin services. *Id.* ¶ 117.

**h. Need for Safety and Emergency Plans for Off-Site Premises**

If OHA were to adopt a requirement of safety and emergency plans for off-site locations for psilocybin services, OHA would have to create new rules or standards for those who must create and maintain a safety and emergency plan and what that plan must contain. *Id.* ¶ 122. OHA would also have to develop a system for review and approval of such safety plans. *Id.* ¶ 122. Development and implementation of those standards would be an extensive and costly process. *Id.* ¶ 122.

In sum, for all of the above reasons, altering the PSA to allow administration sessions outside of licensed service centers would undermine "the goals of [the PSA]," undermine "the agency's ability to address the risk[s]" to the public that the PSA is "designed to address," heighten "the probability of worsening th[ose] risk[s]," and fail to account for the "financial and other logistical limitations" on OHA's administration of the PSA. *See Where Do We Go Berkeley*, 32 F.4th at 862. Implementation of any required changes, such as creating systems to evaluate requests for off-site services and to monitor or provide inspections of unlicensed premises, would involve the creation of "new programs that provide heretofore unprovided services to assist disabled persons." *See Townsend*, 328 F.3d at 518 (citations omitted). Deviating from the service-center model would thus "fundamentally alter the nature of" the PSA. *See* 28 C.F.R. § 35.130(b)(7)(i).



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## V. CONCLUSION

For the reasons discussed above and in Defendants' Response to Plaintiffs' Motion for Summary Judgment, the Court should grant summary judgment in Defendants' favor because it lacks jurisdiction over Plaintiffs' ADA claim, because Plaintiffs have failed to establish the elements of their prima facie case, and because any change to the PSA requirement that psilocybin be sold and consumed at licensed service centers would constitute an impermissible fundamental alteration to the program.

DATED May 15, 2026.

Respectfully submitted,

DAN RAYFIELD
Attorney General

*s/ Shaunee Morgan*
SHAUNEE MORGAN #194256
ALEXANDER C. JONES #213898
CARTER BRACE #243828
Assistant Attorneys General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
Shaunee.Morgan@doj.oregon.gov
Alex.Jones@doj.oregon.gov
Carter.Brace@doj.oregon.gov
Of Attorneys for Defendants